Randall W. Bodner (*Admitted Pro Hac Vice*)
Peter L. Welsh (*Admitted Pro Hac Vice*)
Holly J. Caldwell (*Admitted Pro Hac Vice*)
ROPES & GRAY LLP
One International Place
Boston, Massachusetts 02110-2624
Telephone: (617) 951-7000
Facsimile: (617) 951-7050

Robert H. Bunzel, State Bar No. 99395
C. Griffith Towle, State Bar No. 146401
BARTKO, ZANKEL, TARRANT & MILLER
A Professional Corporation
900 Front Street, Suite 300
San Francisco, California 94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

Attorneys for Defendants
3i TECHNOLOGY PARTNERS III, LP
and PAUL BADAWI

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller | Lovitt & Hannan, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| MICHAEL B. ESHELMAN, D.D.S.; PETER F. SILCHER, D.D.S.; and LORI I. SILCHER,<br><br>Plaintiffs,<br><br>v.<br><br>ORTHOCLEAR HOLDINGS, INC., a British Virgin Islands Company; ORTHOCLEAR, INC., a Delaware Corporation; MUHAMMAD ZIAULLAH CHISHTI, an individual; HUAFENG "CHARLES" WEN, an individual; PETER RIEPENHAUSEN, an individual; ARTHUR T. TAYLOR, an individual; SAIYED ATIQ RAZA, an individual; CHRISTOPHER KAWAJA, an individual; PATRICIA HUMELL SEIFERT, an individual; JOSEPH BREELAND, an individual; MUDASSAR RATHORE, an individual; PAUL BADAWI, an individual; 3i Technology Partners III, LP; and DOES 1 through 25, inclusive,<br><br>Defendants. | No. C 07-01429 JSW<br><br>**DEFENDANTS 3i TECHNOLOGY PARTNERS III, LP AND PAUL BADAWI'S NOTICE OF MOTION AND MOTION TO DISMISS COUNTS III, V AND VIII OF PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: October 26, 2007<br>Time: 9:00 a.m.<br>Courtroom: 2, 17th Floor<br>Judge: Hon. Jeffrey S. White<br><br>Complaint Filed: March 12, 2007<br>Trial Date: |

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 26, 2007 at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Jeffrey S. White, United States District Judge, in Courtroom 2 of the above entitled Court, defendants 3i Technology Partners III, LP and Paul Badawi will and hereby do move to dismiss Counts III, V and VIII of plaintiffs' Second Amended Class Action Complaint.

This motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the accompanying Declaration of Peter L. Welsh and the complete files and records herein, and on the argument and other evidence to be presented at the hearing of this matter.

DATED: August 7, 2007

BARTKO, ZANKEL, TARRANT & MILLER
A Professional Corporation

ROPES & GRAY LLP

By: /s/ Randall W. Bodner
Randall W. Bodner
Attorneys for Defendants
3i TECHNOLOGY PARTNERS III, LP
and PAUL BADAWI

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller | Lovitt & Hannon, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller | Lovitt & Hannan, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ..... II

SUMMARY OF ARGUMENT ..... IV

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. BACKGROUND ..... 1

A. The OrthoClear/Align Intellectual Property Litigation ..... 1

B. 3i's Senior Preferred Investment ..... 1

C. The Align/OrthoClear Settlement ..... 2

D. The Counts Against Badawi and 3i ..... 3

ARGUMENT ..... 4

II. STANDARD FOR A MOTION TO DISMISS ..... 4

III. PLAINTIFFS' BREACH OF FIDUCIARY DUTY AND CONSTRUCTIVE TRUST CLAIMS SHOULD BE DISMISSED BECAUSE THEY WERE NOT BROUGHT AS DERIVATIVE CLAIMS ..... 4

A. Count V (Breach of Fiduciary Duty) as to Badawi ..... 5

B. Count VIII (Constructive Trust) as to 3i ..... 7

IV. BECAUSE THE COMPANY WAS CONTRACTUALLY OBLIGATED TO PAY 3i ITS $10 MILLION LIQUIDATION PREFERENCE, PLAINTIFFS CANNOT STATE A CLAIM FOR CONSTRUCTIVE TRUST ..... 8

V. PLAINTIFFS HAVE NOT ADEQUATELY PLED THAT BADAWI BREACHED ANY FIDUCIARY DUTY ..... 11

A. Plaintiffs Have Not Alleged – and Cannot Allege – That Badawi Was on the OrthoClear Board at the Time of the Payment to 3i ..... 11

B. Because the Payment Was Required by the Charter, It Cannot Form the Basis for a Fiduciary Duty Claim Against Any OrthoClear Director ..... 12

VI. PLAINTIFFS HAVE NOT ALLEGED WITH PARTICULARITY UNDER FED. R. CIV. P. 9(b) THAT BADAWI MADE ANY INTENTIONAL MISREPRESENTATION ..... 12

VII. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

## CASES

*Agostino v. Hicks*
845 A.2d 1110 (Del. Ch. 2004) .......... 6

*Avikian v. WTC Financial Corp.*
98 Cal.App.4th 1108 (Cal.App.4th Dist. 2005) .......... 6

*Bell Atl. Corp. v. Twombly*
127 S. Ct. 1955 (2007) .......... 4, 11

*Campbell v. Clark*
159 Cal.App.2d 432 (Cal.App.2d Dist. 1958) .......... 7

*Celador Int'l Ltd. v. Walt Disney Co.*
347 F.Supp.2d 846 (C.D. Cal. 2004) .......... 12

*Communist Party v. 522 Valencia, Inc.*
35 Cal.App.4th 980 (Cal.App.1st Dist. 1995) .......... 8

*County of Santa Clara v. Astra United States, Inc.*
428 F.Supp.2d 1029 (N.D. Cal. 2006) .......... 13

*Gemstar Ltd. v. Ernst & Young*
901 P.2d 1178 (Ariz. Ct. App. 1995) .......... 5

*Glen Holly Entertainment, Inc. v. Tektronix, Inc.*
100 F.Supp.2d 1086 (C.D. Cal. 1999) .......... 13

*In re Cornerstone Propane Partners L.P.*
355 F. Supp. 2d 1069 (N.D. Cal. 2005) .......... 2

*In re GlenFed, Inc. Sec. Litig.*
42 F.3d 1541 (9th Cir. 1994) .......... 12

*In re James River Coal Co.*
360 B.R. 139 (Bankr. E.D. Va. 2007) .......... 11

*In re Pacific Gateway Exch., Inc. Sec. Litig.*
169 F.Supp.2d 1160 (N.D. Cal. 2001) .......... 12

*In re Syntex Corp. Sec. Litig.*
855 F.Supp. 1086 (N.D. Cal. 1994 .......... 12, 13

*In re Worlds of Wonder Sec. Litig.*
694 F.Supp. 1427 (N.D. Cal. 1988) .......... 13

*Kaplan v. Rose*
49 F.3d 1363 (9th Cir. 1994) .......... 12

*Kline Hawkes California SBIC, L.P. v. Superior Court*
117 Cal.App.4th 183 (Cal.App.2d Dist. 2004) .......... 9

BARTKOZANKEL
Bartko•Zankel•Tarrant•Miller | Lovitt & Hannan, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

*Mieuli v. DeBartolo*
2001 WL 777447 (N.D. Cal. Jan. 16, 2001) .......... 8

*Neubronner v. Milken*
6 F.3d 666 (9th Cir. 1993) .......... 13

*O'Hare v. Marine Elec. Co.*
229 Cal.App.2d 33 (Cal.App.1964) .......... 7

*Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*
2004 WL 1949290 (Del.Ch. 2004) .......... 11

*Pareto v. F.D.I.C.*
139 F.3d 696 (9th Cir. 1998) .......... 6

*Sax v. World Wide Press, Inc.*
809 F.2d 610 (9th Cir. 1987) .......... 4, 5

*Schuster v. Gardner*
127 Cal.App.4th 305 (Cal.App.4th Dist. 2005) .......... 4

*Sundlun v. Exec. Jet Aviation, Inc.*
273 A.2d 282 (Del. Ch. 1970) .......... 8

*Wool v. Tandem Computers, Inc.*
818 F.2d 1433 (9th Cir. 1987) .......... 12

## STATUTES

Federal Rules of Civil Procedure

Rule 9(b) .......... 12, 13

Rule 12(b)(6) .......... 1

## OTHER AUTHORITIES

W. Fletcher, *Cyclopedia of the Law of Private Corporations* .......... 6

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller | Lovitt & Hannan, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller | Lovitt & Hannan, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

**SUMMARY OF ARGUMENT**

Defendants Paul Badawi ("Badawi") and 3i Technology Partners III, LP ("3i") respectfully submit this memorandum of law in support of their motion to dismiss Counts III and V of the Second Amended Complaint ("SAC") against Badawi and Count VIII against 3i.

Through their claims against Badawi and 3i, Plaintiffs, who are subordinated junior preferred shareholders of OrthoClear Holdings, Inc. ("OrthoClear" or the "Company"), seek to avoid the priority held by 3i as a result of a senior preferred stock investment 3i made in OrthoClear. Plaintiffs aim to accomplish this through a putative class action seeking the return of a settlement amount paid by OrthoClear to 3i in February of 2006. Plaintiffs' claims against Badawi and 3i should be dismissed for four reasons: First, Plaintiffs have brought their breach of fiduciary duty and constructive trust claims as direct claims, when any such claims belong to the Company and may be asserted only in a derivative action. Second, Plaintiffs have not alleged – and cannot allege – all of the elements necessary to state a claim against 3i for constructive trust. Third, Plaintiffs have not alleged – and cannot allege – that Badawi was an OrthoClear Director at the time the payment to 3i that Plaintiffs are challenging was either authorized or made, and therefore have failed to state a claim for breach of fiduciary duty. Fourth, Plaintiffs have accused Badawi of fraud without alleging with particularity – as required under Fed. R. Civ. P. 9(b) – that Badawi himself was involved in making any allegedly fraudulent statement or even that the statement was a misrepresentation. For these reasons, all of the claims against Badawi and 3i – specifically, Counts III, V and VIII of the Second Amended Complaint – should be dismissed.

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller | Lovitt & Hannan, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND

Defendant OrthoClear, a British Virgin Islands corporation, is a private company that, until recently, manufactured clear plastic devices designed to straighten teeth. (SAC ¶ 47.)[1] Plaintiffs are holders of preferred Class A, B, and C shares of OrthoClear, which they purchased in April, June, and October of 2005 and in March of 2006-all before 3i made its investment. (SAC ¶¶ 13-15.) Defendant 3i is a venture capital fund that became an investor in OrthoClear in August of 2006 when it purchased $10 million of senior preferred Class D shares. (SAC ¶ 88.) Defendant Paul Badawi is a principal of 3i who served briefly on OrthoClear's Board of Directors. (SAC ¶ 29.)

### A. The OrthoClear/Align Intellectual Property Litigation

Almost from the Company's inception, OrthoClear faced legal problems, based on allegations that it had misappropriated the intellectual property of Align Technology ("Align"), "the dominant company in the market for clear orthodontic aligners." (SAC ¶ 37.) OrthoClear was sued by Align in February 2005 for infringement of intellectual property rights and in July 2005 for violations of the Lanham Act. (SAC ¶ 67.) In January 2006, Align filed a formal complaint against OrthoClear with the United States International Trade Commission ("ITC"), as well as a patent infringement action in federal court. (*Id.*) On June 19, 2006, Align filed yet another suit against OrthoClear alleging violations of the Lanham Act and related common law claims. (*Id.*) While those suits were pending, OrthoClear repeatedly told investors and prospective investors (including 3i) that Align's claims were meritless. (SAC ¶ 69.)

### B. 3i's Senior Preferred Investment

In August of 2006, while OrthoClear was still maintaining that the suits against it were without merit, Defendant 3i purchased $10 million of Class D shares of OrthoClear Holdings. (SAC ¶¶ 87-88.) As part of that investment, Defendant Paul Badawi, a principal of 3i, joined the

---

[1] As provided under Rule 12(b)(6), the facts in the Second Amended Complaint are assumed to be true for purposes of this Motion to Dismiss only and not for any other purpose.

Board of Directors of OrthoClear on August 10, 2006. (SAC ¶ 88.) Badawi's tenure on the OrthoClear Board of Directors would prove short-lived; Badawi resigned from the Board less than two months later, in early October 2006.

As senior preferred shares, the Class D shares that 3i purchased had a contractual right to receive a liquidation preference in the case of a "Deemed Liquidation Event," which was defined *inter alia* as "a sale of all or substantially all of the assets of this Company." (Welsh Decl., Ex. 1 (Memorandum & Articles of Association ("M&A") § 12).)[2] In such an event, under the express terms of the Company's charter – known as the Memorandum of Association – 3i was entitled to receive the return of 100% of its $10 million investment before other investors received anything. (*Id.*) In addition, Section 9 of the Memorandum of Association allows the Company to redeem or repurchase the preference shares as "agreed to in writing by the Company, the holders of the Class D Shares and the holders of the Preference Shares whose shares are to be redeemed or repurchased." (Welsh Decl., Ex. 1 (M&A § 9).)

C. The Align/OrthoClear Settlement

Less than two months after 3i made its $10 million investment, on September 28, 2006, OrthoClear announced that, as part of an agreement with Align to settle the patent litigation pending before the ITC, it was ceasing operations and would transfer substantially all of its assets to Align. (SAC ¶ 91.) OrthoClear also agreed to an order by the ITC prohibiting the importation of OrthoClear dental aligners into the United States from OrthoClear's manufacturing facility in Pakistan. (SAC ¶¶ 90-91.) OrthoClear further agreed to close its only line of business by ceasing to accept new orders for dental aligners. Lastly, OrthoClear agreed to transfer all of its existing business to Align, and to assign and transfer all of its intellectual property rights to Align. (*Id.*) In return, Align paid $20 million to OrthoClear. (*Id.*) In a letter dated September 28, 2006, and

---

[2] Because the Plaintiffs have made extensive reference to OrthoClear's Memorandum of Association, and to the September 28 and October 2 letters, but have not attached the documents to their pleading, this Court may consider those documents on a motion to dismiss pursuant to the incorporation-by-reference doctrine. *See In re Cornerstone Propane Partners L.P.*, 355 F. Supp. 2d 1069 (N.D. Cal. 2005).

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller | Lovitt & Hanson, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

signed by OrthoClear's then-General Counsel, Patricia Seifert, OrthoClear laid out this agreement for the shareholders and requested their consent to the settlement. (SAC ¶ 91; Welsh Decl., Ex. 2.)

A second letter, dated October 2, 2006, purported to answer "follow-up questions" received from certain shareholders. (SAC ¶¶ 94-95.) Among other things, the October 2 letter stated that the settlement with Align would not require OrthoClear to cease operations or to dissolve. (SAC ¶ 97.) The letter went on to say that the "exact amount of money that may be returned to shareholders in each class has not yet been determined and cannot be determined unless and until there is an actual liquidation." (*Id.*) In contrast to the September 28, 2006 letter, the October 2 letter had no signature block and was not signed. (Welsh Decl., Ex. 3.)

Upon learning of these developments, Badawi resigned from the Company's Board in early October of 2006. (*See generally* SAC ¶ 101.) 3i thereafter sought to recover the $10 million investment it had made only six weeks earlier. Eventually, approximately five months after Badawi's resignation, OrthoClear and 3i entered into a settlement agreement pursuant to which 3i received only a partial return of its $10 million investment and, in exchange, 3i returned all of its Class D shares. (SAC ¶ 104.)

D. The Counts Against Badawi and 3i

Plaintiffs now claim that Badawi somehow breached his fiduciary duties as a former director by "transferring a substantial sum of as much as $10 million that OrthoClear Holdings obtained from Align as part of the settlement of the Align Litigation to Defendant Badawi's employer, 3i." (SAC ¶ 157.) Plaintiffs also allege that "3i holds the sum of up to $10 million transferred to it by Defendant OrthoClear Holdings in constructive trust for the Class A, B, and C shareholders of OrthoClear Holdings." (SAC ¶ 168.) Lastly, Plaintiffs assert that Badawi somehow participated in misrepresenting "the true circumstances of and reasons for the Align settlement" in the unsigned, unattributed letter dated October 2, 2006. (SAC ¶ 143.)[3]

[3] Against the other defendants, Plaintiffs have asserted common law claims and claims under Section 10(b) and Section 12(a) of the Securities Act of 1933; British Virgin Islands Business Companies Act § 121; California Corporations Code § 2116; and Section 25110 of the California Corporations Code. Plaintiffs have not asserted any of the statutory claims against Badawi and 3i.

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller | Lovitt & Hannon, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller | Lovitt & Hannan, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

## ARGUMENT

## II. STANDARD FOR A MOTION TO DISMISS

As the United States Supreme Court has recently held, in order to survive a motion to dismiss, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. "[L]abels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"; instead, a plaintiff must set forth factual allegations which, if taken as true, provide "plausible grounds" for the inference of each fact essential to the element of a claim. *Id.*

## III. PLAINTIFFS' BREACH OF FIDUCIARY DUTY AND CONSTRUCTIVE TRUST CLAIMS SHOULD BE DISMISSED BECAUSE THEY WERE NOT BROUGHT AS DERIVATIVE CLAIMS

Plaintiffs' breach of fiduciary duty and constructive trust claims should be dismissed because Plaintiffs lack standing to bring them. Where claims belong to a corporation, rather than to the shareholders acting in their own right, they must be brought in a derivative, rather than a direct, action. *Schuster v. Gardner*, 127 Cal.App.4th 305, 309 (Cal.App.4th Dist. 2005) (affirming dismissal of shareholder's suit for lack of standing, where suit should have been brought as a derivative action).[4] Only where there is "a special duty, such as a contractual duty, between the wrongdoer and the shareholder, or when the shareholder suffers injury separate and distinct from that suffered by other shareholders" may a shareholder bring a direct action. *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 614 (9th Cir. 1987). It is well-settled that claims must be

---

[4] The characterization of an action as derivative or direct is a question of state law. *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 613 (9th Cir. 1987). OrthoClear was incorporated in the British Virgin Islands ("BVI"), and such matters are therefore governed by the law of the BVI. Like many United States jurisdictions, including California and Delaware, BVI adheres to the "virtually universal general rule . . . that an individual shareholder lacks standing to sue for recovery of individual damages for which the shareholder would otherwise have a cause of action when those damages arose solely from acts that caused identical injuries to the corporation, and thus proportionately reduced the value of the individual's shares." *Gemstar Ltd. v. Ernst & Young*, 901 P.2d 1178, 1186 (Ariz. Ct. App. 1995). Because of the paucity of reported cases citing BVI law, and the lack of any evident conflict among the relevant jurisdictions, the following analysis looks principally to the law of California for purposes of this motion to dismiss. *See, generally, Schuster* v. *Gardner*, 127 Cal.App.4th 305, 312 (Cal.App.Ct. 2005).

brought as a derivative action if "the gravamen of the complaint is injury to the corporation, or to the whole body of its stock and property without any severance or distribution among individual holders, or if it seeks to recover assets for the corporation or to prevent the dissipation of its assets." *Schuster*, 127 Cal.App.4th at 313. A shareholder cannot bring suit directly to "recover damages merely because the company in which he is interested has suffered damage." *Gemstar Ltd. v. Ernst & Young*, 901 P.2d 1178, 1186 (Ariz. Ct. App. 1995) (applying the law of the British Virgin Islands).

The crux of Plaintiffs' fiduciary duty and constructive trust claims against Badawi and 3i is that *OrthoClear* was allegedly injured and *its* assets dissipated as a result of the payment to 3i. Assuming the Plaintiffs' allegations are sufficient to state a claim at all – which they are not – they have alleged damage only to OrthoClear, and not to Plaintiffs directly and individually. As such, the claims may be brought – if at all – only derivatively.

A. Count V (Breach of Fiduciary Duty) as to Badawi

Plaintiffs lack standing to bring Count V against Badawi for breach of fiduciary duty. Plaintiffs allege neither a special duty between Badawi and the individual shareholders, nor any injury peculiar to the Plaintiffs that is not derivative of an alleged injury to the OrthoClear corporate entity. The Complaint alleges that Badawi failed in his duty "to preserve and protect *the assets of OrthoClear Holdings* and not to waste *its* funds" and that the OrthoClear directors and Badawi had a "duty of loyalty *to the shareholders*." (SAC ¶ 156 (emphasis added).) The Complaint also alleges that Badawi "engaged in a joint course of conduct resulting in the payment to 3i of as much as $10 million *from OrthoClear funds* in derogation of the interest of the other OrthoClear preferred shareholders." (SAC ¶ 112) (emphasis added). These claims plainly implicate duties owed *to the Company*, purport to address the alleged dissipation of funds *from the Company* and seek the return of such funds *to the Company*. Plaintiffs cannot maintain direct claims based on alleged breaches of such duties; they may only press such claims derivatively. *Sax v. World Wide Press, Inc.*, 809 F.2d 610, 614 (9th Cir. 1987) (dismissing a claim where the plaintiff had "not identified a fiduciary duty owed to him that is separate and distinct from that

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller | Lovitt & Hannan, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKOZANKEL
Bartko-Zankel-Tarrant-Miller | Lovitt & Hannon, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

owed to other shareholders and that would allow him to maintain a direct action"); *see also Agostino v. Hicks*, 845 A.2d 1110, 1122 (Del. Ch. 2004) (holding that "plainly not all fiduciary duty claims are individual claims . . . in the context of fiduciary duty claims, the focus should be on the nature of the injury").

The Complaint also alleges that Badawi breached his fiduciary duties by "reassuring shareholders that $10 million of the settlement funds would be used to meet obligations to shareholders and that no decisions had been taken or were being taken as to specific payments." (SAC ¶ 157.) Although a breach of the duty of candor may, in some circumstances, provide the basis for a direct claim, that is not the case here, where the injury alleged would have been sustained *by the Company*. In *Pareto v. F.D.I.C.*, 139 F.3d 696 (9th Cir. 1998), the court held that the plaintiff's "vague allegations about misrepresentations that caused him to support the unsuccessful merger attempt" did not state a direct claim because "his only injury from those misrepresentations was the devaluation of his stock when [the Company] was taken over by the FDIC." *Id.* at 700. So too here. Plaintiffs allege vaguely that the supposed misrepresentations caused them to support the Align settlement, but the injury they identify is to the Company's assets.[5]

Regardless of the claim, Plaintiffs simply have not alleged an injury to themselves that is not derivative of a harm allegedly suffered by the Company. The alleged dissipation of OrthoClear's assets is necessarily an injury to the Company and not to Plaintiffs individually. *See Avikian v. WTC Financial Corp.*, 98 Cal.App.4th 1108, 1115-16 (Cal.App.4th Dist. 2005) (holding that the plaintiffs' damages of loss in value of their investments in the company due to directors' mismanagement or looting were "merely incidental to the alleged harm inflicted upon [the company] and all its shareholders"); *see also* W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 5913 (citing waste and mismanagement of corporate assets as an example of corporate injury that can only be addressed in derivative actions because such injury affects the

---

[5] As set forth below (at pp. 12-13), Plaintiffs have also failed to plead, with the specificity required by Rule 9(b), that Badawi himself made any misrepresentations and have failed to allege anything other than inactionable fraud-by-hindsight.

entire corporation, and not just a few shareholders). Analogously, payment of allegedly unlawful dividends "necessarily affect[s] all shareholders" and therefore can only be addressed in a derivative action. *Campbell v. Clark*, 159 Cal.App.2d 432, 438, (Cal.App.2d Dist. 1958); *see also O'Hare v. Marine Elec. Co.*, 229 Cal.App.2d 33, 37 (Cal.App.1964) (holding that where dividends are wrongfully paid, "their recovery is for the corporation, . . . and plaintiff would but compound the illegality by sharing the booty").

B. Count VIII (Constructive Trust) as to 3i

Plaintiffs likewise have no standing to pursue a claim for constructive trust against 3i. Under California law, in order to obtain a constructive trust, a plaintiff must have a pre-existing right to the *res* – the property – in question. The Plaintiffs here cannot establish any direct right to the *res* (namely, the money paid by OrthoClear to 3i).[6] It is settled law that the owner of the property in question is the only one holding the right to the *res*. *In re Sexton*, 166 B.R. 421, 425 (Bankr. N.D. Cal. 1994). "Shareholders own neither the property nor the earnings of the corporation . . . Shareholders own only stock, from which their income is derived upon the liquidation of assets or the declaration of dividends by the directors." *Nelson v. Anderson*, 72 Cal.App.4th 111, 126 (Cal.App.2d Dist. 1999). Because shareholders do not own the assets of a corporation, they are not entitled to restitution of those assets. *See Gorham v. Gilson*, 28 Cal. 479, 483-84 (1865). Accordingly, shareholders cannot bring a direct action to impose a constructive trust on property conveyed from a corporation to a third party. *Id.* Any claim for constructive trust must therefore be brought by or on behalf of the owner of the assets in question, OrthoClear. *See Pacific Lumber Co. v. Superior Court*, 226 Cal.App.3d 371, 378 (Cal.App.1st Dist. 1990); *Hensley v. Poole*, 910 So. 2d 96, 107 (Ala. 2005) (holding that "constructive trust is a remedy that is to be imposed in favor of the corporation . . . . [t]hus, . . . [plaintiff's] action should

6 In order to maintain a claim for constructive trust under California law, a plaintiff must plead and prove three elements: "(1) the existence of a *res* (property or some interest in property); (2) the *right* of a complaining party to that res; and (3) some *wrongful* acquisition or detention of the res by another party who is not entitled to it." *Communist Party v. 522 Valencia, Inc.*, 35 Cal.App.4th 980, 990 (Cal.App.1st Dist. 1995) (emphasis in original). As discussed *infra* at pp. 8-10, Plaintiffs also fail to state a claim as to the third element.



BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller | Lovitt & Hannan, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

have been derivative in form.") Plaintiffs therefore lack standing to assert a direct claim for constructive trust.

## IV. BECAUSE THE COMPANY WAS CONTRACTUALLY OBLIGATED TO PAY 3i ITS $10 MILLION LIQUIDATION PREFERENCE, PLAINTIFFS CANNOT STATE A CLAIM FOR CONSTRUCTIVE TRUST

In addition to their lack of standing to bring their single claim against 3i, Plaintiffs also have failed to state a claim for constructive trust because they have not alleged – and cannot allege – that the payment to 3i was in any way "wrongful." *See Communist Party v. 522 Valencia, Inc.*, 35 Cal.App.4th 980, 990 (Cal.App.1st Dist. 1995) (under California law a necessary element of a claim for constructive trust is "some *wrongful* acquisition or detention of the *res* by another party who is not entitled to it.") (emphasis in original). Plaintiffs assert generally that OrthoClear's payment to 3i somehow violated the Company's charter. (*See* SAC ¶¶ 8, 105, 110, 161.) Contrary to Plaintiffs' contention, however, the Memorandum of Association actually *obligated* OrthoClear to pay 3i its full liquidation preference of $10 million before Plaintiffs – junior preferred Class A, B, and C shareholders – received any return of their investment. Indeed, that is the entire purpose of the "liquidation preference" in the Memorandum of Association.

As OrthoClear's charter, the Memorandum of Association is both a contract among the various shareholders of OrthoClear and a contract between OrthoClear and the shareholders. *Sundlun v. Exec. Jet Aviation, Inc.*, 273 A.2d 282, 285 (Del. Ch. 1970). As such, "[t]he rules which govern the interpretation of statutes and contracts apply to the interpretation of corporate charters." *Id.* Contractual interpretation, including the interpretation of a corporate charter, is entirely appropriate for decision on a motion to dismiss. Indeed, the Court may dismiss a contract claim "where it is clear from the unambiguous terms of the contract that the alleged conduct by the defendant does not constitute a breach of contract." *Mieuli v. DeBartolo*, 2001 WL 777447 at *5 (N.D. Cal. Jan. 16, 2001). Such is the case here.

Section 12 of the OrthoClear Memorandum of Association – "Liquidation Preference" – states, in relevant part, that "upon a sale of all or substantially all of the assets of the Company," then:

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller | Lovitt & Hannon, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

> . . . the assets of the Company available for distribution among the Shareholders shall be applied in the following priority. If upon the occurrence of such event, the assets thus distributed in each of clause (a) through (e) below shall be insufficient to permit the payment to the holders in each of clause (a) through (e) below of their full preferential amounts, then the entire assets of the Company legally available for distribution to shareholders shall be distributed ratably among the holders of the Preference Shares listed in each clause below in proportion to the full preferential amount each such holder is otherwise entitled to receive under this Section 12.
>
> (a) firstly, in payment to the holders of the Class D Shares, an amount equal to the Original Issue Price per Class D Share (as adjusted to take account of any division or consolidation of the Preference Shares) plus any declared and unpaid dividends;
>
> (b) secondly, in payment to the holders of the Class A Shares, an amount equal to the Original Issue Price per Class A Share (as adjusted to take account of any division or consolidation of the Preference Shares) plus any declared and unpaid dividends;
>
> (c) thirdly, in payment to the holders of the Class B Shares, an amount equal to the Original Issue Price per Class B Share (as adjusted to take account of any division or consolidation of the Preference Shares) plus any declared and unpaid dividends;
>
> (d) fourthly, in payment to the holders of Class C Shares, an amount equal to the Original Issue Price per Class C Share (as adjusted to take account of any division or consolidation of the Preference Shares) plus any declared and unpaid dividends; and
>
> (e) finally the payment to the holders of the Common Shares in proportion to the number of shares held. The Preference Shares shall not participate after receiving its liquidation preference in clauses (a) through (d) above.

(Welsh Decl., Ex. 1 (M&A at § 12).)

The clear purpose of the liquidation preference is to set up a preferential schedule for payment in case of a liquidation, and by its terms the Memorandum gave preference to the Class D shareholders. *See Kline Hawkes California SBIC, L.P. v. Superior Court*, 117 Cal.App.4th 183, 192 (Cal.App.2d Dist. 2004) ("The liquidation preference of a preferred stock refers to the amount that the holders of the preferred shares are entitled to receive upon any liquidation of the corporation and distribution of its assets, after the payment of all of its liabilities,

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller | Lovitt & Hannon, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller | Lovitt & Hannon, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

*before the holders of the common shares or any junior class or series of preferred shares will receive anything*.") (emphasis added). Thus, although Plaintiffs allege that the payment to 3i "favor[ed] the interests of 3i . . . over the interests of the remaining shareholders" (SAC ¶ 156), such supposed favoritism was bargained for at the time of 3i's investment and memorialized in the Company's Memorandum. Indeed, Plaintiffs acknowledge as much when they allege that their rights were modified by the issuance of the Class D senior preferred stock. (SAC ¶¶ 87, 89.)

The settlement with Align – in which OrthoClear assigned all of its intellectual property to Align and agreed to shutter its business – plainly constituted a "sale of all or substantially all" of OrthoClear's assets within the meaning of Section 12.[7] The liquidation preference in Section 12 was therefore triggered; as a result 3i – a Class D Shareholder – was entitled to payment of its full preferential amount of $10 million on a priority basis, ahead of Plaintiffs – all of whom are junior preferred shareholders.[8] Thus, far from constituting an unfair preference of 3i's interests over those of the remaining shareholders, the payment to 3i was OrthoClear's obligation and 3i's right under the Company's charter.[9]

The terms of the Memorandum and Articles, therefore, make clear that 3i was entitled to receive a return of its investment ahead of the junior preferred shareholders. Given that this result not only was permitted, but indeed was mandated, by the Company's own charter, Plaintiffs simply have not established – and cannot establish – that the payment to 3i in return for its Class D shares constituted, in any way, a "wrongful acquisition" of those funds. Lacking that essential element, Plaintiffs' claim for constructive trust simply does not lie.

---

[7] Plaintiffs effectively agree that the settlement meant a sale of all assets resulting in OrthoClear "exiting the clear alignment business." (SAC ¶ 107; *see also* SAC ¶¶ 94, 98(e).)

[8] Even supposing the Liquidation Preference somehow did not authorize (indeed, require) the payment to 3i (as it manifestly does), Section 9 of the Memorandum nonetheless permits the Company to redeem or repurchase Class D Shares if the redemption or repurchase is agreed to in writing by the Company and the holders of the Class D Shares. (Welsh Decl., Ex. 1.)

[9] Indeed, by agreeing to settle for less than its original investment and priority preference of $10 million, and yet relinquishing its entire senior preferred position, 3i permitted more funds to remain in the Company (and available for the junior preferred shareholders) than would have otherwise been the case.

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller | Lovitt & Hanson, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

## V. PLAINTIFFS HAVE NOT ADEQUATELY PLED THAT BADAWI BREACHED ANY FIDUCIARY DUTY

### A. Plaintiffs Have Not Alleged – and Cannot Allege – That Badawi Was on the OrthoClear Board at the Time of the Payment to 3i

Count V of the SAC alleges that Badawi breached his fiduciary duties to the shareholders by authorizing the payment to 3i.[10] Strikingly, however, the SAC does not allege that Badawi was on OrthoClear's Board at the time the payment to 3i was negotiated, authorized or made. (*See* SAC ¶ 29.) Indeed, Plaintiffs and their counsel could make no such allegation consistent with their obligations under Fed.R.Civ.P. 11, because Badawi resigned from the OrthoClear Board in early October of 2006, many months ***before*** the settlement between the Company and 3i took place.

In the absence of any allegation that Badawi was an OrthoClear director at the time of the settlement between OrthoClear and 3i, Plaintiffs cannot claim that Badawi breached any fiduciary duty in connection with that settlement. Indeed, it is well-settled that a director cannot be held liable for the actions of other board members after that director's resignation: "A corporate director cannot be held liable for board actions taken while not on the board." *In re James River Coal Co.*, 360 B.R. 139, 171 (Bankr. E.D. Va. 2007); *see also Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*, 2004 WL 1949290, *8 (Del.Ch. 2004) (averring that "once a director has resigned, that director may no longer be held liable for the subsequent actions of the Board"). The breach of fiduciary duty claim against Badawi should be dismissed, because Plaintiffs have failed to allege that Badawi was on the Board and, thus, that he owed any fiduciary duty during the time that OrthoClear negotiated, authorized or effected the settlement with 3i and returned a portion of 3i's original priority investment in the Company. In short, no "plausible grounds" exist for the claim that Badawi breached any fiduciary duty in connection with the 3i settlement. *See Twombly*, 127 S.Ct. at 1965.

[10] Although Count V is titled "Breach of Fiduciary Duty (Against D&O Defendants and Badawi)," Badawi is nowhere else mentioned in the count. All allegations are made regarding "the D&O Defendants" – a group which by definition does not include Badawi. (SAC ¶ 27.) It is therefore unclear precisely which allegations (if any) are intended to apply to Badawi.

B. Because the Payment Was Required by the Charter, It Cannot Form the Basis for a Fiduciary Duty Claim Against Any OrthoClear Director

Furthermore, the payment to 3i cannot form the basis for any claim of breach of fiduciary duty against any of the OrthoClear directors. As discussed *supra* (at pp. 8-10), the payment to 3i was consistent with – and, indeed, was mandated by – the Liquidation Preference terms set forth in Section 12 of the Memorandum of Association. No OrthoClear director could have breached a fiduciary duty by complying with the terms of the M&A. The payment to 3i, thus, cannot support a breach of fiduciary duty claim against any of the OrthoClear directors who were on the Board at the time the payment was approved, let alone against Badawi who had resigned from the Board months before.

**VI. PLAINTIFFS HAVE NOT ALLEGED WITH PARTICULARITY UNDER FED. R. CIV. P. 9(b) THAT BADAWI MADE ANY INTENTIONAL MISREPRESENTATION**

Plaintiffs have failed to state a claim for intentional misrepresentation against Badawi. Pursuant to Rule 9(b), "the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). Rule 9(b) requires the pleading of specific facts – including the time, place and content of the alleged fraud or misrepresentation and why the representation is false or misleading. *See In re Pacific Gateway Exch., Inc. Sec. Litig.*, 169 F.Supp.2d 1160, 1164 (N.D. Cal. 2001) (citing *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994)); *see also Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994); *Celador Int'l Ltd. v. Walt Disney Co.*, 347 F.Supp.2d 846, 855 (C.D. Cal. 2004) (*citing Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir. 1987)). Above all, Plaintiffs must allege who made the alleged misrepresentation. *Id.*; *see also In re Syntex Corp. Sec. Litig.*, 855 F.Supp. 1086, 1100 (N.D. Cal. 1994).

Here, Plaintiffs have alleged merely that Badawi and the D&O Defendants "collectively" misrepresented facts to Plaintiffs in the October 2, 2006 letter. (SAC ¶ 143.) With regard to Badawi, in particular, Plaintiffs allege only that the October 2 letter "was sent to shareholders on information and belief with the approval of the D&O Defendants and Badawi (and

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller | Lavitt & Hannon, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

in any event also would have been sent to the directors as shareholders)." (SAC ¶ 95.) This allegation is insufficient, as a matter of law, under Rule 9(b), which "requires a plaintiff to attribute particular fraudulent acts or statements to a particular defendant." *In re Syntex*, 855 F.Supp. at 1100.

Plaintiffs have failed to plead with particularity that Badawi was aware of or party to the unsigned October 2, 2006 letter that was allegedly sent to certain shareholders. They plead only on "information and belief" that the letter was sent somehow with Badawi's knowledge and approval. (SAC ¶ 95.) Allegations of fraud based on information and belief, let alone obvious supposition, are generally not sufficient to meet the requirements of Rule 9(b). *County of Santa Clara v. Astra United States, Inc.*, 428 F.Supp.2d 1029, 1036 (N.D. Cal. 2006). "[A] plaintiff who makes allegations on information and belief must state the factual basis for the belief." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993); *see also In re Worlds of Wonder Sec. Litig.*, 694 F.Supp. 1427, 1432-33 (N.D. Cal. 1988) (same). Here, the plaintiffs have not stated any factual basis for their belief that Badawi approved the October 2 letter, nor can they.

In addition to their failure to allege Badawi's role in the alleged misrepresentation, Plaintiffs have also failed to allege with particularity that the October 2 letter contained an actionable misstatement. Pursuant to Rule 9(b), Plaintiffs must set forth with particularity what is false about a misstatement. An allegation of "fraud by hindsight" – asserting that "later revelation of bad news" necessarily means that early, optimistic statements must have been false – is insufficient. *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086, 1094 (C.D. Cal. 1999). Plaintiffs here have pled no facts, such as inconsistent contemporaneous statements or information available to Defendants, to show that the statements in the October 2 letter were false when made. They have alleged only that *some five months after the October 2 letter* informed shareholders that the amount to be returned to each shareholder class had not yet been determined, 3i received a partial return on its senior preferred investment. This does not allege a misstatement at the time the statement was made. Such an allegation of fraud-by-hindsight is simply inadequate under Fed.R.Civ.P. 9(b).

BARTKOZANKEL
Bartko•Zankel•Tarrant•Miller | Lovitt & Hannan, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

VII. **CONCLUSION**

For all the reasons set forth above, all of the claims against Paul Badawi and 3i should be dismissed with prejudice.

DATED: August 7, 2007

BARTKO, ZANKEL, TARRANT & MILLER
A Professional Corporation

ROPES & GRAY LLP

By: /s/ Randall W. Bodner
Randall W. Bodner
Attorneys for Defendants
3i TECHNOLOGY PARTNERS III, LP
and PAUL BADAWI

BARTKOZANKEL
Bartko·Zankel·Tarrant·Miller | Lovitt & Hannan, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152