1  SHARTSIS FRIESE LLP
   ARTHUR J. SHARTSIS (Bar #51549)
2  CHARLES R. RICE (Bar #98218)
   JASON P. LEE (Bar #196520)
3  One Maritime Plaza, Eighteenth Floor
   San Francisco, CA  94111
4  Telephone:  (415) 421-6500
   Facsimile:  (415) 421-2922
5  Email:  ashartsis@sflaw.com

6  Attorneys for Defendants
   OCUMENTA CAPITAL HOLDINGS, INC.,
7  formerly known as OrthoClear Holdings, Inc.,
   OCUMENTA, INC., formerly known as OrthoClear,
8  Inc., MUHAMMAD ZIAULLAH CHISHTI,
   HUAFENG "CHARLES" WEN, PETER
9  RIEPENHAUSEN, ARTHUR T. TAYLOR,
   SAIYED ATIQ RAZA, and JOSEPH BREELAND

10

11                  UNITED STATES DISTRICT COURT

12               NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14  MICHAEL B. ESHELMAN, D.D.S.;          Case No.  C 07-01429 JSW
    PETER F. SILCHER, D.D.S; and
15  LORI I. SILCHER                       REPLY TO OPPOSITION TO MOTION
                                          TO DISMISS SECOND AMENDED
16              Plaintiffs,               COMPLAINT

17  v.                                    Date:      January 4, 2008
                                          Time:      9:00 a.m.
18  ORTHOCLEAR HOLDINGS, INC.,            Judge:     Hon. Jeffrey S. White
    a British Virgin Islands Company;
19  ORTHOCLEAR, INC., a Delaware          Trial Date:      Not set
    Corporation; MUHAMMAD ZIAULLAH        Action Filed:    March 12, 2007
20  CHISHTI, an individual; HUAFENG
    "CHARLES" WEN, an individual; PETER
21  RIEPENHAUSEN, an individual;
    ARTHUR T. TAYLOR, an individual;
22  SAIYED ATIQ RAZA, an individual;
    CHRISTOPHER KAWAJA, an individual;
23  PATRICIA HUMELL SEIFERT, an
    individual; JOSEPH BREELAND, an
24  individual; MUDASSAR RATHORE, an
    individual; PAUL BADAWI, an
25  individual; 3i Technology Partners III LP;
    and DOES 1 through 25, inclusive,
26
                Defendants.
27

28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1

# **TABLE OF CONTENTS**

2
**Page**

3    TABLE OF AUTHORITIES ....................................................................................... ii

     SUMMARY OF ARGUMENT ................................................................................... v

4    I.       ARGUMENT .................................................................................................... 1

5            A.    Plaintiffs Have Failed To Allege Particular Facts To Support Their
6                  Allegations On Information And Belief.................................................... 1

             B.    Plaintiffs Have Failed To State a 10b-5 Claim. ...................................... 1

7                  1.     OrthoClear disclosed the risks of the Align litigation.................. 1

8                  2.     Plaintiffs have not alleged actual reliance on any statements other
9                         than those in the Purchase Agreements........................................ 3

                   3.     Plaintiffs have not stated particular facts that create a strong
10                        inference of falsity or scienter....................................................... 4

             C.    Plaintiffs Have Failed To State A Claim For Intentional Misrepresentation.......... 6
11
             D.    Plaintiffs Have Failed To State A Claim For Negligent Misrepresentation. .......... 7

12           E.    Plaintiffs' Claims For Breach Of Fiduciary Duty And For Certain Statutory
13                 Violations Are Derivative Claims That Do Not Satisfy The Pleading
                   Requirements For Such Claims. .............................................................. 8

14           F.    Plaintiffs' Claims For Lack Of Registration Under Federal Law And Lack
                   Of Qualification Under California Law Fail To Provide Adequate Notice
15                 Of The Alleged Wrongdoing. .................................................................. 9

16           G.    The Nonregistration Claims Are Largely Time-Barred. ....................... 11

             H.    Plaintiffs Fail To State Any Claims Against Any Of The D&O Defendants. ...... 13

17   II.      CONCLUSION ............................................................................................... 15

18

19

20

21

22

23

24

25

26

27

28

Shartsis Friese LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
C 07-01429 JSW

REPLY TO OPPOSITION TO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

## **TABLE OF AUTHORITIES**

2

### **FEDERAL CASES**

3

*Bell Atlantic Corp. v. Twombley*,
    127 S. Ct. 1955 (2007) ........................................................... 9

4

*In re Boston Scientific Corp. Sec. Litig.*,
    490 F. Supp. 2d 142 (D. Mass. 2007) ................................... 2

5

6

*Bradford v. Moench*,
    809 F. Supp. 1473 (D. Utah 1992) ....................................... 12

7

*Clayton Brokerage Co. v. Commodities Futures Trading Commission*,
    794 F.2d 573 (11th Cir. 1986) ............................................... 2

8

*Commodities Futures Trading Commission v. Sidoti*,
    178 F.3d 1132, 1136 (11th Cir. 1999) ................................... 2

9

10

*County of Santa Clara v. Astra United States, Inc.*,
    428 F. Supp. 2d 1029 (N.D. Cal. 2006) ............................ 1, 2

11

*Crowley v. Peterson*,
    206 F. Supp. 2d 1038 (C.D. Cal. 2002) ............................... 12

12

13

*Fecht v. Price Co.*,
    70 F.3d 1078 (9th Cir. 1995) ................................................. 3

14

*Fisk v. Superannuities, Inc.*,
    927 F. Supp. 718 (S.D.N.Y. 1996) ................................. 10, 11

15

16

*Howard v. Hui*,
    2001 U.S. Dist. LEXIS 15443 (N.D. Cal. 2001) ................. 14

17

*Hudson v. Capital Management International, Inc.*,
    1982 U.S. Dist. LEXIS 10070 (N.D. Cal. 1982) ................. 13

18

19

*In re Immune Response Sec. Litig.*,
    375 F. Supp. 2d 983 (S.D. Cal. 2005) ................................ 4, 5

20

*Kaplan v. Rose*,
    49 F.3d 1363 (9th Cir. 1994) ............................................... 14

21

22

*In re Laser Arms Corp. Sec. Litig.*,
    794 F. Supp. 475 (S.D.N.Y. 1989) ..................................... 10

23

*Lubin v. Sybedon Corp.*,
    688 F. Supp. 1425 (S.D. Cal. 1988) ................................... 12

24

25

*Morse v. Peat Marwick*,
    445 F. Supp. 619 (S.D.N.Y. 1977) ..................................... 12

26

*Pareto v. FDIC*,
    139 F.3d 696 (9th Cir. 1998) ............................................. 7, 8

27

28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

*In re Pixar Sec. Litig.*,
    450 F. Supp. 2d 1096 (N.D. Cal. 2006) ........................................................... 5

*In re Read-Rite Corp. Sec. Litig.*,
    335 F.3d 843 (9th Cir. 2003)........................................................................... 4

*In re Rexplore, Inc.*,
    671 F. Supp. 679 (N.D. Cal. 1987) ............................................................... 12

*In re SeaChange Int'l*,
    2004 U.S. Dist. LEXIS 1687 (D. Mass. 2004)................................................ 2

*Sheldon v. Vermonty*,
    2000 U.S. App. LEXIS 27292 (10th Cir. 2000) ........................................... 12

*In re Silicon Graphics Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999).......................................................................... 1

*In re Splash Technology Holdings, Inc. Sec. Litig.*,
    2000 U.S. Dist. LEXIS 15370 (N.D. Cal. 2000)........................................... 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007) .................................................................................. 4

*Toombs v. Leone*,
    777 F.2d 465 (9th Cir. 1985).......................................................................... 12

*Underhill v. Royal*,
    769 F.2d 1426 (9th Cir. 1985)........................................................................ 10

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
    382 F. Supp. 2d 1173 (N.D. Cal. 2004) ......................................................... 3

*In re Verisign, Inc. Deriv. Litig.*,
    2007 U.S. Dist. LEXIS 72341 (N.D.Cal. 2007).............................................. 9

*Wolf v. Banco Nacional de Mexico*,
    549 F. Supp. 841 (N.D. Cal. 1982) ............................................................... 10

## STATE CASES

*Gemstar Ltd. v. Ernst & Young*,
    901 P.2d 1178 (Ariz. Ct. App. 1995) .............................................................. 8

*Saliter v. Pierce Bros. Mortuaries*,
    81 Cal. App. 3d 292 (1978)........................................................................... 12

*Schuster v. Gardner*,
    127 Cal. App. 4th 305 (2005) ......................................................................... 8

*Small v. Fritz Companies, Inc.*,
    30 Cal. 4th 167 (2003) .............................................................................. 6, 7

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
C 07-01429 JSW

REPLY TO OPPOSITION TO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

# STATUTES

FRCP 8(a)(2) .................................................................................................................. 9

FRCP 9(b) .............................................................................................................. v, 1, 6

FRCP 15(a) ...................................................................................................................... 7

15 U.S.C. § 77l ............................................................................................................. 13

15 U.S.C. § 77m ........................................................................................................... 11

15 U.S.C. § 78u-4(b)(1)(B) ........................................................................................... 1

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- iv -

Case No.
C 07-01429 JSW

REPLY TO OPPOSITION TO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1

## SUMMARY OF ARGUMENT

2

The OrthoClear Defendants have moved to dismiss all claims because:

3

4

5

6

- Plaintiffs do not satisfy the requirements for pleading a Rule 10b-5 claim, as modified by the Private Securities Litigation Reform Act ("PSLRA"), because (1) OrthoClear disclosed the risks of the Align litigation to all investors; (2) plaintiffs do not allege reliance on – or even receipt of – any allegedly misleading "public" statement; (3) plaintiffs do not allege particular facts that create a strong inference of scienter; and (4) plaintiffs do not allege particular facts that support their information and belief allegations;

7

8

- Plaintiffs fail to satisfy the reliance requirements for their intentional and negligent misrepresentation claims;

9

10

- Plaintiffs cannot pursue their claims for breach of fiduciary duty and for certain statutory violations without satisfying the pleading requirements for such derivative claims;

11

- Plaintiffs do not allege any factual grounds for their registration and qualification claims, and the former are largely time-barred; and

12

- Plaintiffs do not state a claim against any of the D&O Defendants.

13

*See Motion to Dismiss ("Motion"), Section II.*

14

15

16

17

18

Plaintiffs' opposition does not address their failure to allege particular facts to support their information and belief allegations, as required by the PSLRA.  In fact, the Second Amended Complaint does not even specify what OrthoClear supposedly stole from Align, but instead asserts broadly and without any supporting detail that "virtually every aspect of OrthoClear's business derived from Align's intellectual property."  *SAC, para. 2.*  In addition, plaintiffs have

19

20

21

22

not explained how they can pursue fraud claims for statements that they have not alleged that they received – especially when many of the statements were made after their investments.   Such deliberately vague pleading does not satisfy FRCP 9(b) – much less the PSLRA – so all of their fraud claims should be dismissed.

23

24

25

26

27

28

Plaintiffs' 10b-5 allegations also do not create a strong inference of scienter, and their other claims do not satisfy the legal standards applicable to such claims.  They implicitly concede such defects by offering additional, unpleaded explanations for their claims, but their arguments are no substitute for actual allegations of particular facts that might support their claims.  Accordingly, the OrthoClear Defendants respectfully request dismissal of all of the claims against them.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
C 07-01429 JSW

REPLY TO OPPOSITION TO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1    I.    **ARGUMENT**

2         A.    **Plaintiffs Have Failed To Allege Particular Facts To Support Their**
3              **Allegations On Information And Belief.**

4              Almost all of the allegations in the Second Amended Complaint are made on information

5    and belief, but plaintiffs have not stated any particular facts to support such allegations.  *SAC at*

6    *1:6-8; Motion at 8-9.*  They do not allege the source of information for any of their charges or any

7    other corroborating factual details.  And they do not identify a single specific patent or trade

8    secret that was allegedly stolen from Align as support for their claim of "wholesale theft" by

9    OrthoClear.

10             These information and belief allegations fail to satisfy the PSLRA, which expressly

11   requires that such allegations "state with particularity all facts on which that belief is formed."  *15*

12   *U.S.C. § 78u-4(b)(1)(B).  See also In re Silicon Graphics Sec. Litig.,* 183 F.3d 970, 983 (9th Cir.

13   1999) (plaintiff "must provide all the facts forming the basis for her belief in great detail").  These

14   allegations also fail to satisfy FRCP 9(b).  *See County of Santa Clara v. Astra United States, Inc.,*

15   428 F. Supp. 2d 1029 1036 (N.D. Cal. 2006) (Alsup, J.) ("Allegations of fraud based on

16   information and belief do not satisfy the particularity requirement" of Rule 9(b) "unless

17   accompanied by a statement of the specific facts on which the belief is founded").

18             Plaintiffs do not try to defend their inadequate information and belief allegations.  In fact,

19   their opposition brief does not even mention the issue, implicitly conceding their failure to

20   comply with the PSLRA and Rule 9(b).  Accordingly, their 10b-5 claim and intentional and

21   negligent misrepresentation claims should be dismissed on that ground alone.

22        B.    **Plaintiffs Have Failed To State a 10b-5 Claim.**

23             1.    **OrthoClear disclosed the risks of the Align litigation.**

24             The relevant Purchase Agreements contained extensive disclosures of the risks of

25   investing in OrthoClear Holdings, including the risk that "EACH INVESTOR COULD LOSE

26   HIS OR HER ENTIRE INVESTMENT."  *See Motion at 4, quoting Class A Preferred Shares*

27   *Purchase Agreement, para. 4.1* (all capitals in original).[1]  Purchasers expressly acknowledged

28   _____
     [1]    Plaintiffs have not objected to the OrthoClear Defendants' Request for Judicial Notice of

REPLY TO OPPOSITION TO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    that they understood that the Align litigation "could have a substantial adverse effect on the

2    Company and on any investment in shares." *Id., para. 4.17.*

3         Each Purchase Agreement also contained a Schedule of Exceptions that described the

4    multiple fronts of the Align litigation and warned:

5         **The outcome of this [Align] litigation is unknown.**  Any outcome or interim
         decision of the Court that is adverse to the Company … could have a **significant**
6         **adverse impact on the Company**, including, without limitation, its ability to
         conduct its business, and any investment in the Company therefore is made with
7         the risk that **some or all of such investment may be lost** in the event of such an
         adverse ruling or outcome and the consequences that will flow from it."
8

9    *Id., Schedule of Exceptions, para. 2.10* (emphasis added).

10        Plaintiffs try to dismiss these warnings as "boilerplate," as if pejoratively labeling such

11   explicit disclosures could allow investors to ignore them.  *See Opp. at 3.*  They do not, however,

12   cite any authority that required greater disclosure about pending litigation.  To the contrary, as

13   noted in the moving papers, the courts have held that very similar disclosures were not actionable.

14   *See In re Boston Scientific Corp. Sec. Litig.,* 490 F. Supp. 2d 142, 153 (D. Mass. 2007) (company

15   "was only obligated to mention the litigation in general descriptive terms, as required by Item 103

16   of Regulation S-K" and "was not obligated to predict the outcome or estimate the impact"); *In re*

17   *SeaChange Int'l*, 2004 U.S. Dist. LEXIS 1687 at *28 (D. Mass. 2004) ("given the well

18   understood vagaries of litigation," general disclosure about litigation was not misleading).

19        Plaintiffs ignore this authority and instead rely on cases in which the defendant told the

20   plaintiffs to ignore the written risk disclosures.  *See Opp. at 4, citing Commodities Futures*

21   *Trading Commission v. Sidoti*, 178 F.3d 1132, 1136 (11th Cir. 1999); *Clayton Brokerage Co. v.*

22   *Commodities Futures Trading Commission*, 794 F.2d 573, 580 (11th Cir. 1986).  Plaintiffs do not,

23   however, allege any such lulling statements here.

24        Plaintiffs argue that the Purchase Agreement "warnings do nothing to contradict the

25   express statements that the litigation has '*no basis*' and that the operation of the Company's

26   business '*does not infringe any patent or other proprietary rights of others.*'"  *Opp. at 3-4*

27   ─────────────────────────────────────
     the Purchase Agreements for the Series A, B and C Preferred Shares, which are attached to the
28   Declaration of Charles R. Rice ("Rice Dec.").

Shartsis Friese LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.                          REPLY TO OPPOSITION TO
C 07-01429 JSW          MOTION TO DISMISS SECOND AMENDED COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

(emphasis in original).  In fact, the Purchase Agreements never say that the Align litigation has "no basis."  Instead, as quoted by plaintiffs themselves, Section 2.10 of the Class A Purchase Agreement states that, "**[o]ther than the lawsuit filed … by Align … and described in the Schedule of Exceptions,"** the Company is not "aware that there is any basis" for any claim that might result in a material adverse change to the Company.  *See SAC, para. 7* (emphasis added).

Plaintiffs also stress that the Purchase Agreements state that, "[t]o the Company's knowledge, the operation of the Company's business does not infringe any patent or other proprietary rights of others …"  *Id., quoting Series A Purchase Agreement, Section 2.13.*  But plaintiffs have not alleged any particular facts that show that this statement was knowingly false when made.  In addition, this statement must be read in the context of the entire Purchase Agreement and Schedule of Exceptions, which describe the Align litigation in detail and warn of the possible adverse impact, including the loss of some or all of any investment.  *See Fecht v. Price Co.,* 70 F.3d 1078, 1082 (9th Cir. 1995) ("statements must be analyzed in context).

### 2.    Plaintiffs have not alleged actual reliance on any statements other than those in the Purchase Agreements.

In addition to the Purchase Agreements, plaintiffs base their 10b-5 claim on various alleged representations in press releases, customer letters and other "public" statements.  They do not, however, allege that any named plaintiff actually heard or otherwise received any of these statements.  *See Motion at 5; SAC, paras. 70-86.*  And they do not allege that they actually purchased any securities in reliance on any particular statements or even specify which statements were made before their respective investments.  *Id.*

Plaintiffs' opposition does not cite – much less quote – any allegations that they actually received any of OrthoClear's "public" statements.   Instead, they rely only on conclusory allegations that "they and other putative class members relied on these misrepresentations to their detriment."  *Opp. at 4, citing SAC, paras. 36, 145, 153.*  Such allegations do not satisfy the actual reliance requirement for a 10b-5 claim because they are not supported by any specific factual allegations.  *See In re Van Wagoner Funds, Inc. Sec. Litig.,* 382 F. Supp. 2d 1173, 1187-88 (N.D. Cal. 2004) (White, J.) (plaintiffs failed to plead reliance with required particularity).

3. **Plaintiffs have not stated particular facts that create a strong inference of falsity or scienter.**

In order to satisfy the PSLRA, a plaintiff must allege particular facts that create a "strong inference that defendants intentionally or [with] deliberate recklessness made false or misleading statements to investors." *In re Read-Rite Corp. Sec. Litig.,* 335 F.3d 843, 846 (9th Cir. 2003). This strong inference of scienter "must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 127 S. Ct. 2499, 2504-05 (2007).

Here, plaintiffs rely on exactly the sort of "fraud by hindsight" allegations that the PSLRA was enacted to prevent. In essence, they claim that the Align settlement compels the conclusion that earlier statements about that litigation must have been knowingly false. They even claim that this settlement shows that OrthoClear and each of the D&O Defendants "knew or should have known that OrthoClear's entire business was based upon the **wholesale theft** of intellectual property" and that "**virtually every aspect** of OrthoClear's business derived from Align's protected intellectual property." *SAC, para. 2* (emphasis added). Lawsuits are settled for many reasons, however, so plaintiffs' proposed inference of scienter rests on too slender a reed.

Significantly, Plaintiffs have not cited a single case in which a court found that the difference between early statements about litigation and a subsequent settlement created a strong inference of scienter. Moreover, as plaintiffs' own authority shows, to support their proposed inference of fraud, they must allege inconsistent **contemporaneous** statements or actions by the OrthoClear Defendants. *See In re Immune Response Sec. Litig.,* 375 F. Supp. 2d 983, 1018 (S.D. Cal. 2005) (complaint "must contain allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made"), *cited by Opp. at 5, 6 and 7.* Here, however, plaintiffs have not alleged a single negative internal report about the Align litigation or any other contemporaneous statement that was inconsistent with the disclosures to investors. Nor have they alleged any contemporaneous actions or conditions – such as insider trading – that might be inconsistent with

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
C 07-01429 JSW

REPLY TO OPPOSITION TO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

1    such disclosures.[2]

2            The Align settlement by itself does not create a strong inference of scienter because

3    litigation results are inherently unpredictable – just as the Purchase Agreements warned.  An

4    allegedly unfavorable settlement does not compel the conclusion that every allegation of the

5    "winning" party was true – much less that all of the management of the other party always knew

6    that they would lose.  To the contrary, it does not make sense that experienced business people

7    would devote years of their life to a company that they supposedly knew was doomed to fail.

8            In addition, plaintiffs' allegations about the terms of the settlement belie their contention

9    that "virtually every aspect" of OrthoClear's business was based on "wholesale theft" of Align's

10   intellectual property.  *See SAC, para. 91.*  Align paid $20 million to OrthoClear for what was

11   essentially a purchase of the latter's business, specifically including all of its intellectual property.

12   *Id.*  It would not have done so if plaintiffs' charges were true.

13           Plaintiffs' opposition stresses two "facts" other than the Align settlement that supposedly

14   create a strong inference of scienter: (1) the D&O Defendants' allegedly "extensive access to

15   Align's IP, manufacturing process and marketing plans;" and (2) the "time it took OrthoClear to

16   get to market."  *Opp. at 7-8.*  But plaintiffs do not allege that anyone ever concealed this allegedly

17   incriminating information from them.  Moreover, neither of these "facts" is alleged with the

18   required particularity, and neither creates a strong inference of scienter.

19           Plaintiffs never attempt to allege what particular secrets were supposedly stolen – much

20   less exactly how each D&O Defendant had "extensive access" to all such secrets.  And, in any

21   event, even "extensive access" would show nothing more than opportunity, which is not sufficient

22   to state a claim for securities fraud.  *See In re Pixar Sec. Litig.*, 450 F. Supp. 2d 1096, 1104 (N.D.

23   Cal. 2006) (White, J.) ("motive and opportunity is insufficient" to create strong inference of

24   scienter).

25

26   _____
     [2]     Contrary to plaintiffs' assertion, the OrthoClear Defendants have not "attempt[ed] to
27   introduce supposed evidence that some of the Individual Defendants invested money in
     OrthoClear."  *Opp. at 8, n.3.*  Instead, the moving papers argued that plaintiffs' failure to allege
28   any suspicious facts about such investments, such as insider trading at significant times,
     undermines any inference of scienter here.  *See Motion at 8.*

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.                              REPLY TO OPPOSITION TO
C 07-01429 JSW            MOTION TO DISMISS SECOND AMENDED COMPLAINT

Similarly, plaintiffs' assertion that "OrthoClear was able to accomplish the same feat" as Align, *i.e.,* getting a product to market, in "far less" time means very little because, among other things, Align started in 1997 and OrthoClear started in 2005. *SAC, paras. 36 and 47.* Building a second mousetrap usually does not take as long as building the first. Moreover, plaintiffs do not provide any details about what OrthoClear actually did to get its products to market – much less explain how OrthoClear supposedly saved time by cheating.

Finally, and perhaps most importantly, plaintiffs never allege that anyone ever concealed the alleged facts that supposedly now give rise to a strong inference of scienter. Under such circumstances, plaintiffs cannot credibly claim to be "shocked" by the prior work experience of OrthoClear's founders or the speed with which OrthoClear developed and marketed its products when they apparently did not find these facts to be suspicious when they invested.[3]

## C.   Plaintiffs Have Failed To State A Claim For Intentional Misrepresentation.

Count III alleges that, **after all of plaintiffs' investments** were made, the OrthoClear Defendants intentionally misrepresented the Align settlement and "Plaintiffs reasonably relied on these misrepresentations by not taking further actions to obtain a return of their funds." *SAC, para. 142.* In short, this claim is based only on post-investment statements.

Such a "holder's action" against corporate management for alleged fraud cannot be maintained under California law without "a bona fide showing of actual reliance upon the misrepresentations." *See Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 171 (2003).

> The **plaintiff must allege actions**, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the plaintiff actually relied on the misrepresentations.

*Id.* at 184 (emphasis added). The California Supreme Court stressed that this pleading requirement was necessary in order to avoid "encouraging nonmeritorious suits." *Id.* at 183.

---

[3]   Plaintiffs also allege that "Defendants petitioned anonymously for re-examination by the United States Patent Office of Align's broadest patents." *Opp. at 7.* But plaintiffs do not allege any details about the petition or the patents involved – not even whether, when and how the petition was resolved or whether and how the re-examined patents related to Align's claims. *See SAC, para. 74.* Such information and belief allegations do not satisfy the PSLRA or FRCP 9(b). *See Section I.A. above.* And, in any event, given the stakes and complexity of the Align lawsuits, such litigation tactics, even in isolation, are hardly evidence of scienter.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1   The Second Amended Complaint does not satisfy this requirement.  Plaintiffs allege that

2   they "reasonably relied" on representations about the Align settlement "by not taking further

3   actions to obtain a return of their funds."  *SAC, para. 145.*  But they do not allege any specific

4   actions that they would (and could) have taken at that point "to obtain a return of their funds," so

5   they have not made the required "bona fide showing of reliance."  *Small*, 30 Cal. 4th at 171.

6   Plaintiffs now try to supplement their insufficient allegations by submitting a copy of an

7   unsigned letter about the Align settlement that was e-mailed to a single investor in October 2006.[4]

8   *Opp. at 9, citing Nabwangu Dec., Ex. A.*  They appear to be arguing that, but for alleged

9   misrepresentations in this letter, they and other shareholders would not have approved the Align

10  settlement, but they do not quote any allegation to that effect in the Second Amended Complaint.

11  Plaintiffs' supplemental submission is no substitute for proper pleading, so it cannot save

12  Count III.  *See FRCP 15(a)* (after responsive pleading, complaint can be amended only by leave

13  of court or stipulation).  Moreover, given their other allegations, it would be difficult for plaintiffs

14  to allege in good faith that they truly would have been better off if OrthoClear had not received

15  $20 million in cash from the Align settlement.  And, in any event, any such claim would be

16  derivative, because plaintiffs' only loss would be a possible reduction in the value of their shares.

17  *See Pareto v. FDIC*, 139 F.3d 696, 700 (9th Cir. 1998) (action was derivative because plaintiff's

18  "only injury" from misrepresentations by corporate directors about unsuccessful merger "was the

19  devaluation of his stock").  *See also Section I.E below.*

20  **D.**   **Plaintiffs Have Failed To State A Claim For Negligent Misrepresentation.**

21  Count IV alleges that "Plaintiffs reasonably relied on" all of the alleged

22  misrepresentations about the Align litigation and settlement and a prospective IPO "by

23  purchasing or otherwise acquiring OrthoClear Holdings securities."  *SAC, paras. 148-51 and 153.*

24  But, as discussed above, plaintiffs never allege that they actually heard or otherwise received any

25  of the "public" statements that were supposedly false or misleading.  *See SAC, paras. 70-86.*

26

---

27  [4]   Plaintiffs allege on information and belief that this letter was sent to all shareholders, but
28  they do not allege that they actually received it – even though that is well within their own
    personal knowledge.  *SAC, para. 95.*

Case No.
C 07-01429 JSW                          REPLY TO OPPOSITION TO
                          MOTION TO DISMISS SECOND AMENDED COMPLAINT

1   Thus, they cannot credibly claim to have relied on any – much less all – of such statements.  Nor

2   could they have relied on all such statements when purchasing OrthoClear securities, as alleged,

3   given the timing of the statements and plaintiffs' own investments.

4   　　　Many of the alleged "public" statements – which stretch from February 2005 to March

5   2006 – were made after some or all of each plaintiff's investments.  *Id.*  For example, the letter to

6   investors on March 22, 2006, regarding a potential IPO was sent after the last investment by any

7   named plaintiff on March 13, 2006.  *SAC, paras. 13-15 and 86.*  Accordingly, plaintiffs'

8   conclusory allegation that they "reasonably relied" on all of the alleged misrepresentations about

9   an IPO and the Align litigation and settlement "by purchasing or otherwise acquiring OrthoClear

10  Holdings securities" is overbroad on its face.  *Id., paras.148 and 153*.

11  　　　Plaintiffs' opposition argues that "California law has recognized that where the same

12  material misrepresentations **actually have been communicated** to each member of a class, an

13  inference of reliance arises as to the entire class."  *Opp. at 10* (emphasis added).  But the Second

14  Amended Complaint does not allege that the "entire class" – or even the named plaintiffs –

15  actually heard the "same material misrepresentations" before purchasing OrthoClear securities.

16  *See SAC, paras. 70-86.*  Thus, plaintiffs do not satisfy their own test, so their negligent

17  misrepresentation claim should be dismissed.

18  　　　**E.**　　**Plaintiffs' Claims For Breach Of Fiduciary Duty And For Certain Statutory Violations Are Derivative Claims That Do Not Satisfy The Pleading Requirements For Such Claims.**

19

20  　　　Count V (breach of fiduciary duty), Count VI (violation of BVI Companies Act §121) and

21  Count VII (violation of California Corporations Code §2116) are based on OrthoClear Holdings'

22  payment to Defendant 3i Technology ("3i") in March 2007 and are therefore derivative in nature.

23  *Motion at 9.*  Any harm was suffered in the first instance by the corporation, not by the plaintiffs,

24  so these claims must be dismissed because plaintiffs have not satisfied the "demand" and other

25  pleading requirements for derivative claims.  *See Schuster v. Gardner,* 127 Cal. App. 4th 305, 312

26  (2005); *Gemstar Ltd. v. Ernst & Young,* 901 P.2d 1178, 1189 (Ariz. Ct. App. 1995) (shareholders

27  of British Virgin Islands company, "under the generally accepted corporate law of both Arizona

28  and the British Virgin Islands, … had no cognizable, individual injury" from defendants' alleged

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 8 -

1   diversion of corporate assets), *vacated on other grounds,* 917 P.2d 222 (1996).

2          Plaintiffs respond by arguing that their claims are direct – not derivative – because they

3   allege an "injury suffered by one group of shareholders (Series A, B and C) as a result of

4   unlawful payments made to another group (3i/ the Series D)."  *See Opp. to 3i Motion at 4.*  They

5   argue that defendants breached duties owed directly to plaintiffs by allegedly favoring another

6   shareholder and by allegedly misleading plaintiffs about the Align settlement.  *Id. at 5.*  But

7   plaintiffs ignore the fact that the allegedly wrongful payment to 3i was made by the corporation –

8   not by the Series A, B and C preferred shareholders – so a direct recovery of that payment by

9   those preferred shareholders would violate the rights of the company's other stakeholders,

10  including 3i, the common shareholders and the creditors.

11         The only possible loss suffered by plaintiffs from OrthoClear Holdings' payment to 3i was

12  an alleged reduction in the value of the preferred shares that they had already purchased.

13  Accordingly, Counts V, VI and VII are derivative, and plaintiffs' attempt to "jump the line" by

14  bringing a direct claim should be rejected.

15         **F.      Plaintiffs' Claims For Lack Of Registration Under Federal Law And Lack Of**
           **Qualification Under California Law Fail To Provide Adequate Notice Of The**
16         **Alleged Wrongdoing.**

17         Count II (unregistered securities) and Count IX (unqualified securities) fail to satisfy

18  FRCP 8(a)(2), because these counts do not allege any factual basis for the alleged statutory

19  violations.  *Motion at 11-12.*  In particular, plaintiffs do not allege any facts that show that

20  defendants are not entitled to the private placement exemption that is described in the offering

21  materials.  *See SAC at 41 and 46-47; Rice Dec., Ex. A: Series A Purchase Agreement, para. 4.15.*

22         Rule 8(a)(2) "requires more than labels and conclusions, and a formulaic recitation of the

23  elements of a cause of action."  *Bell Atlantic Corp. v. Twombley,* 127 S. Ct. 1955, 1965 & n. 3

24  (2007).  It "requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Id.*

25  Counts II and IX fail to satisfy this standard because they do nothing more than assert that the

26  statutes have been violated.  *See also In re Verisign, Inc. Deriv. Litig.*, 2007 U.S. Dist. LEXIS

27  72341 at *26 (N.D.Cal. 2007) (following *Bell Atlantic*).

28         Plaintiffs ignore these authorities, which were cited in the Motion at 12, and instead rely

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 9 -

REPLY TO OPPOSITION TO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

on cases that stated the undisputed elements for a Section 12(a)(1) claim but did not address a challenge under Rule 8(a)(2). *See Opp. at 11-12.* For example, in *Wolf v. Banco Nacional de Mexico,* 549 F. Supp. 841, 853 (N.D. Cal. 1982), *rev'd on other grounds,* 739 F. Supp. 1458 (9th Cir. 1984), the court granted summary judgment – not a motion to dismiss – and there was "no dispute as to any of these elements of liability." Similarly, *In re Laser Arms Corp. Sec. Litig.,* 794 F. Supp. 475, 481 (S.D.N.Y. 1989), recited the elements of a Section 12(a)(1) claim in considering a motion to dismiss. But then the court examined whether the plaintiffs had alleged sufficient facts to deprive the defendants of the statutory exemptions that were apparently applicable to the transactions at issue. *Id.* at 482-85.

Plaintiffs also cite *Underhill v. Royal,* 769 F.2d 1426, 1434 (9th Cir. 1985), but that case only upheld a **jury verdict** that the defendant had "reasonable grounds to believe that the intrastate exemption rules may have been violated." And the court stressed defendants' advertising of the offer "by newspaper and radio throughout the San Diego area over a five-year period." *Id.* Plaintiffs have not alleged any such general solicitation here.

Finally, plaintiffs cite *Fisk v. Superannuities, Inc.,* 927 F. Supp. 718, 730-31 (S.D.N.Y. 1996), for the proposition that defendants have the burden of proving an exemption from the federal registration requirements.[5] *Opp. at 12.* There, however, plaintiff survived a motion to dismiss claims under Section 12(a)(2) – not 12(a)(1) – by stressing that a shareholder list showed "over one hundred holders, some with holdings as small as 2,500 shares, circumstances suggesting to him that the offering was not limited to the sort of investors" required for a private placement exemption. *Fisk*, 927 F. Supp. at 730. Here, by contrast, Plaintiffs have not alleged any such basis for denying the expected exemption.

Plaintiffs implicitly concede that their pleading does not adequately explain their claims for sale of unregistered and unqualified securities, because they try to explain these claims further in their opposition brief. *See Opp. at 12.* They assert that they "can allege facts indicating that

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

---

[5]   The OrthoClear Defendants do not dispute that they ultimately have the burden of proving exemption from the registration and qualification requirements, but that does not excuse plaintiffs from complying with Rule 8(a)(2) by alleging a factual basis that will give defendants adequate notice of their claims.

REPLY TO OPPOSITION TO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1 Defendants failed to stay within the limits of the [private placement] exemption" – specifically

2 that "Defendants used [OrthoClear's] orthodontic appliance sales force to offer its securities in

3 small blocks to several hundred investors" and that "sales representatives were encouraged to use

4 their bonus money" to purchase preferred shares.  *Id.*

5 Significantly, however, plaintiffs have not alleged – and do not argue – that they

6 themselves were not accredited investors or that any sales to them violated any requirements for

7 the private placement exemption.  Instead, plaintiffs apparently intend to rely on subsequent

8 offers and sales to other people as a basis for their Section 12(a)(1) claims.  *Id. at 12-13.*

9 Plaintiffs' novel theory has many problems, as discussed in the following section.  For

10 present purposes, however, the most important problem is that the Second Amended Complaint

11 does not give adequate notice of this new claim or allege any facts that might support it.

12 Accordingly, Counts II and IX should be dismissed.

13 **G.      The Nonregistration Claims Are Largely Time-Barred.**

14 Plaintiffs' claims under Section 12(a)(1) of the 1933 Securities Act are largely barred by

15 the applicable statute of limitations because they were brought more than one year after almost all

16 of plaintiffs' purchases of OrthoClear Holdings securities.  *See Motion at 12-13.*   Under

17 Section 13 of the same Act, any such claim must be brought "within one year after the violation

18 upon which it is based."  *See 15 U.S.C. § 77m.*

19 Plaintiffs Lori and Peter Silcher purchased Class A preferred shares in April and June

20 2005, and Plaintiff Michael Eshelman purchased Class B preferred shares in October 2005 and

21 Class C preferred shares on March 13, 2006.  *SAC, paras. 13-15.*  They filed suit on March 12,

22 2007, so only the last purchase by Plaintiff Eshelman was within the one year limitations period.

23 Plaintiffs do not dispute that most of their Section 12(a)(1) claims are time-barred if the

24 one year limitations period runs from their purchases, but they assert that these claims "did not

25 accrue until the offering was completed, or at least until OrthoClear violated the requirements of

26 the [private placement] exemptions."  *Opp. at 12.*[6]  They argue that the Ninth Circuit "has left

27 ---

[6]      Plaintiffs also argue that the offerings of the Series A, B and C preferred shares should be
28 treated as "a single offering" for purposes of applying the private placement rules because "the
circumstances were so similar."  *See Opp. at 12, n. 6, citing 17 CFR 230.502* (rules for

- 11 -

REPLY TO OPPOSITION TO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1   open the question of whether or not the date of the violation should be measured from the date of

2   the last sale of the unregistered security to **any** investor, instead of from the date of the sale to a

3   particular plaintiff." *Id. at 13*.  In fact, that court simply stated in a footnote that Section 13 "does

4   not make clear whether the one-year requirement may be satisfied by the allegation of sales-

5   related activities in which the plaintiff was not involved." *Toombs v. Leone,* 777 F.2d 465, 468

6   n.3 (9th Cir. 1985).  It concluded, however, that it "need not decide this issue" because the

7   plaintiff had failed to present any facts about "sales activities with other investors." *Id.*

8   Accordingly, the Ninth Circuit found that the plaintiff was time-barred because he had brought

9   suit more than one year after his own purchase. *Id.* at 468.

10      Even though *Toombs* was decided over twenty years ago, plaintiffs do not cite even one

11   case that has actually held that the one year limitations period in Section 13 was extended by any

12   "sales activities in which the plaintiff was not involved."  To the contrary, the federal courts have

13   consistently calculated this one year period from the plaintiff's own purchase of securities.  *See*,

14   *e.g., Sheldon v. Vermonty,* 2000 U.S. App. LEXIS 27292 at *12-13 (10th Cir. 2000); *In re*

15   *Rexplore, Inc.*, 671 F. Supp. 679, 687 (N.D. Cal. 1987) (Jensen, J.); *Lubin v. Sybedon Corp.*, 688

16   F. Supp. 1425, 1452 (S.D. Cal. 1988).

17      Plaintiffs argue that the "statute only begins to run 'upon the occurrence of the last fact

18   essential to the cause of action.'" *Opp. at 13*.  But the cases that they have cited involved common

19   law negligence – not federal securities registration.  *See Crowley v. Peterson,* 206 F. Supp. 2d

20   1038, 1041-42 (C.D. Cal. 2002); *Saliter v. Pierce Bros. Mortuaries,* 81 Cal. App. 3d 292 (1978).[7]

21      In addition, plaintiffs' theory that the "last fact essential to the[ir] cause of action"

22   occurred **after** their own purchases would mean conceding that their purchases were legal at the

23   time.  They do not, however, cite a single case that has held that a plaintiff whose own investment

24   determining whether offers and sales are "integrated for purposes of the exemptions under
25   Regulation D").   The Second Amended Complaint does not, however, assert any such
    "integration" or allege any facts that might support this new theory.

26   [7]   Plaintiffs also cite two cases deciding the date that securities had been "*bona fide* offered
    to the public" for purposes of Section 13's alternative three year limitation period, which runs
27   from that date, but these cases do not discuss Section 13's one year limitation period.  *See*
    *Bradford v. Moench*, 809 F. Supp. 1473, 1485-90 (D. Utah 1992); *Morse v. Peat Marwick*, 445 F.
28   Supp. 619, 623-24 (S.D.N.Y. 1977).

Case No.
C 07-01429 JSW

REPLY TO OPPOSITION TO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1   satisfied the private placement exemption could recover because a subsequent investment by

2   another investor did not.

3        Moreover, plaintiffs' theory is inconsistent with the actual language of Section 12(a)(1),

4   which provides that "[a]ny person who … offers or sells a security in violation of Section 5 …

5   shall be liable … to the **person purchasing such security** from him." *15 U.S.C. § 77l* (emphasis

6   added).  In other words, by its terms, the statute permits a claim by only the person who

7   purchased a security that was offered and sold in violation of federal law.  It does not authorize a

8   claim by an investor whose own purchase of securities did not violate that law – even if someone

9   else's purchase later did.

10       Under plaintiffs' novel theory, a person whose own investment was completely within the

11  letter and spirit of the law could later obtain a windfall if there was something wrong – even

12  many years later – with purchases by other investors.  And he or she could evade any motion to

13  dismiss that was based on the one year limitations period in Section 13 by insisting, as plaintiffs

14  do here, that the issue requires full discovery about all other investments.  *See Opp. at 13.*

15       In any event, "compliance with the statute of limitations must be pled." *Hudson v.*

16  *Capital Management International, Inc.,* 1982 U.S. Dist. LEXIS 10070 at *9 (N.D. Cal. 1982)

17  (Patel, J.).

18       This is particularly important where, as here, a class certification issue remains to
         be addressed.  If the named plaintiffs are time-barred, they cannot serve as
19       representatives of the class.

20  *Id.*  Plaintiffs have not alleged facts that would bring all of their Section 12(a)(1) claims within

21  Section 13's one-year limitations period, so their claims should be dismissed.

22       **H.    Plaintiffs Fail To State Any Claims Against Any Of The D&O Defendants.**

23       The Second Amended Complaint alleges that it "is appropriate to treat the D&O

24  Defendants collectively as a **group for pleading purposes**," because they all supposedly "were

25  directly involved in the day-to-day operations of the company at the highest levels, and were

26  privy to confidential proprietary information." *SAC, para. 32* (emphasis added).  The "group

27  pleading" doctrine, however, is inconsistent with the PSLRA. *Motion at 13.*  And, even if the

28  doctrine were still viable, plaintiffs have not alleged any facts that show that any D&O Defendant

- 13 -

1   actually was involved in day-to-day operations or had access to confidential information.  *Id. at*
2   *14.*

3          Plaintiffs make no serious attempt to argue that the group pleading doctrine has survived
4   the PSLRA or to quote any allegations of the Second Amended Complaint that might satisfy that
5   doctrine.  *See Opp. at 14.*  They mention briefly that they have alleged "specific misstatements"
6   by five of the nine individuals that they sued, but they do not – and cannot – point to any
7   allegations of particular facts that might establish scienter for any of these individuals.[8]  *Id.*

8          Instead, plaintiffs have abruptly switched ground and now argue that all the D&O
9   Defendants are liable as "control persons" under Section 20 of the Exchange Act and Section 15
10  of the Securities Act.  *Id.*  But their complaint does not assert any claims for secondary liability
11  under Sections 15 or 20 or even mention those statutes.  Instead, it asserts claims for primary
12  liability under Sections 10(b) and Section 12(a)(1).[9]  *See Counts I and II.*  Moreover, plaintiffs do
13  not cite – much less quote – any allegations that might satisfy the standards for alleging control
14  person liability.  *See Howard v. Hui,* 2001 U.S.Dist. LEXIS 15443 at *12-13 (N.D. Cal. 2001)
15  (Breyer, J.) (dismissing control person claims for lacking particularity required by Rule 9(b)); *In*
16  *re Splash Technology Holdings, Inc. Sec. Litig.,* 2000 U.S. Dist. LEXIS 15370 at *50-55 (N.D.
17  Cal. 2000) (Armstrong, J.) (dismissing control person claims for lacking particularity required by
18  Rule 9(b) and PSLRA because, among other reasons, the "mere fact that an individual is a
19  director is not sufficient to show he is a control person").

20         Here again, plaintiffs cannot amend their complaint with their opposition brief.  Their
21  attempt to do so only shows that their current pleading is defective and should be dismissed.

[8]      The only such "misstatement" that is actually discussed in plaintiffs' opposition is
Defendant Seifert's alleged denial of "rumors that the Align litigation would 'shut down'
OrthoClear."  *Opp. at 1.*  But the Second Amended Complaint does not actually quote any such
statement by anyone.  Instead, it paraphrases comments by Ms. Seifert and others at two separate
conference calls without quoting more than two words and without alleging that any plaintiff
actually heard either call.  *See SAC, paras. 80-84.*  Such a vague allegation – apparently on
information and belief – does not satisfy the PSLRA or even Rule 9(b).  *See Kaplan v. Rose,* 49
F.3d 1363, 1370 (9th Cir. 1994) (Rule 9(b) requires plaintiff to "state precisely the time, place
and nature of the misleading statements, misrepresentations, and specific acts of fraud").

[9]      Similarly, plaintiffs have alleged a claim for primary liability under California
Corporations Code §25110.  *See SAC at 46-47.*  They have not asserted a claim for secondary
liability under §25504.  *See Opp. at 15.*

Case No.
C 07-01429 JSW

REPLY TO OPPOSITION TO
MOTION TO DISMISS SECOND AMENDED COMPLAINT

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

II.     **CONCLUSION**

Plaintiffs have fallen far short of the requirements of the PSLRA and even the Federal Rules of Civil Procedure.  Their charges are based entirely on information and belief allegations that are not supported by any particular facts – not even any specifics about the alleged "wholesale theft" of Align's secrets.  And their proposed inference of scienter is neither cogent nor compelling because it rests solely on the difference between alleged predictions and results in a very complex, expensive, multi-front litigation that was disclosed in every Purchase Agreement. And they do not allege any of the kind of inconsistent contemporaneous statements or actions that might create an inference of scienter.

Plaintiffs' other claims are also defective.  They cannot claim reliance on statements that they do not allege that they heard – especially statements that were made after some or all of their investments.  They cannot recover directly for claims that must be asserted derivatively on behalf of the corporation.  They cannot proceed with registration and qualification claims that are not actually alleged and that are largely time-barred.  Finally, they cannot sue individuals for millions of dollars of alleged damages without any factual basis for connecting any of these individuals to any wrongdoing.   Accordingly, the OrthoClear Defendants respectfully request the Court to dismiss all claims against them.

DATED:        November 16, 2007            SHARTSIS FRIESE LLP


                                           By:_____*/s/ Charles R. Rice*_____
                                                      CHARLES R. RICE

                                           Attorneys for Defendants
                                           OCUMENTA CAPITAL HOLDINGS, INC.,
                                           formerly known as OrthoClear Holdings, Inc.,
                                           OCUMENTA, INC., formerly known as
                                           OrthoClear, Inc., MUHAMMAD ZIAULLAH
                                           CHISHTI, HUAFENG "CHARLES" WEN,
                                           PETER RIEPENHAUSEN, ARTHUR T.
                                           TAYLOR, SAIYED ATIQ RAZA, and
                                           JOSEPH BREELAND

7535\001\CRICE\1471495.4

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
C 07-01429 JSW

REPLY TO OPPOSITION TO
MOTION TO DISMISS SECOND AMENDED COMPLAINT