1   Randall W. Bodner
    Peter L. Welsh
2   Holly J. Caldwell
    ROPES & GRAY LLP
3   One International Place
    Boston, Massachusetts  02110-2624
4   Telephone: (617) 951-7000
    Facsimile: (617) 951-7050
5   *Admitted Pro Hac Vice*

6   Robert H. Bunzel, State Bar No. 99395
    C. Griffith Towle, State Bar No. 146401
7   BARTKO, ZANKEL, TARRANT & MILLER
    A Professional Corporation
8   900 Front Street, Suite 300
    San Francisco, California  94111
9   Telephone: (415) 956-1900
    Facsimile: (415) 956-1152
10

    Attorneys for Defendants
11  3i TECHNOLOGY PARTNERS III, LP
    and PAUL BADAWI
12

13              UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15                 SAN FRANCISCO DIVISION

16  MICHAEL B. ESHELMAN, D.D.S.; PETER F.      ) No. C 07-01429 JSW
    SILCHER, D.D.S.; and LORI I. SILCHER,      )
17                                             ) **REPLY BRIEF OF DEFENDANTS**
                        Plaintiffs,            ) **3i TECHNOLOGY PARTNERS III,**
18                                             ) **LP AND PAUL BADAWI IN**
                v.                             ) **SUPPORT OF MOTION TO**
19                                             ) **DISMISS**
    ORTHOCLEAR HOLDINGS, INC., a British       )
20  Virgin Islands Company; ORTHOCLEAR, INC.,  )
    a Delaware Corporation; MUHAMMAD           ) Hearing Date:   January 4, 2008
21  ZIAULLAH CHISHTI, an individual;           ) Time:           9:00 a.m.
    HUAFENG "CHARLES" WEN, an individual;      ) Courtroom:      2, 17th Floor
22  PETER RIEPENHAUSEN, an individual;         ) Judge:          Hon. Jeffrey S. White
    ARTHUR T. TAYLOR, an individual; SAIYED    )
23  ATIQ RAZA, an individual; CHRISTOPHER      ) Complaint Filed:   March 12, 2007
    KAWAJA, an individual; PATRICIA HUMELL     ) Trial Date:        None Set
24  SEIFERT, an individual; JOSEPH BREELAND,   )
    an individual; MUDASSAR RATHORE, an        )
25  individual; PAUL BADAWI, an individual;    )
    3i Technology Partners III, LP; and DOES 1 )
26  through 25, inclusive,                     )
                                               )
27                      Defendants.            )
                                               )
28

BARTKOZANKEL
Bartko Zankel Tarrant & Miller, Inc. A Professional
900 Front Street, Suite 300
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

# SUMMARY OF ARGUMENT

Plaintiffs, junior subordinated preferred shareholders of OrthoClear Holdings, Inc. ("OrthoClear" or the "Company"), assert three claims against defendants Paul Badawi ("Badawi") and 3i Technology Partners III, LP ("3i"):   claims for breach of fiduciary duty and misrepresentation (Counts III and V, respectively), both against Badawi, and a claim for constructive trust, against 3i (Count VIII).  As argued in Badawi and 3i's Motion to Dismiss (the "Motion to Dismiss"), all of these claims should be dismissed.  Plaintiffs' Opposition Brief offers nothing to change that conclusion.

Each argument in Plaintiffs' Opposition falls short:

> ➤ First, Plaintiffs complain that Badawi and 3i have introduced facts not alleged in Plaintiffs' Second Amended Complaint (the "SAC") by noting, in the Motion to Dismiss, that Badawi resigned from the OrthoClear Board some five months before the distribution to 3i that Plaintiffs challenge.  By their protests, however, Plaintiffs only seek to divert attention from the fact that they have failed to allege when exactly Badawi was on the Board and whether he was on the Board (and thus owed fiduciary duties) at the time of the challenged distribution.

> ➤ Second, Plaintiffs insist that their claims for breach of fiduciary duty and constructive trust are not derivative.  Nothing in the Opposition, however, changes the fact that what Plaintiffs seek by this action is the return to OrthoClear of funds Plaintiff claims were wrongfully distributed by OrthoClear.  As such, the action is classically derivative.  Similarly, with their constructive trust claim, Plaintiffs insist that the claim is not derivative, even while conceding that California law – the only applicable authority on this issue – contradicts their position.

BARTKO ZANKEL
Bartko Zankel Tarrant & Miller, A Professional Law Corporation
900 Front Street, Suite 300
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

-i-

➢ Third, Plaintiffs offer a contorted reading of the Company's Memorandum and Articles of Association, in an attempt to support their contention that the distribution to 3i, as OrthoClear's senior preferred shareholder, somehow violated the Company's charter.  To reach their conclusion, however, they ignore the plain meaning of both the Memorandum and Articles and of the applicable BVI statute.  Indeed, far from precluding the distribution to 3i, the true and plain reading of OrthoClear's corporate charter required it.

➢ Last, Plaintiffs attempt to bolster their tenuous breach of fiduciary duty and misrepresentation claims against Badawi by arguing that Badawi, as a director, had some involvement in two letters sent to shareholders on Company letterhead that were supposedly misleading.  Torture the letters as they do, Plaintiffs ultimately can tease out no actionable misrepresentations.  And, in the case of one of the letters, they cannot allege that Badawi was even aware of it.

Accordingly, Counts III, V, and VIII of the SAC should be dismissed with prejudice.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iv

I.   THE OPPOSITION ATTEMPTS TO CONCEAL BADAWI'S
     TRUNCATED TENURE AS DIRECTOR OF ORTHOCLEAR ..................................... 1

II.  THE BREACH OF FIDUCIARY DUTY AND CONSTRUCTIVE
     TRUST CLAIMS ARE DERIVATIVE ........................................................................ 2

     A.   Count V Is Derivative Because Plaintiffs' Rights and
          Recoveries Must Flow Through the Company ..................................................... 2

     B.   Count VIII, as Plaintiffs Concede, Is Derivative Under
          California Law .................................................................................................... 7

III. PLAINTIFFS HAVE NOT ALLEGED WITH PARTICULARITY
     ANY MISREPRESENTATION OR BREACH OF  FIDUCIARY
     DUTY BY BADAWI .................................................................................................. 9

     A.   Neither the September 28 nor the October 2 Letter Contains
          Actionable Misrepresentations ........................................................................... 9

          1.   The September 28 Letter ............................................................................ 9

          2.   The October 2 Letter ................................................................................ 10

     B.   Plaintiffs Have Not Adequately Alleged Badawi's
          Involvement in (or Knowledge of) the October 2 Letter .................................. 11

IV.  THE DISTRIBUTION TO 3i WAS IN ANY EVENT REQUIRED
     BY THE MEMORANDUM AND ARTICLES OF ASSOCIATION ............................ 12

     A.   No Formal "Liquidation" Was Required to Effect a
          Distribution to 3i .............................................................................................. 12

     B.   The Distribution to 3i Was Required by the Memorandum
          and Articles of Association ............................................................................... 13

     C.   Any Repurchase of 3i's Shares Would Not Have Required
          the Consent of All OrthoClear Shareholders .................................................... 14

V.   CONCLUSION ........................................................................................................ 15

BARTKO ZANKEL
Bartko Zankel Tarrant & Miller, Inc., a Professional Corporation
900 Front Street, Suite 300
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

-iii-

# TABLE OF AUTHORITIES

## CASES

*Agostino v. Hicks*
845 A.2d 1110 (Del. Ch. 2004) ..................................................................5

*Bell Atl. Corp. v. Twombly*
127 S. Ct. 1955 (2007) ..............................................................................1

*Crain v. Electronic Memories and Magnetics Corp.*
50 Cal.App.3d 509 (1975) ......................................................................5, 6

*Glen Holly Entertainment, Inc. v. Tektronix, Inc.*
100 F.Supp.2d 1086 (C.D. Cal. 1999) .......................................................11

*In re Howard's Appliance Corp.*
874 F.2d 88 (2d Cir. 1989) ........................................................................7

*In re Syntex Corp. Sec. Litig.*
855 F. Supp. 1086 (N.D. Cal. 1994) .........................................................11

*Indiana Electrical Workers Pension Trust Fund, IBEW v. Dunn*
2007 WL 1223220 (N.D. Cal.  March 1, 2007) ...........................................4

*Jones v. H.F. Ahmanson & Co.*
1 Cal.3d 93 (1969) ............................................................................3, 5, 6

*Pacific Lumber Co. v. Superior Court*
226 Cal.App.3d 371 (1990) .......................................................................7

*Pareto v. FDIC*
139 F.3d 696 (9th Cir. 1998) .....................................................................4

*Schuster v. Gardner*
127 Cal.App.4th 305 (2005) ...................................................................3, 6

*SEC v. Credit Bancorp., Ltd.*
138 F.Supp.2d 512 (S.D.N.Y. 2001) ...........................................................7

*Strasenburgh* v. *Straubmuller*
683 A.2d 818 (NJ  1996) ...........................................................................3

*Sutter v. Gen. Petroleum Corp.*
28 Cal.2d 525 (1946) ............................................................................4, 5

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*
845 A.2d 1031 (Del. 2004) ........................................................................3

*Truesdell v. Southern California Permanente Medical Group*
293 F.3d 1146 (9th Cir. 2002) ...................................................................2

*Walczak v. EPL Prolong*, Inc.
198 F.3d 725 (9th Cir. 1999) .....................................................................3

*Wool v. Tandem Computers, Inc.*
818 F.2d 1433 (9th Cir. 1987) .................................................................12

*Yeary v. Goodwill Indus.-Knoxville Inc.*
107 F.3d 443 (6th Cir. 1997) .....................................................................2

-iv-

BARTKOZANKEL

900 Front Street, Suite 900
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

# STATUTES

British Virgin Islands Companies Act

Section 59 ................................................................................................ 15

Section 60 ............................................................................................ 14, 15

Section 61 ............................................................................................ 14, 15

Section 184C ............................................................................................. 8

Section 184I(1) ....................................................................................... 7, 8

BARTKOZANKEL
Bartko Zankel Tarrant & Miller A Professional Law Corporation
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

REPLY BRIEF OF DEFENDANTS 3i TECHNOLOGY PARTNERS III, LP & PAUL BADAWI
Case No. C 07-01429 JSW

I.   **THE OPPOSITION ATTEMPTS TO CONCEAL BADAWI'S TRUNCATED TENURE AS DIRECTOR OF ORTHOCLEAR**

Plaintiff has sued Badawi for a supposed breach of fiduciary duty as a director of OrthoClear in connection with OrthoClear's preferred distribution to and settlement with 3i in February of 2007. Yet, at the outset of their Opposition Brief, Plaintiffs fault the Defendants for pointing out to the Court that Badawi had resigned from the Board of OrthoClear *five months earlier* – in October of 2006. (Opp. at 3.) Plaintiff claims that the Defendants may not raise this issue because the Second Amended Complaint "says nothing" about Badawi's resignation from the Board of Directors of OrthoClear. (Opp. at 3 and n.1.) Of course, in order to even approach providing "plausible grounds" for their claim, Plaintiffs have the burden of alleging that Badawi was on the Board *at the time* of any alleged breach of fiduciary duty. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (holding that in order to survive a motion to dismiss, a plaintiff must set forth factual allegations to establish "plausible grounds" for the inference of each fact essential to an element of a claim). They have failed to do so. And, in their Opposition, the Plaintiffs go further in this effort, attempting to prevent any inquiry into the sufficiency of their allegations around Badawi's short tenure on the Board.

Plaintiffs should come clean. Either they have a good faith basis on which to allege that Badawi was on the Board (and thus owed fiduciary duties) at the time OrthoClear made the distribution to 3i, or they do not. In either case, they should say so. Instead, they are attempting to create the (false) impression, by insinuation and indirection – and without affirmatively alleging it – that Badawi was on the OrthoClear Board at the relevant time in February of 2007. It is no accident that the Second Amended Complaint "says nothing" – or virtually nothing[1] – about the

---

[1]     Defendants cited to paragraph 101 of the SAC as support for the proposition that the SAC alleged that Plaintiff resigned from the Board of OrthoClear. Plaintiff earnestly insists that "[t]here is nothing in Paragraph 101 that makes reference to Badawi's resignation. . . ." (Opp. at 3.) Paragraph 101 states that "[d]uring the months following approval of the [Align] settlement, 3i and Badawi, using information obtained by Badawi *while he was a director of Orthoclear*, entered into secret negotiations ...." (SAC ¶ 101 (emphasis added).) Section 101 thus strongly

-1-

BARTKO ZANKEL
Bartko Zankel Tarrant Miller & Nunn & Nunn, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1  time period during which Badawi served on the Board of OrthoClear. The fact that Plaintiffs have

2  not alleged when Badawi was on the Board – and are now attempting to manufacture a supposed

3  fact issue – represents not only a fatal defect in pleading, it is also an indication that Plaintiffs are

4  attempting to conceal the critical fact of when Badawi served, and stopped serving, as a Director of

5  OrthoClear. Such gamesmanship should not be indulged by this Court.[2]

6  II.   **THE BREACH OF FIDUCIARY DUTY AND CONSTRUCTIVE TRUST CLAIMS ARE DERIVATIVE**

7

8     A.   **Count V Is Derivative Because Plaintiffs' Rights and Recoveries Must Flow Through the Company.**

9        Plaintiffs' fiduciary duty claim against Badawi is a moving target. Despite alleging in the

10 Second Amended Complaint that Badawi "engaged in a joint course of conduct resulting in the

11 payment to 3i of as much as $10 million *from OrthoClear funds*" and that "the payment to 3i was

12 *to the detriment of OrthoClear Holdings*," *see e.g.*, Second Amended Complaint ("SAC") at ¶¶112

13 and 156, Plaintiffs now conveniently claim that "[t]here is no injury alleged to the Company at

14 all." Opp. at 5. Despite this fancy footwork, the gravamen of Count V of the Second Amended

15 Complaint remains that Badawi breached his fiduciary duties to the Company by somehow

16 participating in the distribution of funds from the Company to 3i and thereby leaving inadequate

17 assets in the Company for distribution to the junior preferred shareholders. In short, Plaintiffs

18 allege – if anything – a wrongful diversion of assets *from the Company*. SAC at ¶¶ 112 and 156.

19 It is settled law in California that "a shareholder cannot bring a direct action for damages against

20 management *on the theory that [management's] alleged wrongdoing decreased the value of his or*

21

22

BARTKO ZANKEL
Bartko Zankel Tarrant & Miller  A Professional Corporation
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

---

23 (and correctly) implies that during the time leading up to OrthoClear's preferred stock distribution
   to 3i, Badawi was no longer on the Board of OrthoClear. The approximate time of Badawi's
24 resignation "simply fill[s] in the details and contours of the plaintiff's complaint" without
   converting the motion to dismiss to a motion for summary judgment. *Yeary v. Goodwill Indus.-*
25 *Knoxville Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

26 [2]    Indeed, Plaintiffs' efforts in this regard skate dangerously close to the ethical line governed
   by Fed. R. Civ. P. 11. *See, e.g., Truesdell v. Southern California Permanente Medical Group*, 293
27 F.3d 1146, 1153 (9th Cir. 2002) (finding no abuse of discretion when the district court ordered
   sanctions where "the complaint stated allegations 'upon information and belief' that Plaintiff's
28 counsel must have known were false").

-2-

*her stock (e.g., by reducing corporate assets and net worth*)." *Schuster v. Gardner*, 127 Cal.App.4th 305, 312 (2005) (emphasis added).   As in *Schuster*, Plaintiffs here are attempting to bring a direct claim on the theory that Plaintiff was injured as a result of a reduction in the Company's assets.

The derivative nature of Plaintiffs' claims against Badawi and 3i is demonstrated by the fact that any recovery against either of them would necessarily go to the Company, and not to Plaintiffs directly.  To the extent Plaintiffs stand to recover anything here, they can recover only *indirectly* pursuant to rights they have as junior preferred shareholders of OrthoClear.  The only remedy available to the Plaintiffs would be to return the funds to the Company to then be distributed in accordance with their rights as against the Company.  This unavoidable fact is made crystal clear by the last line of Plaintiffs' own Opposition brief: "Had investors been told the true state of affairs in October 2006 . . . they could have protected their rights by promptly filing an action against OrthoClear, *which effectively would have prevented distributions such as occurred until all claims against OrthoClear were sorted out*." Opp. at 14.[3]  Where a shareholder's right to recover runs through the corporation, the claim is unavoidably derivative.  *See Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93, 106-107 (1969) (holding that an action "to recover assets for the corporation" is derivative); *Schuster v. Gardner, supra*, 127 Cal.App.4th at 316 (citing *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004)) for the proposition that the "issue must turn solely on the following questions:   (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any

___

[3]     Notably, Plaintiffs cite to a case in which shareholders brought *derivative* claims to effect this result. *See Walczak v. EPL Prolong*, Inc., 198 F.3d 725 (9th Cir. 1999). Supposed disparate injuries to different classes of stock also does not transform derivative claims into direct claims where the injury is first to the company. *See Strasenburgh* v. *Straubmuller*, 683 A.2d 818, 829-832 (NJ 1996)

-3-

BARTKO ZANKEL
Bartko Zankel Tarrant & Miller, a Law & Hanson, Inc.'s Counsel
900 Front Street, Suite 900
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

recovery or other remedy (the corporation or the stockholders, individually)?").[4]

*Indiana Electrical Workers Pension Trust Fund, IBEW v. Dunn*, C.A. No.C-06-01711, 2007 WL 1223220 (N.D. Cal. March 1, 2007), illustrates this principle. In *Dunn*, the plaintiff shareholders attempted to bring direct claims for fraud and breach of contract against the company's board members and CEO, alleging that the board had diverted corporate assets by wrongfully paying a rich severance package to the CEO. *Id.* at *9. Although the *Dunn* plaintiffs cast their claims as being based on an impairment of their right to vote on the severance package, and therefore a direct action, the court looked through the plaintiffs' characterization and held that "the nature of their claims is essentially mismanagement of corporate assets and derivative in nature." *Id.* at *10. Notably, in reaching this result, the court reasoned that "[h]ad the [Hewlett-Packard] shareholders voted against any of the severance or benefits given to Fiorina, the denied amounts would accrue to the corporation, not directly to any shareholder" and that their claims were therefore derivative in nature. *Id.* at *11. The court also noted that "plaintiffs seek, *inter alia*, imposition of a constructive trust on the alleged improper $21.4 million payment to Fiorina. Such relief, if granted, would result in the return of the $21.4 million to HP, not directly to any shareholder." *Id.* Here – exactly as in *Dunn* – Plaintiffs seek the return of sums allegedly wrongfully paid by the Company. Their disclosure allegations are merely in the service of that core objective. And, as in *Dunn*, were Plaintiffs here able to prove their case, any recovery from Badawi or 3i would be returned to the Company, not paid directly to any of the Plaintiffs.

The cases cited by Plaintiffs are inapposite. In *Sutter v. Gen. Petroleum Corp.*, 28 Cal.2d 525 (1946), the plaintiff was fraudulently induced by the defendants – affiliates and a controlling

---

[4]     The fact that Plaintiffs allege a breach of the duty of candor does not change the result. As explained in *Pareto v. FDIC*, 139 F.3d 696 (9th Cir. 1998), allegations of misrepresentation do not state a direct claim where the shareholder's only injury is the devaluation of his or her shares as a result of an injury to the corporation's assets. *Id.* at 700 ("While Pareto does make vague allegations about misrepresentations that caused him to support the unsuccessful merger attempt and initiation of a receivership, his only injury from those misrepresentations was the devaluation of his stock when Barbary Coast was taken over by the FDIC.") Plaintiffs here allege that the supposed disclosure violations facilitated the transfer of corporate assets from the Company to 3i and that Plaintiffs' were harmed as a consequence of the transfer of those assets. Whether styled a breach of the duty of candor or otherwise, claims that directors or shareholders of a corporation wrongfully diverted assets from the corporation are necessarily derivative in nature.

-4-

BARTKO ZANKEL
Bartko Zankel Tarrant Miller Cecchi & Brennan, Inc. A Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

shareholder of the corporation – to form and invest in a corporation that later failed as a result of defendants' ongoing fraud. The court held that the plaintiff could bring direct claims because the fraud that he alleged began before the company was formed, thus giving him a personal cause of action. *Id.* at 531. In other words, the claim at issue in *Sutter* was a fraud claim arising out of the purchase of the plaintiff's shares of company stock. As the *Sutter* court explained: "It is true that the corporations suffered injury, inasmuch as they were conducting the oil drilling operations and had contracts for the use of the structure, but the fraud was practiced on Sutter in the first instance and he was induced to form the corporation . . . and invest his money by reason of that fraud." *Id.* at 531-32. As concerns Badawi and 3i, that is clearly not the case before this Court. Plaintiffs also cite *Agostino v. Hicks*, 845 A.2d 1110 (Del. Ch. 2004), for the proposition that a stockholder who is prevented from voting may bring a direct claim. While this is correct, it is entirely beside the point. Plaintiffs have made no allegation that they were in any way prevented from voting. *Agostino* is entirely inapposite.

The remaining two cases involve the systematic oppression of a minority shareholder by the majority and the latter's efforts to impair the plaintiff's rights as shareholders. In *Jones v. H.F. Ahmanson & Co.*, 1 Cal.3d 93 (1969), the plaintiff, a minority shareholder in a closely held savings and loan corporation, alleged that defendants, the majority shareholders, created a holding company in order to make their own shares marketable, but excluded minority shareholders from participating in the holding company. In the later-decided *Crain* case (discussed immediately *infra*), the California Appeals Court explained the *Jones* case, in relevant part, as follows:

> Initially, the association's minority shareholders were not offered an opportunity to exchange their shares for interests in the publicly marketed financial company, whose shares had greatly appreciated in value; however, *defendant later offered to purchase the minority shares, but for a price far less than their real value*. When the offer was refused *the majority stockholder announced that the association would cease paying dividends on its outstanding shares*. These actions by defendant had the effect of rendering plaintiffs' minority shares absolutely

-5-

BARTKO ZANKEL
Bartko Zankel Tarrant Miller & Tarrant & Thomas, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

worthless, and as a result the minority shareholders, in their individual capacities, brought suit for damages against the majority shareholder.

*Crain v. Electronic Memories and Magnetics Corp.*, 50 Cal.App.3d 509 (1975). Thus, in *Jones* the plaintiffs alleged that the defendants impaired the plaintiffs rights as shareholders independent of any effect on the corporation's assets or value.

Likewise, *Crain v. Electronic Memories and Magnetics Corp.*, involved an impairment by the defendants of the plaintiff's shareholder rights apart from the harm caused to the corporation's assets. In *Crain*, plaintiffs were uniquely harmed by a restructuring of the corporation that, among other things, changed the capital structure of the corporation and thereby directly harmed the plaintiff's shareholding interests. The defendants' conduct therefore allegedly,

> impinged upon rights of the minority shareholders in two respects: (1) The defendants' acts *deprived plaintiffs of their ownership interests in an ongoing and potentially profitable business without any compensation whatsoever*; and (2) by "locking" plaintiffs into a "shell" corporation, which possesses no real assets nor engages in any kind of business activity, *defendants insured that the minority's shares will forever be valueless and unsalable*.

*Id.* at 516 (emphasis added). This unique injury distinguishes *Crain* from the typical case in which assets are transferred out of a company, giving rise only to a derivative claim. *See Schuster*, 127 Cal.App.4th at 313 ("[A]n action is derivative if 'it seeks to recover assets for the corporation or to prevent the dissipation of its assets.'"). Finally, both *Jones* and *Crain* involved controlling shareholder oppression of minority shareholders. Not so here – 3i was by no means a controlling shareholder, and there is no allegation that it somehow controlled the Board. Indeed, as covered *infra*, it was simply a senior preferred holder who insisted on its distribution rights under OrthoClear's charter upon the occurrence of a "Deemed Liquidation Event."

To the extent Plaintiffs have any claim against Badawi, they can do so only as derivative claim.

-6-

**B.   Count VIII, as Plaintiffs Concede, Is Derivative Under California Law**

Plaintiffs' one claim against 3i is Count VIII, which alleges that 3i now holds the distribution it received from the Company in a constructive trust. Plaintiffs lack standing to bring their constructive trust claim as a direct claim, because only the equitable owner of the property allegedly wrongfully transferred – in this case, the Company – has that right.

Plaintiffs specifically concede "*that California courts have supported the view*" that a claim for constructive trust must be brought derivatively. (Opp. at 7.) Such is clearly the case. Under California law – as Plaintiffs admit – "[a] constructive trust, by its nature, can only be imposed in favor of the equitable owner of a *res*; where a company's funds are wrongfully transferred, it is the company that is the equitable owner." *Pacific Lumber Co. v. Superior Court*, 226 Cal.App.3d 371, 378 (1990). Plaintiffs instead argue that California law should be disregarded in favor of a general provision – Section 184I(1) – of the BVI Companies Act. This effort is unavailing for two reasons: 1) the BVI Companies Act has no application to a claim for constructive trust brought in California, and 2) Section 184I(1) says nothing about whether an action under that provision is to be brought directly or derivatively.

But the general rule is that constructive trust claims are governed by the law of the situs of the property. *In re Howard's Appliance Corp.*, 874 F.2d 88, 93 (2d Cir. 1989) ("As a general rule, the law of the *situs* of the property, and therefore the trust, governs [the imposition of a constructive trust].") (applying New Jersey law); *SEC v. Credit Bancorp.*, Ltd., 138 F.Supp.2d 512, 531 (S.D.N.Y. 2001) (rev'd in part on other grounds). The property in this instance – the funds transferred to 3i – does not reside in the British Virgin Islands. Plaintiffs imply that the internal affairs doctrine somehow dictates that BVI law applies (*see* Opp. at 7, n.3), but claims for

BARTKOZANKEL
*Bartko Zankel Tarrant & Miller, a Professional Law Corporation*
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-7-

constructive trust are governed by their own conflict-of-laws rules; the "internal affairs" doctrine has no applicability to a claim for constructive trust.

Even if BVI law did apply, it does not provide that Plaintiffs may bring a claim against 3i directly. Section 184I(1) says nothing about whether a claim may – let alone must – be brought directly or derivatively. By its terms, Section 184I(1) merely allows a shareholder of a BVI corporation to "*apply to the court* if he believes he has been treated oppressively by the company." Opp. at 7, citing BVI Companies Act § 184I(1) (emphasis added). Even assuming that a BVI statute governing claims for minority shareholder oppression somehow governs a claim for constructive trust over California property – which it does not – nothing in Section 184I(1) runs counter to the well-established rule that a claim for constructive trust over funds transferred from a corporation must be brought derivatively. Although Section 184I(1) says that shareholders "may apply to the court," it says nothing about the form that any such petition must take. In every derivative action, a shareholder *applies* to the court for some relief. Indeed, Section 184C of the BVI Companies Act specifically contemplates that, where appropriate, shareholders in BVI corporations may pursue derivative (as opposed to direct) claims on the corporation's behalf; as in California, BVI's corporate statutory scheme explicitly mandates shareholder derivative actions, and nothing in BVI Section 184I(1) changes, curtails or trumps that.

In short, Section 184I(1) does nothing for Plaintiffs' case. Plaintiffs offer no coherent explanation for why BVI law would lead to a different result on this point than California law, or why there is a conflict between California law and BVI law on this point. Instead, Plaintiffs ask this Court to ignore applicable California law (which they concede runs against them) and to instead blindly apply a foreign statute in a way that the statute itself does not mandate and for which the foreign courts provide no guidance.

-8-

BARTKO ZANKEL
Bartko · Zankel · Tarrant · Miller · Lewitt & Hanson, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

III.   **PLAINTIFFS HAVE NOT ALLEGED WITH PARTICULARITY ANY MISREPRESENTATION OR BREACH OF FIDUCIARY DUTY BY BADAWI**

Regardless of whether a claim against Badawi would be properly brought as direct or derivative, the claim itself has no merit. Because Plaintiffs cannot allege that Badawi in any way authorized the payment to 3i, Plaintiffs in their Opposition are reduced to basing their claims amorphously on "Badawi's role leading up to the payment." (Opp. at 10.) The only "role" that they can conjure up is his alleged involvement in two letters to shareholders: one on September 28, 2006 (the "September 28 Letter") and the other on October 2, 2006 (the "October 2 Letter"). Badawi's alleged involvement in these two communications forms the basis for both the misrepresentation and breach of fiduciary duty claims, and the same flaws are fatal to both causes of action.

A.   **Neither the September 28 nor the October 2 Letter Contains Actionable Misrepresentations**

1.   **The September 28 Letter**

Plaintiffs have not pointed to any misleading statements in the September 28 Letter. Instead, they allege a handful of alleged nondisclosures. None of these makes out a claim for misrepresentation. Plaintiffs claim that the Letter fails to explain how "the Company previously had misled investors about the validity of its IP and the risks of the Align litigation," but they do not allege (i) that Badawi somehow knew at that time that the Company had misled investors in the past (long before he joined the Board); or (ii) how the Plaintiffs could conceivably have been injured by such an omission in the September 28 Letter, which was sent years after they had purchased their shares. Plaintiffs claim that the Letter failed to disclose that "given the outstanding debts and the expectation of 3i for an immediate refund of $10 million, the Series A, B and C Preferred shareholders would receive little or nothing from a settlement," but Plaintiffs do not allege with particularity that anyone on the Board knew at the time that 3i would receive any distribution immediately or the amount that other shareholders (holding more junior securities)

BARTKOZANKEL
Bartko · Zankel · Tarrant · Miller · Towle & Flannen, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-9-

would be paid. (Opp. at 11.)  Indeed, as the Plaintiff's SAC acknowledges, the amount that was ultimately distributed to 3i was a reduction of its $10 million investment, thereby increasing the amount available to the series A, B, and C shareholders.  (SAC ¶ 104.)

Plaintiffs further allege that the September 28 Letter failed to disclose that the settlement with Align "effectively would be a liquidation," despite the fact that the Letter disclosed that, under the Align settlement, the Company would "discontinue, worldwide, all design, manufacture, marketing and sales of removable dental aligners."  (September 28 Letter, Exh. 2. to Declaration of Peter L. Welsh in Support of Motion to Dismiss (herein "Welsh Aff.").)   Even more so, the consent form itself (which was attached to the September 28 Letter) disclosed that:

> The Settlement contemplates that, in return for a payment of US$10 million, *the Company will stop accepting additional patient cases* for treatment of malocclusion, for treatment using removable dental positioners, and for treatment involving other activities using the Company's existing proprietary technology.  The *Settlement also requires Align to take over and provide treatment for all of the patients using the Company's products* and the Company to facilitate the transfer of patient cases to Align.  The *Company will also assign to Align all of its world-wide intellectual property rights* disclosed in the Align Litigation and any other intellectual property rights with application to the correction of malocclusions.

(*Id.*)  It is difficult to imagine a more fulsome disclosure.

Lastly, Plaintiffs allege that the September 28 Letter failed to inform the preferred shareholders that three-quarters of them had to approve the settlement.  (Opp. at 11.)  Yet, the consent form clearly states "Approval of the Settlement requires the consent of the holders of the Company's Preferred Convertible Shares," and Plaintiffs have not alleged how the exact percentage required to approve the Align settlement was material.  (Welsh Aff., Exh. 2.)

### 2.  The October 2 Letter

As to the October 2 Letter, Plaintiffs claim that statement that the "exact amount of money that may be returned to shareholders in each class has not yet been determined" was false. Plaintiffs are alleging "fraud by hindsight," as 3i and Badawi have argued in their Motion to

-10-

REPLY BRIEF OF DEFENDANTS 3i TECHNOLOGY PARTNERS III, LP & PAUL BADAWI
Case No. C 07-01429 JSW

BARTKO ZANKEL
Bartko · Zankel · Tarrant · Miller · Lowe & Mansion, Inc. a Corporation of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

Dismiss. (*See* Mot. at 13.) As set forth in the Motion to Dismiss, allegations of fraud based on later events that prove earlier statements wrong are insufficient to survive a motion to dismiss. *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086, 1094 (C.D. Cal. 1999). As to the other statements in the October 2 Letter that Plaintiffs allege are "false," Plaintiffs have simply failed to allege falsity. For instance, where the letter states that the settlement terms did not require OrthoClear to "cease operations or dissolve," Plaintiffs note that 3i has asserted in its Motion to Dismiss that the Align settlement was a deemed liquidation. (Opp. at 12.) But there is no contradiction here. A "dissolution" and "Deemed Liquidation Event" are completely different. A "Deemed Liquidation Event" takes place upon the occurrence of certain triggering events under OrthoClear's charter – namely, (i) a merger, acquisition or consolidation; or (ii) a sale of substantially all assets (*see* Welsh Aff. at Exh. 1 at § 12) – occurrences that are wholly separate and distinct from an actual liquidation or dissolution.

Plaintiffs have failed to state a claim for misrepresentation – let alone with the particularity required by Rule 9(b).

### B. Plaintiffs Have Not Adequately Alleged Badawi's Involvement in (or Knowledge of) the October 2 Letter

The Opposition does nothing to remedy the SAC's utter failure to allege that Badawi wrote, approved, or even saw the October 2 Letter. The SAC alleges only that Badawi and the D&O Defendants "collectively" misrepresented facts in the Letter. This is insufficient to state a claim.

Allegations of misrepresentation must meet the requirements of Rule 9(b), including the requirement that plaintiffs "attribute particular fraudulent acts or statements to a particular defendant." *In re Syntex Corp. Sec. Litig.*, 855 F. Supp. 1086, 1100 (N.D. Cal. 1994). Plaintiffs claim in their Opposition that they have met 9(b) because they have pled "the extent to which Plaintiffs are informed and believe that Badawi participated in these misrepresentations."

-11-

BARTKOZANKEL
Bartko Zankel Tarrant & Miller / Lowell & Hansen, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKO ZANKEL
Bartko Zankel Tarrant Miller & Tarrant & Herman, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1  (Opp. at 13.)  But under 9(b), Plaintiffs are required to state some factual basis for a claim, not just

2  the "extent to which" they believe it.  *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1439

3  (9th Cir. 1987) (holding that where fraud claims are pled on information and belief, the plaintiff

4  must provide a "statement of the facts upon which the belief is founded").  Plaintiffs fall far short

5  of this standard.  With regard to the October 2 Letter, in particular, Plaintiffs allege only that it was

6  sent to shareholders "on information and belief with the approval of the D&O Defendants and

7  Badawi (and in any event also would have been sent to the directors as shareholders)."  (SAC ¶

8  95.)  This bare assertion does not state any factual basis for believing that Badawi approved the

9  October 2 Letter.[5]

## IV.   THE DISTRIBUTION TO 3i WAS IN ANY EVENT REQUIRED BY THE MEMORANDUM AND ARTICLES OF ASSOCIATION

Plaintiffs distort the Memorandum and Articles of Association in three ways:  First,

Plaintiffs incorrectly claim that, in order for a valid distribution to take place, a formal liquidation

must have first occurred.  (Opp. at 9, n.5.)  Second, Plaintiffs mistakenly claim that because 3i

received its distribution from OrthoClear as part of a settlement agreement, the terms of the

Company's charter – and 3i's rights under it – are irrelevant are irrelevant.  (Opp. at 8.)  Third,

Plaintiffs claims that, in order for the Company to repurchase 3i's shares, the consent of all

shareholders would have been required.  (Opp. at 9.)  All three contentions are incorrect.

### A.   No Formal "Liquidation" Was Required to Effect a Distribution to 3i

In their Opposition, Plaintiffs assert that "under OrthoClear's Memorandum &

---

[5] In a desperate gambit, Plaintiffs attempt to create an admission of Badawi's prior knowledge of the October 2 Letter by misconstruing language in the Motion to Dismiss.  Plaintiffs quote from Defendants' Supporting Memorandum and, in doing so, insert brackets into the quote with their own wording to suggest that the Defendants conceded a crucial point for the Motion to Dismiss. The quote, as mischaracterized by the Plaintiffs, is as follows:   "Upon learning of these developments [the letters sent to shareholders on September 28 and October 2, 2006], Badawi resigned from the Company's Board in early October of 2006."  (Opp. at 3.)  In fact, Defendants' brief says no such thing.  The quoted passage, as it appeared in Defendants' brief (at p. 3) – without Plaintiffs' bracketed spin – does not mean that Badawi learned of the October 2 Letter before he resigned from the OrthoClear Board – he did not.  The quoted passage also does not mean that Badawi resigned from the Board because of the September 28 Letter – he did not.  What the quoted passage means is that, upon learning of the terms of the settlement between Align and OrthoClear, Badawi resigned from the OrthoClear Board.

Articles of Association, 3i only could receive back its money in the context of a formal liquidation of the company." (Opp. at 9, n.5.) This is simply wrong. Under Section 12 of the Memorandum of Association, the preferred shareholders' entitlement to receive – and the Company's obligation to pay – the return of their respective preferential investment is in no way limited to a formal liquidation of the Company. Section 12 specifically provides that certain occurrences give rise to a "*Deemed* Liquidation Event," requiring the Company to distribute "the full preferential amount" that each class of preferred shareholder is entitled to receive, subject to the "waterfall" (or order and priority of distribution) set forth in Section 12. (Welsh Aff., Exh. 1 at § 12). As defined, a Deemed Liquidation Event occurs upon a "a sale of all or substantially all of the assets of this Company." *Id.* Plaintiffs themselves concede that "a sale of all or substantially all of the assets of OrthoClear took place here." *See* Opp. at 2 ("In fact, OrthoClear's Board needed and was seeking shareholder approval of company action to sell off its principal assets and terminate its only business.") and 11 ("the settlement with Align effectively would be a liquidation of OrthoClear's sole business . . . ."). Under the terms of the Memorandum and Articles, therefore, neither formal liquidation proceedings nor anything else further was required.

**B.    The Distribution to 3i Was Required by the Memorandum and Articles of Association**

In their Opposition, Plaintiffs advance the *non sequitur* that the "payment [to 3i] was made *not* as part of a liquidation process but pursuant to a 'settlement agreement' in which OrthoClear acquired 3i's shares." Opp. at 8. To begin with, as just covered, an actual liquidation is simply not a prerequisite to trigger a preferred distribution under Section 12 where – as here – a Deemed Liquidation Event has occurred. Also, the fact that 3i received its distribution under Section 12 (and, indeed, agreed to a reduction of the full amount owed to it) as part of a "settlement agreement" is of no moment. Upon the occurrence of a "Deemed Liquidation Event," as defined in the Memorandum, 3i was entitled to be paid its full $10 million liquidation preference ahead of all other shareholders. *See* § IV.A, *supra*. Since the Company was obligated – pursuant to Section 12 – to distribute to 3i its $10 million liquidation preference, the Company was plainly permitted to reach an agreement with 3i to distribute to 3i less than that amount. The

-13-

BARTKO ZANKEL
Bartko Zankel Tarrant Miller | Izzo & Hinman, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKO ZANKEL

Bartko · Zankel · Tarrant & Miller, A Professional Corporation

900 Front Street, Suite 900
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1    fact that that agreement was afterwards documented as a "settlement agreement" between 3i and

2    OrthoClear does not change the nature of the distribution – or 3i's rights to it – one bit.[6]

3    **C.    Any Repurchase of 3i's Shares Would Not Have Required the
        Consent of All OrthoClear Shareholders**

4

5    Attempting to avoid 3i's "waterfall" rights under Section 12, Plaintiffs claim that the

6    distribution to 3i was actually a repurchase of 3i's shares.  In reality, whether the distribution to 3i

7    is cast as a payment under Section 12 or a repurchase under Section 9 of the Memorandum is of

8    little moment.    Both were permitted, both could occur simultaneously and the manner of

9    distribution to 3i complied, in any event, with the terms of the Memorandum and Articles.

10   In attempting to argue that any repurchase of 3i's shares violated the Memorandum and

11   Articles of Association, the Opposition contorts the terms of that document.  Plaintiffs first note,

12   correctly, the Section 9 of the Memorandum permits the Company to repurchase Preference

13   Shares, "[s]ubject as otherwise provided in the Articles of Association," in any manner "agreed to

14   in writing by the Company, the holders of the Class D Shares and the holders of the Preference

15   Shares whose shares are to be redeemed or repurchased." (Welsh Aff. at Exh. 1 at § 9.)  Plaintiffs

16   then turn to Article 18(a) of the Articles of Association, which states that the Company may

17   repurchase its own shares "in accordance with sections 60, 61 and 62 of the Act or, to the extent

18

19   inconsistent therewith, the provisions of the Memorandum and Articles." (*Id.* at Art. 18(a).)  Last,

20   Plaintiffs observe that Sections 60 and 61 of the BVI Companies Act allows a company to

21   repurchase less than all shareholders' shares if the offer is approved by all shareholders in writing,

22   or the directors of the company pass a resolution.  On the basis of these provisions, Plaintiffs claim

23   that any repurchase of 3i's Class D shares was wrongful because (a) the Company did not obtain

24

25

26   [6] Furthermore, Plaintiffs are in no position to complain that 3i settled its claims rather than
     insisting on the full amount due.   3i's reduced payment meant that more funds remained in the
     Company for eventual distribution to the A, B, and C shareholders.  And the fact that the Company
27   negotiated a reduction in 3i's rights undercuts whatever breach of fiduciary duty argument
     Plaintiffs can concoct.

28

-14-

the consent of all shareholders; (b) which failure violated BVI Sections 60 and 61; and (c) which therefore violated Article 18(a) insofar as it was not in accordance with the BVI Companies Act.

What Plaintiffs choose to overlook is that Article 18(a) allows a repurchase "in accordance with sections 60, 61 and 62 of the [BVI Companies] Act *or, to the extent inconsistent therewith, the provisions of the Memorandum and Articles*" (emphasis added).  (*Id.*)  In other words, the Company is to repurchase its shares in accordance with the default provisions in the BVI statute, *unless* the Memorandum and Articles provides for an alternative scheme.  Similarly, Plaintiffs fail to draw the Court's attention to Section 59 of the BVI Companies Act, which provides that:

> a company may purchase, redeem or otherwise acquire its own
> shares in accordance with *either* (a) sections 60, 61 and 62; *or*
> (b) such other provisions for the purchase, redemption or acquisition
> of its own shares as may be specified in its memorandum or articles.

(Emphasis added.)  (*See* Declaration of James S. Nabwangu in Support of Opp. to Mot., Exh. B.)

Article 18(a) explains how to deal with any inconsistency between the Act and the Memorandum: the provisions of the Memorandum govern.  Plaintiffs simply have no reasonable argument, based on these provisions, that a repurchase was somehow wrongful.  To the contrary, such a repurchase was permitted by, consistent with, and perfectly appropriate under Section 9 of the Company's Memorandum and Section 18(a) of its Articles.

## V.   CONCLUSION

For all the reasons set forth above, all of the claims against Paul Badawi and 3i should be dismissed with prejudice.  This is the second amended complaint filed by plaintiffs who have had great opportunity and time to plead cognizable claims and have failed to do so.

DATED:  November 16, 2007          BARTKO, ZANKEL, TARRANT & MILLER
                                   A Professional Corporation


                                   By _____
                                          Robert H. Bunzel
                                   Attorneys for Defendants 3i TECHNOLOGY
                                   PARTNERS III, LP and PAUL BADAWI

-15-

BARTKO ZANKEL
900 Front Street, Suite 300
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152