1 | ROBIE & MATTHAI
A Professional Corporation
2 | EDITH R. MATTHAI, SBN 66730
BERNADINE J. STOLAR, SBN 130458
3 | 500 S. Grand Avenue, Suite 1500
Los Angeles, CA 90071-2609
4 | Telephone:    (213) 706-8000
Facsimile:    (213) 624-2563
5 | Email: ematthai@romalaw.com
Email: bstolar@romalaw.com
6 |
7 | Attorneys for Defendant PATRICIA H. SEIFERT
8 |
9 | **UNITED STATES DISTRICT COURT**
10 | **NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION**

| | |
|---|---|
| 11 MICHAEL B. ESHELMAN, D.D.S.; PETER F. SILCHER, D.D.S.; and LORI I. SILCHER, ) ) ) | CASE NUMBER:  **C 07 1429**
*[Assigned to the Hon. Jeffrey S. White, Ctrm. 2, 17th Floor]* |
| 12 Plaintiffs, ) ) | |
| 13 | **DEFENDANT PATRICIA H. SEIFERT'S** |
| vs. ) ) | **NOTICE OF MOTION AND MOTION** |
| 14 | **TO DISMISS THIRD AMENDED** |
| ORTHOCLEAR HOLDINGS, INC. a British ) | **COMPLAINT; MEMORANDUM OF** |
| 15 Virgin Islands Company; ORTHOCLEAR, ) | **POINTS AND AUTHORITIES** |
| INC., a Delaware Corporation; ) | |
| 16 MUHAMMAD ZIAULLAH CHISHTI, an ) | [Filed and Served Concurrently with |
| individual; HUAFENG "CHARLES" WEN, ) | Declaration of Edith R. Matthai and Request |
| 17 an individual; PETER RIEPENHAUSEN, an ) | for Judicial Notice; and [Proposed] Order] |
| individual; ARTHUR T. TAYLOR, an ) | |
| 18 individual; SAIYED ATIQ RAZA, an ) | Date:       May 16, 2008 |
| individual; CHRISTOPHER KAWAJA, an ) | Time:       9:00 a.m. |
| 19 individual; JOSEPH BREELAND, an ) | Courtroom:   2 |
| individual; MUDASSAR RATHORE, an ) | |
| 20 individual; PAUL BADAWI, an individual; 3i ) | |
| GROUP PLC, a Public Limited Company ) | Filing Date:   March 12, 2007 |
| 21 registered in England and Wales; and DOES 1 ) | Trial Date:   Not Set |
| through 25, inclusive, ) | |
| 22 ) | |
| Defendants. ) | |
| 23 ────────────────────── ) | |

24 | **TO ALL PARTIES AND THEIR ATTORNEYS' OF RECORD:**

25 |      **PLEASE TAKE NOTICE** that on May 16, 2008 at 9:00 a.m., or as soon thereafter as the

26 | matter may be heard, before the Honorable Jeffrey S. White, United States District Judge,  in

27 | Courtroom 2 of the above-entitled court, Defendant Patricia H. Seifert will move the Court, pursuant

28 | to FRCP 12(b)(6), to dismiss Counts I-VIII and X of Plaintiffs' Third Amended Complaint.

K:\4400\Pleading\Motion to Dismiss 3AC.wpd                    i

1     This motion is based on this Notice of Motion and Motion, the attached Memorandum of

2 Points and Authorities, the accompanying Request for Judicial Notice, the pleadings and files in this

3 action, and on such further oral or documentary evidence as may be presented at or before the

4 hearing on this matter.

5

6 Dated:  March 24, 2008                         ROBIE & MATTHAI
                                                A Professional Corporation
7

8
                                     By: _____
9                                         EDITH R. MATTHAI
                                          BERNADINE J. STOLAR
10                                        Attorneys for Defendant PATRICIA H. SEIFERT

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

*Page(s)*

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1.   SUMMARY OF THE THIRD AMENDED COMPLAINT. . . . . . . . . . . . . . . . . . 1

2.   LEGAL DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     A.   Since Ms. Seifert Cannot Mount a Defense to This Lawsuit Without Breaching the Attorney-Client Privilege, Dismissal Is Required. . . . 1

     B.   Plaintiffs Fail to State a 10b-5 Claim. . . . . . . . . . . . . . . . . . . . . . . . 4

          1.   Ms. Seifert made no misrepresentations concerning OrthoClear's patents. . . . . . . . . . . . . . . . . . . . . . . . . 4

          2.   OrthoClear sufficiently disclosed the risks of the Align litigation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          3.   Plaintiffs still fail to create a strong inference of scienter. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

     C.   Plaintiffs Fail to State a Claim for Intentional or Negligent Misrepresentation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     D.   Plaintiffs Cannot State Claims Under Corp. Code Sections 25401 and 25501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

     E.   Plaintiffs Cannot Maintain Derivative Claims Against Ms. Seifert. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     F.   Plaintiffs' Fail to State Claims for Lack of Registration or Qualification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          1.   Count II for Violation of the Securities Act of 1933. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          2.   Count X for violation of Cal. Corporations Code § 25110. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

3.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

***State Cases***                                                                                                                      ***Page(s)***

*Benge v. Superior Court*
    131 Cal.App.3d 336, 344-345 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Connelly v. State of California*
    3 Cal.App.3d 744, 759 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Fox v. Pollack*
    181 Cal.App.3d 954, 962 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*General Dynamics Corp. v. Superior Court*
    7 Cal.4th 1164, 1190 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Lazar v. Superior Court*
    12 Cal. 4th 631, 638 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*McDermott, Will & Emery v. Superior Court*
    83 Cal.App.4th 378, 385 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3, 11

*Mirkin v. Wasserman*
    5 Cal.4th 1082, 1104 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*National Football League Properties, Inc. v. Superior Court*
    65 Cal.App.4th 100, 109 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Richard P. v. Vista Del Mar Child Care Service*
    106 Cal.App.3d 860, 865 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Solin v. O'Melveny & Myers*
    89 Cal.App.4th 451, 467 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 11

*Tarmann v. State Farm Mutual Automobile Insurance Co.*
    (1991) 2 Cal.App.4th 153, 158 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

***Federal Cases***

*Am. High-Income Trust v. AlliedSignal*
    329 F.Supp.2d 534, 548 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Argiropoulos v. Kopp*
    2007 U.S. Dist. LEXIS 22351 at *22-25 (D. Md. 2007) . . . . . . . . . . . . . . . . . . . . . . . 12

*Blake v. Dierdorff*
    856 F.2d 1365, 1369 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Deitz v. Comcast Corp.*
    2006 U.S. Dist. LEXIS 94333, *17 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Employers Ins. Of Wausau v. Musick, Peeler, & Garrett*
    871 F.Supp. 381, 387 (S.D. Cal. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

1     *Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Chlorox Co.*
          353 F.3d 1125, 1134 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4
2
      *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*
3         100 F.Supp.2d 1086, 1093 (C.D. Cal. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8, 9
4     *Gustafson v. Alloyd Co.*
          513 U.S. 561, 581, 131 L. Ed. 2d 1, 115 S. Ct. 1061 (1995). . . . . . . . . . . . . . . . . . . .   13
5
      *Hokama v. E.F. Hutton & Co.*
6         566 F.Supp. 636, 644 (C.D. Cal. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14
7     *In re Boston Scientific Corp. Sec. Litig.*
          490 F.Supp.2d 142, 154 (D. Mass. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7
8
      *In re Glenfed Inc. Securities Litigation*
9         42 F.3d 1541, 1548 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8, 9
10    *In re Immune Response Sec. Litig.*
          375 F.Supp2d 983, 1018-1019 (S.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 5, 7
11
      *In re Metricom Secs. Litig.*
12        2004 U.S. Dist. LEXIS 7834, *27 (N.D. Cal. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . .   12
13    *In re MIPS Technologies, Inc. Der. Litig.*
          2008 U.S. Dist. LEXIS 4576 at *14-16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11
14
      *In re NextCard, Inc. Sec. Litig.*
15        2006 U.S. Dist. LEXIS 16156 at *11-12 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . .   4
16    *In re Rexplore, Inc.*
          671 F.Supp. 679, 687 (N.D. Cal. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14
17
      *In re SeaChange Int'l*
18        2004 U.S. Dist. LEXIS 1687, *28 (D. Mass 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7
19    *In re Silicon Graphics, Inc. Sec. Litig.*
          183 F.3d 970, 988 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4
20
      *In re Vantive Corp. Sec. Litig.*
21        283 F.3d. 1079, 1084 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4, 7
22    *Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*
          1998 U.S. Dist. LEXIS 23473, *35-36 (N.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . . .   14, 15
23
      *Koehler v. Pulvers*
24        614 F. Supp. 829, 844 (S.D. Cal. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14
25    *Larson v. Dumke*
          900 F.2d 1363, 1367 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11
26
      *Lewis v Fresne*
27        (5th Cir. 2001) 252 F.3d 352, 357 & fn. 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

28

*Lipton v. Pathogenesis Corp.*
    284 F.3d 1027, 1038 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

*Lubin v. Sybedon Corp.*
    688 F.Supp. 1425, 1451 (S.D. Cal. 1988)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Rubke v. Capitol Bancorp Ltd.*
    460 F.Supp.2d 1124, 1134 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
    127 S.Ct. 2499, 2509 (2007)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   8

*Wanetick v. Mel's of Modesto, Inc.*
    811 F.Supp. 1402, 1406-1407 (N.D. Cal. 1992)  . . . . . . . . . . . . . . . . . . . . . . . . . .   13, 15

*Yoiurish v. California Amplifier*
    191 F.3d 983, 993 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

*Zarowitz v. BankAmerica Corp.*
    866 F.2d 1164, 1166 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

## ***Federal Statutes***

15 U.S.C. § 77m . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

15 U.S.C. § 77k . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

15 U.S.C. § 77l . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12, 13

15 U.S.C. § 77o . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

15 U.S.C. § 78l(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12

15 U.S.C. § 78u-4(b)(1)(B)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   4

17 Code of Federal Regulation 230.506 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

## ***Federal Rules***

Federal Rule of Civil Procedure  23.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11, 12

Federal Rule of Civil Procedure 12(b)(6)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   viii, 7

Federal Rule of Civil Procedure 9(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   viii

## ***Misc.***

British Virgin Islands Business Companies Act, section 121  . . . . . . . . . . . . . . . . . . . .   11

California Corporations Code section 2116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

DEFENDANT PATRICIA H. SEIFERT'S NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT
C 07 1429

California Corporations Code section 25102(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

California Corporations Code section 25110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12, 14

California Corporations Code section 25401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10

California Corporations Code section 25501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   10, 11, 14

California Corporations Code section 25503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   12, 14, 15

California Corporations Code section 25504 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

California Evidence Code section 955 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

Private Securities Litigation Reform Act  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii, 4, 7

DEFENDANT PATRICIA H. SEIFERT'S NOTICE OF MOTION AND MOTION TO DISMISS THIRD AMENDED COMPLAINT

C 07 1429

## SUMMARY OF ARGUMENT

Defendant Patricia H. Seifert moves the Court, pursuant to FRCP 12(b)(6) to dismiss all of the claims against her for failure to state a claim upon which relief can be granted. Ms. Seifert is sued in her capacity as Vice President of Legal Affairs and General Counsel for Defendant OrthoClear Holdings and OrthoClear, Inc. ("OrthoClear").

Plaintiffs are preferred shareholders of OrthoClear who claim that they were misled by Ms. Seifert's statements concerning multiple actions filed against OrthoClear by its competitor, Align Technologies, Inc. ("Align"). Plaintiffs allege that the ultimate settlement with Align (in which Align purchased OrthoClear's intellectual property for $20 million) shows that Ms. Seifert knew or should have known that key portions of OrthoClear's business were based upon infringing patents and "stolen intellectual property." *Third Amended Complaint, "(TAC"), ¶ 3.* Plaintiffs do not explain why Align would have paid such a substantial price for its own "stolen intellectual property."

Plaintiffs' securities fraud and common law misrepresentation claims fail to meet the heightened pleading standards of both the Private Securities Litigation Reform Act and Federal Rule of Civil Procedure 9(b). The claims are merely "fraud by hindsight" allegations that are not based on any particular facts, such as inconsistent contemporaneous statements or actions, which might support a strong inference of falsity or scienter. Rather, Plaintiffs have attempted to cobble together a typical "fraud by hindsight" complaint, barred by the PSLRA and Rule 9(b), by comparing Defendant's statements about the Align litigation with the actual results. Additionally Ms. Seifert, OrthoClear's General Counsel, cannot mount a meaningful defense to this action, in particular the derivative claims, without breaching the attorney-client privilege. Under such circumstances, California law mandates dismissal of Plaintiffs' claims.

Finally, the remainder of Plaintiffs' federal and California statutory claims against Ms. Seifert are so ill-conceived, poorly pleaded and contrary to law that there is no possibility that amendment will cure their defects. Dismissal with prejudice is warranted. Accordingly, Defendant Seifert respectfully requests that the Court dismiss all claims against her.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2  **1.   SUMMARY OF THE THIRD AMENDED COMPLAINT.**

3       Plaintiffs Lori and Peter Silcher purchased Class A preferred shares of OrthoClear Holdings

4  in April and June 2005; plaintiff Michael Eshelman purchased Class B preferred shares in October

5  2005 and Class C preferred shares in March 2006. *TAC, ¶¶ 15-17, 42-43.* Plaintiffs purport to

6  represent a class of all purchasers of Class A, B or C preferred shares other than Defendants. *Id., ¶¶*

7  *216-223.* Defendant Patricia Hummel Seifert is alleged to have served as Vice President of Legal

8  Affairs and General Counsel for OrthoClear Holdings and OrthoClear, Inc. *Id., ¶ 27.*

9       The TAC alleges that "Defendants failed to disclose that key parts if its [sic] aligner design

10  and production processes were misappropriated from Align Technology" and "falsely characterized

11  as meritless the claims underlying multiple lawsuits and proceedings brought against the Company

12  by Align." *TAC, ¶ 3.* As this Court previously ruled, these allegations are insufficient to

13  demonstrate the falsity or scienter required to properly plead claims for securities fraud. The new

14  allegations Plaintiffs have added to the TAC do nothing to change that result.

15       Specifically, Plaintiffs' allegations against Ms. Seifert fall into two categories: (1) that Ms.

16  Seifert misrepresented the risks of the Align litigation *(TAC, ¶¶ 109, 140, 147-149)*; and (2) that Ms.

17  Seifert represented that OrthoClear was not infringing Align's patents *(TAC, ¶¶ 77, 95, 105, 114-*

18  *115, 129)*. As this Court has previously ruled, and as discussed below, none of these representations

19  were false at the time they were made. Additionally, Plaintiffs also improperly attempt to attribute a

20  number of statements to Ms. Seifert based on the allegation that her name was listed as a "contact

21  person" on a press release, even though the press release *directly quoted another person. TAC, ¶¶*

22  *119-120 (press release quoting Mr. Riepenhausen), 139 (same).*

23  **2.   LEGAL DISCUSSION.**

24      **A.   Since Ms. Seifert Cannot Mount a Defense to This Lawsuit Without Breaching**

25         **the Attorney-Client Privilege, Dismissal Is Required.**

26       Under California law, where corporate counsel cannot mount a defense to a lawsuit without

27  breaching the attorney-client privilege, the action against the attorney must be dismissed. *Solin v.*

28  *O'Melveny & Myers*, 89 Cal.App.4th 451, 467 (2001); *McDermott, Will & Emery v. Superior Court*,

K:\4400\Pleading\Motion to Dismiss 3AC.wpd      1

1   83 Cal.App.4th 378, 385 (2000).  Plaintiffs have sued Ms. Seifert solely in her capacity as

2   OrthoClear's attorney.  *Id., ¶¶ 27, 161*.  As OrthoClear's attorney, Ms. Seifert not only has standing

3   to assert the attorney-client privilege on behalf of OrthoClear, she has a mandatory duty to do so.

4   Cal. Evid. Code, § 955; *Benge v. Superior Court*, 131 Cal.App.3d 336, 344-345 (1982).  It is the

5   corporation, and not the shareholder, who is the holder of the privilege.  *National Football League*

6   *Properties, Inc. v. Superior Court*, 65 Cal.App.4th 100, 109 (1998).  The attorney-client privilege

7   applies to a corporation's in-house counsel with the same force and effect as it does to outside

8   counsel:  "We reject any suggestion that the scope of the privilege should be diluted in the context of

9   in-house counsel and their corporate clients. Members of corporate legal departments are as fully

10  subject to the demands of the privilege as their outside colleagues."  *General Dynamics Corp. v.*

11  *Superior Court*, 7 Cal.4th 1164, 1190 (1994).

12      Here, it is clear that Plaintiffs are intent on obtaining privileged communications between

13  OrthoClear and Ms. Seifert.  The central disputed issues of Plaintiffs' Third Amended Complaint

14  focus on: OrthoClear's legal strategies concerning the 2005 re-examinations of Align's patents

15  (*TAC, ¶¶ 77-117*); OrthoClear's litigation strategies in the five underlying cases (*TAC, ¶¶ 3-6, 76,*

16  *118-152*); the ultimate settlement of the Align litigation (*TAC, paras. 9, 170-191*); and the settlement

17  negotiations with and subsequent release of funds to 3i (*TAC, ¶¶ 10, 184-196*).

18      If this Court requires Ms. Seifert to defend Plaintiffs' claims on the merits, she would be put

19  in an untenable position – she would be unable to disclose privileged communications with

20  OrthoClear on *any* of the subjects listed above, communications which would be necessary to her

21  defense.  Her communications with the corporation about the patent reexaminations, the entirety of

22  the underlying Align litigation, the Align settlement and the corporation's relationship with 3i are

23  quintessentially privileged communications.   In *McDermott, Will & Emery v. Superior Court,* 83

24  Cal.App.4th 378 (2000), certain shareholders sought to pursue a derivative action against corporate

25  counsel.  The Court of Appeal held: "a derivative lawsuit for malpractice against corporate outside

26  counsel raises unique attorney client privilege issues.  Because the shareholders are not the holder of

27  the privilege, they do not effect a waiver of that privilege merely by filing their action on the

28  corporation's behalf.  As a result, in the absence of a waiver by the corporate client, the third party

1   attorney is effectively foreclosed from mounting any meaningful defense to the shareholder

2   derivative action.  Accordingly, and for the reasons expressed herein, we hold such a derivative

3   action against the corporation's outside counsel, necessarily brought in equity, cannot proceed." *Id.*

4   at 380-381.

5          However, the holding of *McDermott* is not limited to derivative actions.  It applies equally to

6   *any* action incapable of resolution without a breach of the attorney-client privilege.  For example, in

7   *Solin v. O'Melveny & Myers*, 89 Cal.App.4th 451 (2001), plaintiff Solin, an attorney, retained

8   O'Melveny & Myers to obtain advice regarding Solin's representation of two clients .  Solin

9   disclosed to O'Melveny the clients' privileged information, which implicated them in criminal

10  activities.  When Solin sued O'Melveny for professional malpractice, the clients intervened, seeking

11  dismissal of the lawsuit to avoid disclosure of their confidential information.  *Id*. at 453.

12         The trial court determined that O'Melveny could not effectively defend the action without

13  disclosing the confidences of the clients, and dismissed the lawsuit.  The Court of Appeal affirmed,

14  emphasizing that "there can be no balancing of the attorney client privilege against the right to

15  prosecute a lawsuit to redress a legal wrong." *Id*. at 457-458, citing *General Dynamics Corp. v.*

16  *Superior Court* 7 Cal.4th 1164, 1190 (1994).  The *Solin* court summarized that "the central disputed

17  issues in this case center on what Solin disclosed and why, what legal advice O'Melveny rendered to

18  Solin and why, how Solin's disclosures shaped and influenced that legal advice, and how Cohen's

19  criminal law advice affected Solin's decision to structure the retainer agreement with the clients. ...

20  It is only by disclosing exactly what Solin communicated to Cohen as the concerns prompting his

21  retention of O'Melveny that Cohen can cogently explain the reasons that he gave the advice that he

22  did. ... We conclude that because this lawsuit 'is incapable of complete resolution without breaching

23  the attorney client privilege' the suit may not proceed." *Id*. at 466-467.

24         As in *Solin* and *McDermott*, an effective defense of Plaintiffs' claims would force Ms. Seifert

25  to disclose privileged communications with OrthoClear concerning OrthoClear's legal strategies

26  concerning the 2005 re-examinations of Align's patents, OrthoClear's litigation strategies in the five

27  underlying cases, the ultimate settlement of the Align litigation, and OrthoClear's relationship with

28  3i.  Because this lawsuit is incapable of resolution without such a breach of the attorney-client

1   privilege, the claims against Ms. Seifert may not proceed.

2        **B.      Plaintiffs Fail to State a 10b-5 Claim.**

3        The PSLRA was intended to put an end to securities fraud lawsuits that plead "fraud by

4   hindsight." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 988 (9th Cir. 1999). The PSLRA

5   requires that plaintiffs "plead with particularity both falsity and scienter." *In re Vantive Corp. Sec.*

6   *Litig.*, 283 F.3d. 1079, 1084 (9th Cir. 2002). "Thus, the complaint must allege that the Defendant

7   made false or misleading statements either intentionally or with deliberate recklessness, or if the

8   challenged representation is a forward looking statement, with 'actual knowledge .. that the

9   statement was false or misleading.'" *Id.* at 1085. This can be demonstrated "by pointing to

10  inconsistent contemporaneous statements or information (such as internal reports) made by or

11  available to the defendants." *Yoiurish v. California Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999).

12       This Court ordered that "Plaintiffs must set out each particular allegation they maintain

13  against each separate D&O Defendant." (January 18, 2008 Order, at 10, fn. 2; *In re NextCard, Inc.*

14  *Sec. Litig.*, 2006 U.S. Dist. LEXIS 16156 at *11-12 (N.D. Cal. 2006).) Despite these directions,

15  Plaintiffs still rely upon group pleading allegations. *See, e.g., TAC, ¶¶ 33-38.* These group pleading

16  allegations fail to state any particular facts concerning Ms. Seifert and must be disregarded.

17       Finally, the PSLRA requires that "if an allegation is made on information and belief, the

18  complaint shall state with particularity all facts upon which that belief is formed." 15 U.S.C. § 78u-

19  4(b)(1)(B). Plaintiffs' boilerplate allegations of information and belief are attributed, without any

20  differentiation, to their attorneys' review of unspecified "public documents," "court filings," and

21  "press releases." *TAC, ¶ 1.* Thus, Plaintiffs have not identified "all the facts forming the basis for

22  [their] belief in great detail." *Silicon Graphics*, 183 F.3d at 983.

23       **1.      Ms. Seifert made no misrepresentations concerning OrthoClear's patents.**

24       The PSLRA requires that Plaintiffs allege with particularity each statement alleged to be false

25  or misleading, and the reasons why the statement is misleading. 15 U.S.C. 78u-4(b)(1)(B);

26  *Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Chlorox Co.*, 353 F.3d 1125,

27  1134 (9th Cir. 2004); *In re Immune Response Sec. Litig.*, 375 F.Supp2d 983, 1018-1019 (S.D. Cal.

28  2005). As before, Defendants' representations that there was no known conflict between

OrthoClear's intellectual property and Align's did not amount to false and misleading statements at the time they were made. (January 18, 2008 Order, at 8.) Nor did OrthoClear's litigation strategy of filing for reexamination of Align's patent constitute a known falsity. *Id.*

The TAC does nothing to remedy this fatal pleading flaw. While Plaintiffs have added much verbiage to the complaint concerning the petitions for reexamination of Align's patents, these additions still do not demonstrate any known conflict or known infringement of any intellectual property. *See TAC, ¶¶ 80-166.* These allegations are immaterial for a number of reasons.

First, the TAC does not allege any facts concerning OrthoClear's *actual intellectual property.* Instead, Plaintiffs' perfunctory allegations of OrthoClear's intellectual property consist of (1) statements taken from a "Frequently Asked Questions" page of OrthoClear's website; (2) a newsletter from an orthodontist's (not OrthoClear's) website; and (3) a few sentence fragments, taken out of context, from press releases and conference calls. *TAC, ¶¶ 77, 83.* These allegations are nothing but general descriptions of OrthoClear's products, most of them put into layman's terms for an Internet audience. They are not patents. There are no facts in the TAC concerning OrthoClear's actual intellectual property. Therefore, Plaintiffs' allegations concerning the substance of OrthoClear's patents and allegations of patent infringement aren't even based on information and belief – they are based on speculation and conjecture.

Second, only one of the patents in reexamination discussed by Plaintiffs' TAC was the subject of the January 2006 patent suits filed in Wisconsin and the ITC. Of all the patents discussed in the TAC, only one – patent '880 – was sued upon by Align in the patent litigation. *See* Align's International Trade Commission Complaint, at 14-29.[1] Thus, Plaintiff's extensive allegations concerning the petitions to reexamine patents '893, '548, '215, '863 and '325 are immaterial and meaningless to this lawsuit. *See TAC, ¶¶ 80-92.* If the litigious Align had believed that OrthoClear infringed these patents, they certainly would have been included in the ITC patent litigation. They were not.

---

[1]  Defendant respectfully requests the Court to take judicial notice of Align's International Trade Commission Complaint, as well as the Protective Order and Order No. 7: Revising Procedural Schedule filed in the ITC action, attached to the accompanying Declaration of Edith Matthai.

1   Third, as far as the '880 patent is concerned, Plaintiffs make much of the Declaration of Dr.

2   Eric Kuo, filed in the ITC action on January 11, 2006 and attached to the TAC as Exhibit A.  Based

3   upon the contents of the Kuo Declaration,  Plaintiffs assert that Ms. Seifert knew that OrthoClear

4   was infringing patent '880.  *TAC, ¶¶ 96-97.*  As Align's International Trade Commission Complaint

5   filing clearly states, the Kuo declaration was submitted as confidential.  (ITC Complaint Cover Page,

6   ¶ 10; ITC Complaint's list of Documentary Exhibits, following verification page.)  Confidential

7   filings in the ITC action were subject to a protective order entered by the Administrative Law Judge

8   limiting disclosure of such documents to (1) outside counsel for the parties; (2) court reporters; (3)

9   experts employed by outside counsel; and (4) the Administrative Law Judge and Commission staff.

10  (ITC Order No. 1: Protective Order, ¶ 3(a).)   Thus, Ms. Seifert was not permitted to review the Kuo

11  Declaration, and could not have known of its contents.  Even if she had access to the Kuo

12  Declaration, Plaintiffs' proposition that Ms. Seifert should have accepted an adversary's position in

13  litigation as the absolute truth is absurd.

**2.       OrthoClear sufficiently disclosed the risks of the Align litigation.**

15  The Court's Order on Defendants' Motion to Dismiss held that Plaintiffs' allegations that

16  Defendants misrepresented the risks of the Align litigation failed to plead falsity with particularity,

17  because the Purchase Agreements had sufficiently disclosed the risks of the pending litigation.

18  (January 18, 2008 Order Granting Motions to Dismiss, at 7.)  Despite this ruling, Plaintiffs still rely

19  on allegations that Ms. Seifert represented that the Align litigation was not meritorious.  *TAC, ¶¶*

20  *105, 109, 140, 114-115, 147-149.*  However, Plaintiffs do not and cannot allege that Ms. Seifert

21  advised them to ignore the risk disclosures stated in the Purchase Agreements.[2]

22  In the Purchase Agreements, OrthoClear disclosed the risks of the pending litigation and

23  Plaintiffs agreed that they were experienced investors and could therefore appreciate the level of risk

24  involved.  (Purchase Agreements, ¶¶ 3.5, 4.1 and 4.7; Schedule of Exceptions, § 2.10.)  Specifically,

25  each purchaser represented and warranted that he or she was "experienced in evaluating and

26  investing in securities in the development stage..."  (*Id.*, ¶ 3.5.)  Plaintiffs further represented that

[2]  Defendant respectfully requests the Court to again take judicial notice of the Purchase Agreements, attached to the accompanying Declaration of Edith Matthai.

K:\4400\Pleading\Motion to Dismiss 3AC.wpd                    6

1   they understood that the purchase of the shares was highly speculative, risky and that "EACH

2   INVESTOR COULD LOSE HIS OR HER ENTIRE INVESTMENT." (*Id.*, ¶¶ 4.1.)  Plaintiffs also

3   understood that "the Company has been sued by Align" and that any adverse outcome of the

4   litigation "could have a substantial adverse effect on the Company and on any investment in shares."

5   (*Id.*, ¶ 4.17.)  Each of the Purchase Agreements also contained a Schedule of Exceptions that

6   described the current state of the Align litigation and warned investors that in the event of an adverse

7   outcome in the litigation, "some or all of such investment may be lost."  (*Id.,* Schedule of

8   Exceptions, § 2.10.)

9       As this Court previously ruled, written disclosures such as these, without statements from

10  Defendants telling investors to ignore the risk disclosures, are deemed sufficient and not actionable,

11  as "loss resulting from the materialization of a known risk does not support a claim of securities

12  fraud." *In re Boston Scientific Corp. Sec. Litig.*, 490 F.Supp.2d 142, 154 (D. Mass. 2007) (company

13  "was only required to mention the litigation in general descriptive terms" and was not obligated to

14  predict the outcome or estimate the impact");  *In re SeaChange Int'l*, 2004 U.S. Dist. LEXIS 1687,

15  *28 (D. Mass 2004) ("given the vagaries of litigation," general disclosure about litigation was not

16  misleading").

17          **3.      Plaintiffs still fail to create a strong inference of scienter.**

18      Plaintiffs still cannot demonstrate that Ms. Seifert knew any the statements ascribed to her

19  were false at the time they were made.  The PSLRA requires a plaintiff to allege particular facts

20  giving rise to a strong inference that "the defendant made false or misleading statements either

21  intentionally or with deliberate recklessness." *Vantive*, 283 F.3d at 1085; 15 U.S.C. § 78u-4(b)(2).

22  "Where the pleadings are not sufficiently particularized or where, even taken as a whole, they do not

23  raise a strong inference of scienter, dismissal pursuant to Rule 12(b)(6) is proper." *Lipton v.*

24  *Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002).

25      As shown above, Plaintiffs have failed to demonstrate that Ms. Seifert knew of any actual

26  patent conflict or infringements by any inconsistent contemporaneous statements or actions.  *See In*

27  *re Immune Response*, 375 F.Supp.2d at 1018 (complaint "must contain allegations of specific

28  contemporaneous statements or conditions that demonstrate the intentional or the deliberately

K:\4400\Pleading\Motion to Dismiss 3AC.wpd                7

1   reckless, false or misleading nature of the statements when made").  Finally, "[t]he mere fact of a

2   settlement in pending litigation does not create an inference that Defendants misrepresented the

3   nature of the lawsuit. ...  The settlement figure alone indicates that OrthoClear's intellectual property

4   was valuable and demonstrates little about the meritoriousness of Align's litigation arguments."

5   (January 18, 2008 Order, at 10.)

6        Plaintiffs have no explanation why Align would have paid $20 million for its own "stolen

7   intellectual property."  Given the "plausible nonculpable explanations" for the settlement, such as the

8   expense and uncertainty of aggressive five-front litigation, this claim must be dismissed.  *See*

9   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007).

10        **C.**     **Plaintiffs Fail to State a Claim for Intentional or Negligent  Misrepresentation.**

11        "'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation

12   (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c)

13   intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'"  *Lazar v.*

14   *Superior Court*, 12 Cal. 4th 631, 638 (1996).  Like fraud, the elements of negligent

15   misrepresentation include the misrepresentation of a past or existing material fact.  *Fox v. Pollack*,

16   181 Cal.App.3d 954, 962 (1986).

17        Claims for both fraud and negligent misrepresentation must meet the heightened pleading

18   requirements of FRCP 9(b).  *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086,

19   1093 (C.D. Cal. 1999); *Deitz v. Comcast Corp.*, 2006 U.S. Dist. LEXIS 94333, *17 (N.D. Cal.

20   2006).  The Ninth Circuit requires, "to allege fraud with particularity, a plaintiff must set forth more

21   than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false

22   or misleading about a statement, and why it is false."  *In re Glenfed Inc. Securities Litigation*, 42

23   F.3d 1541, 1548 (9th Cir. 1994); *Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988).  The most

24   direct way for a plaintiff to demonstrate falsity is to plead "inconsistent contemporaneous statements

25   or information which were made by or available to the defendants."  *Glenfed*, 42 F.3d at 1549.   A

26   plaintiff does not satisfy the falsity requirement by merely asserting that a company's later revelation

27   of bad news means that "earlier, cheerier" statements must have been false.  *Glenfed*, 42 F.3d at

28   1548.  These types of allegations constitute  "fraud by hindsight" and they do not establish falsity.

1   *Glen Holly Entertainment, Inc.*, 100 F.Supp.2d at 1094.

2   Plaintiffs have failed to meet this standard to show the falsity of any of Ms. Seifert's alleged

3   representations. The alleged representations that OrthoClear's patents were not infringing and that

4   Align's litigation was without merit do not constitute known falsity and are not actionable. Nor have

5   Plaintiffs supported their allegations with any "inconsistent contemporaneous statements or

6   information which were made by or available to the defendants." *Glenfed*, 42 F.3d at 1549. These

7   are classic "fraud by hindsight" claims.

8   Additionally, many of the statements attributed to Ms. Seifert concern future events regarding

9   the Align litigation. *TAC, ¶¶ 105,114-115, 147-149.* These statements are not actionable by fraud.

10  "Fraudulent representations, to constitute grounds for relief, must be as to existing and material

11  facts; predictions of future events are ordinarily considered non-actionable expressions of opinion."

12  *Richard P. v. Vista Del Mar Child Care Service*, 106 Cal.App.3d 860, 865 (1980); see also *Tarmann*

13  *v. State Farm Mutual Automobile Insurance Co.* (1991) 2 Cal.App.4th 153, 158. "The future is

14  always opinion; what happened before is a fact. [Citation.] A cause of action does not lie for

15  unfulfilled predictions or expectations." *Connelly v. State of California*, 3 Cal.App.3d 744, 759

16  (1970) [David J., concurring in part and dissenting in part].

17  Finally, the alleged non-opinion statements of Ms. Seifert are *demonstrably true*. For

18  instance, Plaintiffs claim that Ms. Seifert made a misrepresentation when she stated that OrthoClear

19  has "a very small legal department. I am the legal department." *TAC, ¶ 147.* Yet Plaintiffs go on to

20  admit that Ms Seifert "was the General Counsel and sole in-house attorney for OrthoClear." *Id., at*

21  *¶ 161.* Plaintiffs claim Ms. Seifert "misled" investors when she stated that it was "unlikely that the

22  ITC matter will come to any kind of meaningful conclusion until at least May of 2007." *Id., at ¶*

23  *149.* This statement was true at the time it was made – *as Plaintiffs admit*, the ITC had set the Target

24  Date for Completion of Investigation for May 15, 2007. (TAC, ¶ 76(c); ITC Order No. 7: Revising

25  Procedural Schedule, at 2.) When Defendants characterized the June 6, 2005 demurrer ruling in the

26  state court case as "favorable" it was true. *See TAC, ¶ 132.* OrthoClear had demurred to thirteen

27  causes of action; the demurrer was sustained as to nine causes of action, significantly reducing the

28  claims at issue. (June 8, 2005 Order Sustaining in Part and Overruling in Part Defendants'

1    Demurrers to the Complaint of Align Technology.)  Again, in September 2005, when Ms Seifert

2    stated that there was nothing in the state trade secret case which would shut down OrthoClear, it was

3    true.  *See TAC, ¶ 105.*  Neither of the two actions pending at that time sought injunctive relief which

4    would prevent OrthoClear from producing its products; they were both lawsuits for damages.  (First

5    Amended Complaint, filed June 6, 2005, in *Align Technology, Inc. v. OrthoClear, Inc., et al.*, San

6    Francisco Superior Court Case No. CGC-05-438361; Complaint, filed July 19, 2005, in *Align*

7    *Technology, Inc. v. OrthoClear, Inc.*, N.D. Cal. Case No. 3:05-cv-02948-MMC.) [3]

8           Obviously, where there is no falsity there can be no scienter.  Plaintiffs' boilerplate allegation

9    that the alleged misrepresentations "were made with knowledge that they were false" is insufficient.

10   *TAC, ¶ 240.*  FRCP 9(b) requires Plaintiffs to plead scienter with particularity.  As with the securities

11   fraud claim, discussed above, Plaintiffs have not and cannot plead with particularity that Ms. Seifert

12   knew that any of her statements were false at the time they were made.  There are no allegations of

13   inconsistent contemporaneous statements, such as internal reports or other communications from

14   Ms. Seifert.

15           **D.      Plaintiffs Cannot State Claims Under Corp. Code Sections 25401 and 25501.**

16          Plaintiffs assert this claim (Count V) against Ms. Seifert based on California Corporations

17   Code sections 25401 and 25501.  *TAC, 252-253.*  Corporations Code section 25401 makes it

18   "unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this

19   state by means of any written or oral communication which includes an untrue statement of a

20   material fact ..."   Section 25501 provides a private right of action for those who buy or sell a

21   security from a person who violates section 25401.

22          A violation of section 25401 requires strict privity between the seller and purchaser of

23   securities; liability is limited to actual sellers.  *Employers Ins. Of Wausau v. Musick, Peeler, &*

24   *Garrett*, 871 F.Supp. 381, 387 (S.D. Cal. 1994);  *Am. High-Income Trust v. AlliedSignal*, 329

25   F.Supp.2d 534, 548 (S.D.N.Y. 2004);  *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1104 (1993) ("'[u]nder

26

27          [3]  Defendant respectfully requests the Court to take judicial notice of the Complaints filed in
28   the State Action and Lanham Action; and the state court June 8, 2005 Order; all of which are
     attached to the accompanying Declaration of Edith Matthai.

1  Section 25501 the defendant is only liable to the person with whom he deals'"). Plaintiffs allege that

2  OrthoClear, not Ms. Seifert, sold the securities and received money for the securities. *TAC, ¶¶ 39,*

3  *146, 156, 160, 169, 235, 278; see ¶¶ 160, 166.* Nowhere do Plaintiffs allege that Ms. Seifert was the

4  actual seller of the shares. As such, there is no privity and Plaintiffs cannot proceed with this claim.

5  **E.   Plaintiffs Cannot Maintain Derivative Claims Against Ms. Seifert.**

6  The TAC alleges three derivative claims against Ms. Seifert: breach of fiduciary duty (Count

7  VI); violation of the British Virgin Islands Business Companies Act, section 121 (Count VII); and

8  violation of California Corporations Code section 2116 (Count VIII). *TAC, ¶¶ 2, 197, 262-272.*

9  These three derivative claims in particular are susceptible to dismissal pursuant to the *McDermott,*

10  *Will & Emery* and *Solin* cases  In *McDermott*, the Court of Appeal stated that "any lawsuit by a

11  shareholder against corporate counsel for damage to the corporation must be derivative in nature,"

12  and held that such an action cannot be prosecuted. (*McDermott*, 83 Cal.App.4th at 384-385.) The

13  court explained the reason for the rule: "We simply cannot conceive how an attorney is to mount a

14  defense in a shareholder derivative action alleging a breach of duty to the corporate client, where, by

15  the very nature of such an action, the attorney is foreclosed, in the absence of any waiver by the

16  corporation, from disclosing the very communications which are alleged to constitute a breach of

17  that duty." *Id.* at 385.

18  For this reason, Plaintiffs' three derivative claims against Ms. Seifert for damage to

19  OrthoClear caused by alleged breaches of duties owed to the corporation must be dismissed.

20  Additionally, Plaintiffs have not met the procedural requirements for bringing derivative

21  claims. FRCP 23.1 requires that derivative complaint be verified. As the TAC is not verified, the

22  derivative claims must be dismissed. *In re MIPS Technologies, Inc. Der. Litig.*, 2008 U.S. Dist.

23  LEXIS 4576 at *14-16. Nor could Plaintiffs ever adequately represent the interests of the other

24  shareholders in these derivative claims. FRCP 23.1; *Larson v. Dumke*, 900 F.2d 1363, 1367 (9th

25  Cir. 1990) ("adequate representative must ... be free from economic interests that are antagonistic to

26  the interests of the class"). Rather, Plaintiffs' individual claims and derivative claims are "in

27  competition for the same pool of money," creating antagonistic interests requiring dismissal.

28  *Zarowitz v. BankAmerica Corp.*, 866 F.2d 1164, 1166 (9th Cir. 1989) (plaintiff with individual

K:\4400\Pleading\Motion to Dismiss 3AC.wpd                    11

1    claims against corporation not proper derivative plaintiff under Rule 23.1);  *Argiropoulos v. Kopp*,

2    2007 U.S. Dist. LEXIS 22351 at *22-25 (D. Md. 2007) (derivative claim dismissed where

3    "derivative action and a plaintiff's individual monetary recovery are in competition for the same pool

4    of money").

5            **F.      Plaintiffs' Fail to State Claims for Lack of Registration or Qualification.**

6            Counts II and X should be dismissed, as Plaintiffs do not allege that any sales of securities to

7    them violated the registration and qualification laws.  Plaintiffs do not allege that *they* were

8    unaccredited investors or that *their* purchases violated Section 12(a)(1) or Section 25110.  Rather,

9    they seek to recover their own investments based on allegations of improper sales to two *other*

10   investors.  These claims must be dismissed, as the statutes at issue permit a claim only by the

11   purchaser of a security sold in violation of registration or qualification laws.  (15 U.S.C. § 77l (any

12   person who offers or sells a security in violation of Section 5 "shall be liable ... to the person

13   purchasing such security from him"); Cal. Corp. Code § 25503 (a person who violates Section 25110

14   "shall be liable ... to any person acquiring from the security sold to him in violation of such

15   section").

16           **1.      Count II for Violation of the Securities Act of 1933.**

17           Through this claim, Plaintiffs purport to sue Defendants under 15 U.S.C. § 78l(a)(1), and

18   assert that Ms. Seifert is liable for OrthoClear's violations as a "control person," pursuant to 15

19   U.S.C. § 77o.  *TAC, ¶¶ 234, 236.*  As an initial matter, section 77o does not provide for control

20   person liability for violations of section 78l.  15 U.S.C. § 77o ("Every person who ... controls any

21   person liable under sections 77k or 77l of this title, shall also be liable jointly and severally...")

22           Assuming Plaintiffs actually intend to sue Ms. Seifert under 15 U.S.C. 77l, Plaintiffs have

23   failed to adequately allege Ms. Seifert's "control" of OrthoClear.  To state a claim for control person

24   liability under § 77o, "a plaintiff must allege that the individual defendants had the power to control

25   or influence the company, and that the individual defendants were culpable participants in the

26   company's alleged illegal activity."  *In re Metricom Secs. Litig.*, 2004 U.S. Dist. LEXIS 7834, *27

27   (N.D. Cal. 2004);  *Rubke v. Capitol Bancorp Ltd.*, 460 F.Supp.2d 1124, 1134 (N.D. Cal. 2006).

28           There are no allegations that Ms. Seifert had the power to control or influence the company,

1   or that Ms. Seifert was a "culpable participant" in the alleged registration and qualification

2   violations.  The only allegation regarding the "power to control or influence the company" is that the

3   D&O defendants "as a group," "were directly involved in the day-to-day operations of the company

4   at the highest levels." *TAC, ¶ 35.*  This allegation is patently insufficient to demonstrate control for

5   either the federal or state claim.  *See, e.g., Wanetick v. Mel's of Modesto, Inc.*, 811 F.Supp. 1402,

6   1406-1407 (N.D. Cal. 1992) (allegation that defendant is a member of " a narrowly defined group

7   charged with day-to-day operations" insufficient to plead control under California or federal statutes;

8   claims were dismissed).

9          Plaintiffs fail to allege that Ms. Seifert possessed the "power to control" OrthoClear or was a

10  culpable participant in the subject securities transactions.  To the contrary, Ms. Seifert was *not* a

11  "Key Management" person at OrthoClear (Purchase Agreements, Exh A, ¶ 4.7; Exh. B, ¶ 4.7; Exh.

12  C, ¶ 4.13) and that the law firms Pillsbury Winthrop and Morrison Foerster, not Ms. Seifert,

13  represented the Company in all of the securities transactions at issue in this action.  (*Id.*, at, ¶ 7.17).

14  Plaintiffs admit that Ms. Seifert was not involved in the securities transactions.  *TAC, ¶ 161.*  That is

15  because OrthoClear had hired the largest and arguably the best law firms available to represent it in

16  the securities transactions.  (Purchase Agreements, ¶ 7.17.)

17         Additionally, Plaintiffs admit that OrthoClear shares were offered  "through four private

18  stock offerings." *TAC, para. 39.*  However, 15 U.S.C. § 77l does not apply to private transactions;

19  Congress meant for statute to apply only to public offerings.  *Lewis v Fresne* (5th Cir. 2001) 252

20  F.3d 352, 357 & fn. 4 ("Section 12 of the 1933 Act does not apply to private transactions"), citing

21  *Gustafson v. Alloyd Co.*, 513 U.S. 561, 581, 131 L. Ed. 2d 1, 115 S. Ct. 1061 (1995).

22         Finally, Plaintiffs have failed to adequately allege facts that would have required registration.

23  Both the TAC and the Purchase Agreements contemplate that the securities were issued pursuant to

24  federal exemptions from registration requirements available for private placement of securities.

25  (Purchase Agreements, ¶ 4.15; *TAC, ¶ 168.*)  As Plaintiffs concede, Regulation D permits sales to up

26  to 35 unaccredited investors.  (17 C.F.R. 230.506.)  Yet Plaintiffs allege the existence of only *two*

27  unaccredited investors, Dr. Banaziak and Ann Love.  *TAC, ¶¶ 164-166.*  Nor do Plaintiffs assert that

28  there are actually more than two unaccredited investors.  Instead, Plaintiffs evasively allege that

1    OrthoClear "knew or should have known that many of its investors did not qualify as accredited

2    investors."  *Id, ¶¶ 168.*  These allegations do not provide any grounds for asserting that the subject

3    securities were not exempt from registration.

4          Additionally most of Plaintiffs' claims for violation of the registration statutes are barred by

5    the statute of limitations.  These claims must be brought within one year after the purchase of the

6    unregistered security.  15 U.S.C. 77m.  This one-year statute of limitations is absolute and not

7    subject to equitable tolling.  *In re Rexplore, Inc.*, 671 F.Supp. 679, 687 (N.D. Cal. 1987); *Lubin v.*

8    *Sybedon Corp.*, 688 F.Supp. 1425, 1451 (S.D. Cal. 1988).  All of the alleged purchases by named

9    Plaintiffs, with one exception, occurred more than one year before the initial complaint was filed on

10   March 12, 2007.  *TAC, ¶¶ 15-17.*  (Plaintiff Eshelman allegedly purchased $100,000 of Class C

11   shares on March 13, 2006.  *TAC, ¶ 15.*)  Thus, Peter and Lori Silcher and most of the purported class

12   are time-barred from asserting a nonregistration claim.

13                    **2.      Count X for violation of Cal. Corporations Code § 25110.**

14         Plaintiffs allege that OrthoClear sold securities that had not been qualified, in violation of

15   Corporations Code § 25110, and that Ms. Seifert and the other D&O Defendants are liable for that

16   violation pursuant to Corporations Code § 25504.  *TAC, ¶¶ 278-279.*  Section 25110 makes it

17   unlawful to sell to sell securities unless the sale has been properly qualified by the state or is subject

18   to one of the enumerated exemptions.  Cal. Corp. Code, § 25110.  There is no private right for these

19   Plaintiffs to enforce section 25110; rather, Corporations Code "[s]ection 25503 provides a private

20   civil remedy for violations of section 25110."  *Hokama v. E.F. Hutton & Co.*, 566 F.Supp. 636, 644

21   (C.D. Cal. 1983); *Kainos Labs., Inc. v. Beacon Diagnostics, Inc.*, 1998 U.S. Dist. LEXIS 23473,

22   *35-36 (N.D. Cal. 1998);  *Koehler v. Pulvers*, 614 F. Supp. 829, 844 (S.D. Cal. 1985) ("Section

23   25503 imposes liability against the issuer").

24         Moreover, Corporations Code § 25504 does not provide control person liability for violations

25   of section 25110, as Plaintiffs allege.  Cal. Corp Code § 25504 ("Every person who directly or

26   indirectly controls a person liable under Section 25501 or 25503, ... every principal executive officer

27   or director of a corporation so liable,  ... are also liable jointly and severally ...").  Therefore, alleged

28   control persons, may only be found jointly liable with a corporation liable under section 25503.

1    However, Plaintiffs do not plead that *any* person or entity is liable under section 25503.

2         Further, Plaintiffs' control person allegations are insufficient to demonstrate that Ms. Seifert

3    had the power to control the company, or that Ms. Seifert was a "culpable participant" in the alleged

4    qualification violations.  *See, e.g., Wanetick v. Mel's of Modesto, Inc.*, 811 F.Supp. 1402, 1406-1407

5    (N.D. Cal. 1992) (allegation that defendant is a member of " a narrowly defined group charged with

6    day-to-day operations" insufficient to plead control under California or federal statutes; claims were

7    dismissed);  *Kainos Labs., Inc.*, 1998 U.S. Dist. LEXIS 23473, *44 ("the control person statute under

8    California law is substantially the same as the federal statute").  The judicially noticeable facts are to

9    the contrary.  (Purchase Agreements, ¶¶ 4.7, 7.17.)

10        Finally, Plaintiffs have failed to allege facts that would have required qualification.  The

11   securities were issued pursuant to state exemptions from qualification requirements available for

12   private placement of securities.  (Purchase Agreements, ¶ 4.15; *TAC, ¶ 168*.)  The state law

13   exemption permits sales to up to 35 unaccredited investors.  Cal. Corp. Code § 25102(f).  Yet

14   Plaintiffs allege only two unaccredited investors, Dr. Banaziak and Ann Love.  *TAC, ¶¶ 164-166.*

15   Nor do Plaintiffs claim that there are actually more than two unaccredited investors.  Instead,

16   Plaintiffs allege that OrthoClear "knew or should have known that many of its investors did not

17   qualify as accredited investors."  *Id., ¶ 168.*

18        Plaintiffs also allege that OrthoClear failed to comply with the California exemption

19   requirement that all purchasers within the 35-purchaser limit must have either a pre-existing personal

20   or business relationship with the offeror or the capacity to protect their own interests in connection

21   with the transaction.  *Id., ¶ 169.*  However, Plaintiffs have not identified any such purchasers.  Nor

22   are there factual allegations concerning *any* individual investor's level of sophistication or lack of a

23   pre-existing business or personal relationship with the offeror.  These boilerplate allegations do not

24   provide any grounds for asserting that the subject securities were not exempt from registration.

25   **3.    CONCLUSION.**

26        This is Plaintiffs' fourth attempt at stating these claims.  There is no possibility, given the

27   state of the pleadings and judicially noticeable facts, that plaintiffs can restate any viable claims

28   / / /

K:\4400\Pleading\Motion to Dismiss 3AC.wpd                    15

1    against this Defendant.  All claims against Ms. Seifert should be dismissed with prejudice.

2

3    Dated:   March 24, 2008                         ROBIE & MATTHAI
                                                      A Professional Corporation
4

5

6                                       By: _____
                                                      EDITH R. MATTHAI
7                                                     BERNADINE J. STOLAR
                                                      Attorneys for Defendant PATRICIA H. SEIFERT
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

K:\4400\Pleading\Motion to Dismiss 3AC.wpd                    16

1

## PROOF OF SERVICE

2      I declare that I am over the age of eighteen (18) and not a party to this action.  My business
address is 500 South Grand Avenue, Suite 1500, Los Angeles, CA 90071.

3

4      On March 24, 2008, I served the foregoing document(s) described as:

**DEFENDANT PATRICIA H. SEIFERT'S NOTICE OF MOTION
AND MOTION TO DISMISS THIRD AMENDED
COMPLAINT;  MEMORANDUM OF POINTS AND
AUTHORITIES**

5

6

7      on all interested parties in this action by placing a true copy of each document, enclosed in a sealed
envelope addressed as follows:

8

9      **_Counsel for Plaintiffs:_**
Alan Sparer, Esq.
James Shimenga Nabwangu, Esq.

10     Mark Haber, Esq.
LAW OFFICES OF ALAN W. SPARER

11     100 Pine Street, 33rd Floor
San Francisco, CA 94111

12     Tel:    (415) 217-7300
Fax:    (415) 217-7307

13     Email: asparer@sparerlaw.com
Email: jnabwangu@sparerlaw.com

14     Email: mhaber@sparerlaw.com

**_Counsel for Defendants OCUMENTA
CAPITAL HOLDINGS, INC., fka
OrthoClear Holdings, Inc.;  OCUMENTA,
INC., fka OrthoClear, Inc.;  MUHAMMAD
ZIAULLAH CHISHTI; HUAFENG
"CHARLES" WEN; PETER
RIEPENHAUSEN; ARTHUR T. TAYLOR;
SAIYED ATIQ RAZA; and JOSEPH
BREELAND:_**
Arthur J. Shartsis, Esq.
Charles R. Rice, Esq.
Jason P. Lee, Esq.
SHARTSIS FRIESE LLP
One Maritime Plaza, 18th Floor
San Francisco, CA 94111
Tel:    (415) 421-6500
Fax:    (415) 421-2922
Email: ashartsis@sflaw.com

15

16

17

18     (**X**)     **BY MAIL:** as follows:  I am "readily familiar" with the firm's practice of collection and
processing of correspondence for mailing with the United States Postal Service.  I know that

19              the correspondence was deposited with the United States Postal Service on the same day this
declaration was executed in the ordinary course of business.  I know that the envelope was

20              sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date
in the United States mail at Los Angeles, California.

21

22              Executed on March 24, 2008, at Los Angeles, California.

23     (**X**) (**Federal**)  I declare that I am employed in the office of a member of the bar of this court at
whose direction the service was made.

24

25

26     _____

27                              Windy Gale Tyler

28