1   SHARTSIS FRIESE LLP
    ARTHUR J. SHARTSIS (Bar #51549)
2   CHARLES R. RICE (Bar #98218)
    JASON P. LEE (Bar #196520)
3   JOSEPH V. MAUCH (Bar #253693)
    One Maritime Plaza, Eighteenth Floor
4   San Francisco, CA  94111
    Telephone:  (415) 421-6500
5   Facsimile:  (415) 421-2922
    Email:  ashartsis@sflaw.com
6
    Attorneys for Defendants
7   OCUMENTA CAPITAL HOLDINGS, INC.,
    formerly known as OrthoClear Holdings, Inc.,
8   OCUMENTA, INC., formerly known as OrthoClear,
    Inc., MUHAMMAD ZIAULLAH CHISHTI,
9   HUAFENG "CHARLES" WEN, PETER
    RIEPENHAUSEN, ARTHUR T. TAYLOR,
10  SAIYED ATIQ RAZA, and JOSEPH BREELAND

11                UNITED STATES DISTRICT COURT

12             NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

15  MICHAEL B. ESHELMAN, D.D.S.;        Case No.  C 07-01429 JSW
    PETER F. SILCHER, D.D.S; and
16  LORI I. SILCHER                     **NOTICE OF MOTION AND MOTION
                                        TO DISMISS THIRD AMENDED
17                Plaintiffs,           COMPLAINT; MEMORANDUM OF
                                        POINTS AND AUTHORITIES**
18  v.

19  ORTHOCLEAR HOLDINGS, INC.,          Date:      May 16, 2008
    a British Virgin Islands Company;   Time:      9:00 a.m.
20  ORTHOCLEAR, INC., a Delaware        Judge:     Hon. Jeffrey S. White
    Corporation; MUHAMMAD ZIAULLAH
21  CHISHTI, an individual; HUAFENG     Trial Date:      Not Set
    "CHARLES" WEN, an individual; PETER Action Filed:    March 12, 2007
22  RIEPENHAUSEN, an individual;
    ARTHUR T. TAYLOR, an individual;
23  SAIYED ATIQ RAZA, an individual;
    CHRISTOPHER KAWAJA, an individual;
24  PATRICIA HUMELL SEIFERT, an
    individual; JOSEPH BREELAND, an
25  individual; MUDASSAR RATHORE, an
    individual; PAUL BADAWI, an
26  individual; 3i Technology Partners III LP;
    and DOES 1 through 25, inclusive,
27
                  Defendants.
28

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on May 16, 2008, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Jeffrey S. White, United States District Judge, in Courtroom 2 of the above-entitled court, Defendants Ocumenta Capital Holdings, Inc., formerly known as OrthoClear Holdings, Inc., Ocumenta, Inc., formerly known as OrthoClear, Inc., and Muhammad Ziaullah Chishti, Huafeng "Charles" Wen, Peter Riepenhausen, Arthur T. Taylor, Saiyed Atiq Raza and Joseph Breeland will and hereby do move to dismiss Counts I through VIII and X of plaintiffs' Third Amended Complaint.

This motion will be based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Declaration of Joseph Mauch and Request for Judicial Notice, the complete files and records herein, and the argument and other evidence to be presented at the hearing of this matter.

DATED:       March 24, 2008                    SHARTSIS FRIESE LLP


By:            */s/ Charles R. Rice*
                    CHARLES R. RICE

Attorneys for Defendants
OCUMENTA CAPITAL HOLDINGS, INC.,
formerly known as OrthoClear Holdings, Inc.,
OCUMENTA, INC., formerly known as
OrthoClear, Inc., MUHAMMAD ZIAULLAH
CHISHTI, HUAFENG "CHARLES" WEN,
PETER RIEPENHAUSEN, ARTHUR T.
TAYLOR, SAIYED ATIQ RAZA, and
JOSEPH BREELAND

Shartsis Friese LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

SUMMARY OF ARGUMENT ......................................................................................... iv

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 1

I.     PROCEDURAL BACKGROUND........................................................................ 1

    A.     Order Granting Prior Motions To Dismiss ............................................. 1

    B.     Third Amended Complaint ..................................................................... 3

II.     ARGUMENT ..................................................................................................... 3

    A.     Plaintiffs Have Failed to State a 10b-5 Claim......................................... 3

       1.     Plaintiffs' Amended Claims........................................................ 3

       2.     Petitions for Reexamination of Align's Patents. ........................ 4

       3.     Conclusion. ................................................................................ 6

    B.     Plaintiffs Have Failed to State a Claim for Intentional Misrepresentation ............ 7

    C.     Plaintiffs Have Failed to State a Claim for Negligent Misrepresentation.............. 7

    D.     Plaintiffs Have Failed to State a Claim for Violation of California Corporations Code Sections 25401 and 25501 ....................................... 8

    E.     Plaintiffs Have Not Met the Requirements for Derivative Claims ........................ 9

    F.     Plaintiffs Have No Claim for Failure to Register or Qualify Securities .............. 11

    G.     Section 12(a)(1) Claims for Class B Shares are Time-barred............................. 13

    H.     Plaintiffs Have No Claims Against Individual OrthoClear Defendants .............. 14

III.     CONCLUSION .................................................................................................. 15

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
C 07-01429 JSW

NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT; POINTS AND AUTHORITIES

1

## <u>TABLE OF AUTHORITIES</u>

2

### FEDERAL CASES

3

*Argiropoulos v Kopp*,
    2007 U.S. Dist. LEXIS 22351 (D. Md. 2007) ................................................................... 9

4

5

*Davco Mfg. Corp. v. Peninsular Diesel, Inc.*,
    128 F.R.D. 91 (N.D. Ohio 1989) ....................................................................................... 4

6

*In re Glenfed, Inc. Sec. Litig.*,
    42 F.3d 1541 (9th Cir. 1994) ............................................................................................. 8

7

8

*Larson v. Dumke*,
    900 F.2d 1363 (9th Cir. 1990) ........................................................................................... 9

9

*In re MIPS Techs.*,
    2008 U.S. Dist. LEXIS 4576 (N.D. Cal. 2008) ................................................................. 9

10

11

*In re NextCard, Inc. Sec. Litig.*,
    2006 U.S. Dist. LEXIS 16156 (N.D. Cal. 2006) ............................................................. 15

12

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding*
    *Corp.*, 320 F.3d 920 (9th Cir. 2003) ............................................................................... 15

13

14

*Seghers v. Thompson*,
    2006 U.S. Dist. LEXIS 71103 (S.D.N.Y. 2006) ............................................................. 10

15

*In re Splash Tech. Holdings Inc. Sec. Litig.*,
    2000 U.S. Dist. LEXIS 15370 (N.D. Cal. 2000) ............................................................. 15

16

17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    127 S. Ct. 2499 (2007) ....................................................................................................... 5

18

*In re Tibco Software Secs. Litig.*,
    2006 U.S. Dist. LEXIS 36666 (N.D. Cal. 2006 ) ............................................................ 15

19

20

*Zarowitz v. BankAmerica Corp.*,
    866 F.2d 1164 (9th Cir. 1989) ........................................................................................... 9

21

### STATE CASES

22

*Andrews Farms v. Calcot, ltd.*,
    2007 U.S. Dist. LEXIS 44379 (E.D. Cal. 2007) ............................................................... 8

23

24

*Shields v. Singleton*,
    15 Cal. App. 4th 1611 (1993) .......................................................................................... 11

25

*Small v. Fritz Companies, Inc.*,
    30 Cal. 4th 167 (2003) ................................................................................................... 7, 8

26

### STATUTES

27

17 C.F.R. §230.405 .................................................................................................................... 15
17 C.F.R. §230.502 .................................................................................................................... 14

28

37 C.F.R. §1.11 ........................................................................................................................... 6

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- ii -

NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT; POINTS AND AUTHORITIES

FRCP 9(b) ........................................................................................................ 8
FRCP 23.1 ....................................................................................................... 9
15 U.S.C. §77l ............................................................................................... 12
15 U.S.C. §77m ............................................................................................ 13
35 U.S.C. §305 ................................................................................................ 6
California Corporations Code §25503 ......................................................... 13
California Corporations Code §25110 ......................................................... 14
California Corporations Code §25504 ......................................................... 14

## OTHER

*BVI Business Companies Act §184C* ............................................... 10, 11
*Manual of Patent Examining Procedure §2212* ..................................... 5, 6
*Manual of Patent Examining Procedure §2232* ......................................... 6

Shartsis Friese LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
C 07-01429 JSW

NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT; POINTS AND AUTHORITIES

## SUMMARY OF ARGUMENT

The Third Amended Complaint essentially repeats the claims that have already been dismissed by this Court.  Plaintiffs are purchasers of OrthoClear's Class A, B and C preferred shares who again assert that the OrthoClear Defendants[1] misrepresented the risks of five separate lawsuits by Align Technologies, Inc., for alleged patent, trademark and trade secret violations (the "Align litigation").  Plaintiffs still contend that the settlement of the Align litigation shows that the OrthoClear Defendants must have knowingly lied to investors about the validity of OrthoClear's intellectual property and the risks of the Align litigation.  Plaintiffs also contend, as before, that OrthoClear's securities should have been registered under federal law and qualified under California law.  And they repeat their claim that, after the Align settlement, a payment by OrthoClear to its most senior preferred shareholder, 3i Technology Partners III L.P. ("3i"), breached defendants' common law and statutory duties.

In dismissing the prior complaint without prejudice, the Court found that the 10b-5 claim failed to meet the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") because plaintiffs had failed to plead sufficient facts to demonstrate falsity, scienter and reliance.  *Order Granting Motions to Dismiss dated January 18, 2008 ("Order"), at 6-10*.  The Court also explained why each of plaintiffs' other claims failed to pass muster, as discussed in further detail below.  *Id. at 11-13*.

Plaintiffs' new complaint does not cure the defects of its predecessor because plaintiffs do not allege any new facts that demonstrate falsity or scienter.  And plaintiffs have still not alleged that any securities sales to them personally violated any registration or qualification law.  Finally, plaintiffs have now recast certain claims as derivative, but they are not entitled to pursue these claims on behalf of OrthoClear under the Federal Rules of Civil Procedure or the substantive law of the British Virgin Islands, where OrthoClear was incorporated.

---

[1]     As used herein, "OrthoClear Defendants" include Ocumenta Capital Holdings, Inc., formerly known as OrthoClear Holdings, Inc. ("OrthoClear") and Ocumenta, Inc., formerly known as OrthoClear, Inc., as well as Muhammad Ziaullah Chishti, Huafeng "Charles" Wen, Peter Riepenhausen, Arthur T. Taylor, Saiyed Atiq Raza and Joseph Breeland.  Defendants Christopher Kawaja and Patricia Seifert, who were officers of OrthoClear and are separately represented, join in this motion.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
C 07-01429 JSW

NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT; POINTS AND AUTHORITIES

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   PROCEDURAL BACKGROUND

### A.   Order Granting Prior Motions To Dismiss

The Court found that the Second Amended Complaint ("SAC") had failed to plead sufficient facts to demonstrate the falsity of any of the alleged misrepresentations. *Order at 6-8.*

> **[I]n the Purchase Agreements, OrthoClear disclosed the risks of the pending litigation and Plaintiffs, who were experienced investors, could therefore appreciate the level of risk involved.** (See Purchase Agreements ¶¶ 3.5, 4.1 and 4.17; Schedule of Exceptions, § 2.10.) The Purchase Agreements explicitly described the shareholders as "experienced in evaluating and investing in securities in the development stage." (Purchase Agreements, ¶ 3.5). **The Agreements stated in a portion entitled "Risk Factors" that the "purchase of the Shares should be considered highly speculative and as entailing a high degree of risk**. The purchase of the Shares is suitable only for persons of substantial financial means who can afford the complete loss of their investment, and who have no need for liquidity in this investment.   EACH INVESTOR   COULD   LOSE   HIS   OR   HER   ENTIRE INVESTMENT.   Each Investor should, in addition to reviewing this entire Agreement, including the Schedule of Exceptions and all other Exhibits, carefully consider the following risks. … Litigation … **the Company has been sued by Align**.  If a final determination is rendered against the Company in the Align Litigation (i.e., if the Company should lose the Align litigation in any way), or if the Company suffers interim adverse ruling of the Court before a final determination is made, such an outcome **could have a substantial adverse effect on the Company and on any investments in the Shares.**" (Id., ¶¶ 4.1, 4.17.)

*Order at 7* (emphasis added).   Citing cases that had approved similar disclosures, the Court concluded that "OrthoClear's disclosures were sufficient warning to investors about the pending litigation." *Id. at 7-8.*

The Court also rejected plaintiffs' allegations about OrthoClear's representations of "no known infringement" of anyone else's intellectual property and about OrthoClear's anonymous petition for reexamination of certain Align patents. *Order at 8.*

> The Court finds that these representations and conduct by OrthoClear does not amount to false or misleading statements at the time they were made.  **The fact that Align alleged infringement and the fact that OrthoClear settled the suit does not indicate that there was indeed a known conflict or infringement of any intellectual property.  The Court does not find that litigation strategy, such as filing for reexamination of an adversary's**

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1

2

**patent in an infringement action, constitutes known falsity**. Without more, the Court finds that these allegations are insufficient to maintain a claim of falsity under Section 10b-5.

3

*Id.* (emphasis added).

4

In addition, the Court rejected plaintiffs' allegations of scienter.  *Id. at 8-10.*

5

6

7

8

9

The Court finds, however, that the allegations of circumstantial evidence that OrthoClear officers were in a position to take intellectual property from Align, or that they were successful in bringing a familiar product to market or the mere fact of the decision to settle with Align, fails to establish that the statements made about their own intellectual property were false when made. **Plaintiffs must allege inconsistent contemporaneous statements or actions by the OrthoClear Defendants in order to demonstrate scienter**.  [Citation omitted.]

10

11

12

13

14

15

Plaintiffs allege no negative internal report within the company regarding the ongoing Align litigation or any other contemporaneous statement indicating that the representations made to investors were known to be false at the time they were made.  **The mere fact that many of OrthoClear's members were previously employed by Align and the path to market was shorter than it had been for Align does not create an inference that Defendants stole intellectual property secrets**.  [Citation omitted.]  In addition, there is no indication that investors were not aware that OrthoClear was founded by past Align officers or that the path to market was shorter than Align's.

16

17

18

19

20

21

22

Lastly, the mere fact of a settlement in a pending litigation does not create an inference that Defendants misrepresented the nature of the lawsuit.  **Plaintiffs do not cite any authority for the position that the difference between early statements about litigation and a subsequent settlement creates a strong inference of scienter**. The Court is not persuaded that such an inference is merited. Settlements can be made for many reasons without any indication of the relative merit of the allegations.  Furthermore, **Align settled with OrthoClear by paying them $20 million for their intellectual property assets (SAC, ¶ 91.)  The settlement figure alone indicates that OrthoClear's intellectual property was valuable and demonstrates relatively little about the meritoriousness of Align's litigation arguments**.

23

*Id. at 9-10* (emphasis added).

24

The Court also dismissed plaintiffs' common law claims for intentional and negligent

25

misrepresentation because of failure to plead reliance and found that plaintiffs' claims relating to

26

OrthoClear's payment to 3i belonged to the corporation.  *Id. at 11-12*.  Finally, the Court

27

dismissed the federal registration claim because it did not "allege a factual basis for the alleged

28

statutory violation."  *Id. at 12*.

| Case No. | NOTICE OF MOTION AND MOTION TO DISMISS THIRD |
|---|---|
| C 07-01429 JSW | AMENDED COMPLAINT; POINTS AND AUTHORITIES |

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

### B.    Third Amended Complaint

The Third Amended Complaint asserts almost exactly the same claims as its predecessor. Plaintiffs have added one new claim – new Count V for violation of California Corporations Code Sections 25401 and 25501.  And the claims relating to OrthoClear's payment to 3i have been restated as derivative claims (Counts VI through IX).

The new complaint also makes almost exactly the same factual allegations as the previous one.  Plaintiffs have added a few lengthy and repetitive sections to try to respond to the Order, but the new facts alleged, as shown below, are not sufficient to state any claims.

## II.    ARGUMENT

### A.    Plaintiffs Have Failed to State a 10b-5 Claim

#### 1.    Plaintiffs' Amended Claims.

Despite this Court's rulings, plaintiffs still assert that defendants' statements about the Align litigation were misleading.  They even claim that, despite the explicit risk disclosures in the Purchase Agreements, "Plaintiffs each reasonably believed that the litigation was a non-issue in terms of the future of the company."  *Third Amended Complaint ("TAC") ¶141.*

The challenged statements contain expressions of confidence in OrthoClear's intellectual property and litigation prospects, but none of them advised investors to ignore the risk disclosures in the Purchase Agreements.[2]  In fact, none of the statements quoted by plaintiffs even mentioned any offer or sale of securities.  These statements were instead directed primarily to OrthoClear's actual and potential customers – both orthodontists and patients.   And almost all of these statements were made before or very shortly after Align first asserted patent infringement claims in January 2006. *TAC ¶76(c) and (d).*  Even more importantly, the last of these statements was made in March 2006, while the Align settlement was negotiated at the end of September 2006,

---

[2]    The alleged misrepresentations are contained in five press releases (dated February 7 and 15, June 14 and November 10, 2005, and January 17, 2006); two letters to orthodontists who were customers of OrthoClear (dated September 20, 2005 and January 24, 2006); two conference calls (on September 22, 2005 and March 10, 2006); and an e-mail dated January 19, 2006, with an analyst report dated January 18, 2006. *TAC ¶¶103-51.*  Plaintiff Silcher also allegedly relied on oral representations by Defendant Seifert at an OrthoClear meeting in May 2005. *TAC ¶129.*  And Plaintiff Eshelman allegedly relied on oral representations by his OrthoClear sales representative at their "first meeting." *TAC ¶102.*

Case No.
C 07-01429 JSW

NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT; POINTS AND AUTHORITIES

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1   after six more months of expensive, multiple-front litigation.  *TAC ¶¶114-17, 147-51*.

2       Finally, each of the Purchase Agreements provided that "no party shall be liable or bound

3   … by any warranties, representations or covenants except as specifically set forth herein."  *See,*

4   *e.g., Class B Purchase Agreement, Section 7.1.*[3]  Each Purchase Agreement "supersede[d] any

5   and all prior understandings and agreements."  *Id.*  Accordingly, plaintiffs cannot claim that they

6   were misled by any representations outside these Purchase Agreements.

7                   **2.      Petitions for Reexamination of Align's Patents.**

8       Plaintiffs have added a long new section about OrthoClear's alleged misrepresentations

9   "regarding the status of its patents" and the re-examination of Align's patents.  *See TAC ¶¶77-*

10  *117*.  But this section is nothing more than an elaboration of their previously rejected allegations.

11  *Compare SAC ¶¶68-86 and 114(c)*.  This Court has already found that OrthoClear's "litigation

12  strategy, such as filing for reexamination of an adversary's patent in an infringement action,"

13  does not demonstrate "known falsity" of any of OrthoClear's representations.  *Order at 8*.  None

14  of the new details, which constitute almost half of the added length of the new complaint, provide

15  any reason to change this conclusion.

16      Plaintiffs allege that, before OrthoClear was sued for patent infringement, it had

17  anonymously petitioned the PTO for reexamination of six Align patents.  *TAC ¶¶79-80*.  They

18  complain that "Defendants repeatedly failed to disclose that they had placed Align's broadest

19  patents into re-examination."  *TAC ¶79*.  And they assert that the "breadth of the Align patents

20  selected for challenge by OrthoClear – out of over 70 patents registered to Align at that time –

21  show unquestionably the potential conflict with OrthoClear's process."  *TAC ¶81*.

22      In fact, there is nothing sinister about an anonymous petition for patent reexamination.

23  Federal law permits attorneys to file such petitions without identifying their clients.  *See Davco*

24  *Mfg. Corp. v. Peninsular Diesel, Inc.,* 128 F.R.D. 91, 92 (N.D. Ohio 1989) (noting "a variety of

25  public policy reasons for maintaining confidentiality," including "encourag[ing] people to use the

26

27  _____
    [3]      The OrthoClear Defendants request the Court to take judicial notice of this Purchase
28  Agreement, as it already has.  *See Order at 5-6; Declaration of Joseph V. Mauch in Support of
    Motion to Dismiss ("Mauch Declaration"), Ex. A.*

Case No.
C 07-01429 JSW
NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT; POINTS AND AUTHORITIES

reexamination mechanism").   Accordingly, it would be wrong to draw an inference of infringement – much less a strong inference of scienter – from an action that the law permits and even encourages.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 127 S. Ct. 2499, 2504-05 (2007) (inference of scienter "must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent").

In addition, plaintiffs admit that OrthoClear expressly disclosed that some of Align's patents were being reexamined.  *TAC ¶105.*   During an "open conference call" in September 2005, OrthoClear's counsel, George Riley of O'Melveny & Myers, stated that "we are not aware of any sort of patent litigation that has been filed against us."  *Id.* (emphasis added).  He added:

> But if such a suit is filed, OrthoClear is prepared.  And OrthoClear has worked very diligently to assure that its innovative processes will not infringe any valid patent claims.  **What we do know is that a number of Align's patents are now being reexamined by the United States Patent and Trademark office**.  This is a process that can take many months and sometimes years to conclude.

*Id.* (emphasis added).[4]

Plaintiffs contend that Mr. Riley should have added that OrthoClear itself had initiated the referenced reexaminations, but such an announcement would have defeated the whole point of petitioning anonymously.  Moreover, disclosure that OrthoClear was the petitioner would not have concerned a reasonable investor.  As shown by the above quote, OrthoClear told the public that it was planning an aggressive defense against attacks by Align, and seeking reexamination of Align's broadest patents is completely consistent with such plans.

Plaintiffs also contend that OrthoClear intentionally "gave the false impression that the review of Align's patents was initiated by the PTO."  *TAC ¶107.*   But they do not allege that anyone actually said anything to promote such speculation.  In fact, reexamination is initiated by the PTO only "on a very limited basis, such as where a general public policy question is at issue and there is no interest by 'any other person,'" which was not the case here.  *See Manual of*

---

[4]    Plaintiffs' counsel has not responded to our request for a copy of their "unofficial" transcript of this conference call, from which the above quote was allegedly taken.  *See TAC ¶105.*

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

| Case No. | NOTICE OF MOTION AND MOTION TO DISMISS THIRD |
|---|---|
| C 07-01429 JSW | AMENDED COMPLAINT; POINTS AND AUTHORITIES |

*Patent Examining Procedure ("MPEP") §2212.*  Moreover, the petitions themselves, which are public records that are readily available on the internet, show that the petitioner was Morrison & Foerster as a "third party requestor." *See 37 C.F.R. §1.11; MPEP §2232; Mauch Decl., Ex. E.*

In addition, plaintiffs contend that the challenged Align patents were so broad that all of the OrthoClear Defendants must have known that any clear orthodontic aligner would violate these patents. *TAC ¶¶81, 83 and 85.*  The breadth of Align's patents, however, was also public information that was accessible via the internet. *See 37 C.F.R. §1.11; MPEP §2232; Mauch Decl., para. 6.*  OrthoClear even told plaintiffs and its other customers that Align's patents were "publicly filed." *TAC ¶103.*  Moreover, if it were obvious that Align's broadest patents prevented anyone else from selling clear orthodontic aligners, as plaintiffs now claim, then OrthoClear would have never gone into business in the first place.  And, if plaintiffs' theory were true, Align would not have waited until January 2006 – almost a year after its first suit against OrthoClear in February 2005 – before suing for patent infringement. *TAC ¶76.*

Finally, plaintiffs claim that "the strategy of placing these patents into review ran the risk that the patents could become stronger after the reexamination process was complete." *TAC ¶100.*  In fact, however, any claims added during reexamination cannot enlarge the scope of the patent. *See 35 U.S.C. §305* ("[n]o proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination").

### 3.    Conclusion.

In summary, plaintiffs' new allegations – like their old allegations – do not demonstrate that defendants' statements about OrthoClear's intellectual property or the Align litigation were false when made.  Nor do they create a strong inference of scienter.  Plaintiffs have still not alleged any inconsistent statements or actions by any of the OrthoClear Defendants.

Plaintiffs' theory that the individual defendants spent years building a company that they supposedly knew was dependent on stolen patents makes no sense.  Plaintiffs never explain how these individual defendants, who are not accused of diverting any money to their own pockets, were supposedly going to profit from a criminal conspiracy that was doomed from the start.  Moreover, if plaintiffs' charges of fraud were true, OrthoClear would not have offered any

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

investors their money back – as it did with its rescission offer to certain preferred shareholders in late May 2006. *TAC ¶18*. Accordingly, the 10b-5 claims should be dismissed with prejudice.[5]

**B.** **Plaintiffs Have Failed to State a Claim for Intentional Misrepresentation**

The new complaint repeats, almost verbatim, the previously dismissed claim for intentional misrepresentations about the Align settlement. As the Court has already explained, this post-investment fraud claim fails to allege facts showing actual reliance.

> Plaintiffs allege that after they had already invested, OrthoClear and the D&O Defendants intentionally misrepresented material facts about the Align settlement and that "Plaintiffs reasonably relied on these misrepresentations by not taking further actions to obtain a return of their funds." (SAC, ¶ 142.) These after-purchase allegations do not constitute sufficient facts to state a claim for intentional misrepresentation because the Complaint fails to allege facts demonstrating reliance.

*Order at 11, citing Small v. Fritz Companies, Inc*., 30 Cal. 4th 167, 184 (2003) (stockholders' fraud claim against corporation "must allege actions, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the plaintiff actually relied on the misrepresentations.").

Ignoring the Court's ruling, plaintiffs have repeated exactly the same conclusory allegation that "Plaintiffs reasonably relied on these misrepresentations by not taking further actions to obtain a return of their funds" without describing what they actually could and would have done. *TAC ¶241*. This unchanged claim should therefore be dismissed with prejudice.

**C.** **Plaintiffs Have Failed to State a Claim for Negligent Misrepresentation**

Plaintiffs' negligent misrepresentation claim must be dismissed for the same reasons as

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

---

[5] Plaintiffs assert one new basis for inferring scienter: "OrthoClear's Settlement of 3i and Badawi Claims." *TAC ¶209*. They allege that 3i claimed in the recent Joint Case Management Conference Statement herein that it had been misled about the Align litigation when it invested in OrthoClear in August 2006. *TAC ¶195.* And they allege that 3i asserted "other potential claims" before settling for a return of $8.5 million of its $10 million investment. *TAC ¶¶10 and 196.* Plaintiffs insist that OrthoClear must have made this payment because 3i had some unspecified inside information that supported these "potential claims." *TAC ¶196.*

Plaintiffs have not, however, alleged any facts that show that 3i's "potential claims" were any stronger than plaintiffs' own claims, which have already been dismissed once. OrthoClear paid $1.5 million **less** than 3i was entitled to receive under the Memorandum of Understanding, so these potential claims apparently had little value to either 3i or OrthoClear. Accordingly, plaintiffs' new allegations do not support a strong inference of scienter.

NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT; POINTS AND AUTHORITIES

plaintiffs' other "fraud" claims.  To the extent that this claim is based on statements about the Align litigation **before** plaintiffs invested, it must be dismissed because the Court has found that the Purchase Agreements "were sufficient warning to investors about the pending litigation." *Order at 7-8*.  Plaintiffs expressly agreed that they understood those warnings, which superseded any other representations.  *See, e.g., Class B Purchase Agreement, sections 4 and 7.1*.

Moreover, this negligent misrepresentation claim does not meet the requirements of FRCP 9(b).  *See Andrews Farms v. Calcot, Ltd.,* 2007 U.S. Dist. LEXIS 44379 at *29 (E.D. Cal. 2007) ("Negligent misrepresentation claims are subject to the heightened pleading requirements of Rule 9(b)").  As explained in *In re Glenfed, Inc. Sec. Litig*., 42 F.3d 1541 (9th Cir. 1994), a pre-PSLRA case that applied Rule 9(b) to securities fraud claims:

> [A] plaintiff must set forth, as part of the circumstances constituting fraud, an explanation as to why the disputed statement was untrue or misleading *when made*.  This can be done most directly by pointing to inconsistent contemporaneous statements or information (such as internal reports) which were made by or available to the defendants.

*Id. at 1549* (emphasis in original).  "The fact that an allegedly fraudulent statement and a later statement are *different* does not necessarily amount to an explanation as to why the earlier statement was false."  *Id.* (emphasis in original).  Here, plaintiffs have not alleged any inconsistent contemporaneous statements or actions or any other facts showing that the alleged misrepresentations were false when made.  *See Order at 7-9*.

Finally, to the extent that this claim is based on statements made **after** plaintiffs' investments, it has the same problem as the intentional misrepresentation claim.  Plaintiffs have not alleged any "actions, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the plaintiff actually relied on the misrepresentations."  *Small v. Fritz Companies*, 30 Cal. 4th at 167-168, *cited by Order at 11*.

### D.   Plaintiffs Have Failed to State a Claim for Violation of California Corporations Code Sections 25401 and 25501

Plaintiffs have asserted a new claim, violation of California's securities fraud statutes, by alleging that "Defendants offered and sold securities by means of written and oral

- 8 -

S HARTSIS  F RIESE  LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA  94111

communications" that were false or misleading.  *TAC ¶254.*  This new claim fails, however, because, as the Court has already ruled, the Purchase Agreements disclosed the risks of the Align litigation and these agreements superseded any other representations.  *See Section II.C. above.*

### E.    Plaintiffs Have Not Met the Requirements for Derivative Claims

The Court dismissed all of plaintiffs' previous claims relating to OrthoClear's payment to 3i in March 2007, finding that "the crux of the claims are for injury to the company" so the claims belonged to the company itself.  *See Order at 12.*  Plaintiffs have responded by asserting derivative claims for the same alleged wrongdoing.  *See Counts VI-VIII.*  But plaintiffs are barred as a matter of law from bringing such derivative claims on behalf of OrthoClear, so these claims should be dismissed with prejudice.

First, Federal Rule of Civil Procedure 23.1 requires that any derivative complaint be verified.  The new complaint is not verified, so the derivative claims must be dismissed.  *In re MIPS Techs.,* 2008 U.S. Dist. LEXIS 4576 at *14-16 (N.D. Cal. 2008) (Whyte, J).

In addition, the "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of shareholders … who are similarly situated in enforcing the right of the corporation."  *FRCP 23.1.*  Among other things, an adequate derivative plaintiff must not have antagonistic economic interests.  *Larson v. Dumke,* 900 F.2d 1363, 1367 (9th Cir. 1990).  *See also Zarowitz v. BankAmerica Corp.,* 866 F.2d 1164, 1166 (9th Cir. 1989) (plaintiff pursuing individual claims would not be proper derivative plaintiff under FRCP 23.1); *Argiropoulos v Kopp,* 2007 U.S. Dist. LEXIS 22351 at *22-25 (D. Md. 2007) (derivative claims dismissed because individual and derivative claims were "in competition for the same pool of money," and plaintiff's request for rescission would eliminate standing as a shareholder to pursue derivative claims).

Here, plaintiffs would have antagonistic economic interests if they are allowed to bring derivative claims on behalf of the very same corporation that they are suing for damages and restitution.  *See TAC at 80.*  Their individual and class claims against the OrthoClear Defendants are competing for the "same pool of money" as the new derivative claims against these defendants.  And their individual claims for restitution, if successful, would require tender of their

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 9 -

1   OrthoClear shares and thus extinguish their standing as derivative plaintiffs.   Accordingly,

2   plaintiffs are not adequate representatives for the asserted derivative claims.

3       Finally, plaintiffs are not entitled to bring any derivative claims under the laws of the

4   British Virgin Islands, where OrthoClear was incorporated.  *TAC ¶20*.  In *Seghers v. Thompson,*

5   2006 U.S. Dist. LEXIS 71103 (S.D.N.Y. 2006), the court held that, under the "internal affairs"

6   doctrine, the right of a shareholder to bring derivative claims on behalf of a BVI entity must be

7   determined by BVI law.  *Id.* at *11.

8       The parties agree that, under BVI law, derivative actions are
8       governed by the rule in *Foss v. Harbottle,* 2 Hare 461 (Eng. 1843),
9       i.e. that "a shareholder may ordinarily bring a derivative claim on
9       behalf of a corporation **only if a simple majority of the**
10      **shareholders could not ratify the conduct on which the suit is**
        **based**."

11

12  *Id. at *12* (emphasis added).  The court found that plaintiffs' derivative claims were barred by

13  *Foss* and that the "fraud on the minority exception" did not apply because plaintiffs had not

14  satisfied "two preconditions."   *Id.* at *13.   First, plaintiffs had not alleged that the accused

15  wrongdoers controlled "a majority of the stock with voting rights."  *Id.* at *13-14.  And second,

16  plaintiffs had not shown "self-dealing by those in control."  *Id.* at *14-15.

17      Here, plaintiffs' derivative claims have the same defects as those dismissed in *Seghers*.

18  They have not alleged any reason that OrthoClear's shareholders could not ratify the 3i payment.

19  Nor have they alleged that OrthoClear's directors, who approved this payment, controlled a

20  majority of shareholder voting power or received any personal benefit from the payment.

21      In addition, a BVI statute that became effective after *Seghers* allows derivative actions

22  "**only if … it is in the interests of the company that the conduct of the proceedings should**

23  **not be left to the directors** or to the determination of the shareholders or members as a whole."

24  *BVI Business Companies Act §184C(3)(b).*[6]   Plaintiffs have not alleged any valid reason, such as

25  self-dealing, why it would be in the best interests of the corporation as a whole not to leave

26

27  _____

27  [6]    The OrthoClear Defendants request the Court to take judicial notice of this provision,
28  which is attached to the Mauch Declaration as Exhibit F.  This provision became applicable to all
28  BVI companies as of January 1, 2007.  *See Mauch Dec., Exs. G and H.*

Shartsis Friese LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
C 07-01429 JSW

NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT; POINTS AND AUTHORITIES

decisions about the challenged 3i payment to OrthoClear's directors.   As a result, the new derivative claims are barred by BVI law.[7]

Even if plaintiffs could satisfy Section 184C(3)(b), which they cannot, BVI law also requires this Court, in "determining whether to grant leave" to file a derivative claim, to "take the following matters into account: (a) whether the member [*i.e.*, shareholder] is acting in good faith; (b) whether the derivative action is in the interests of the company taking account of the views of the company's directors on commercial matters; (c) whether the proceedings are likely to succeed; [and] (d) the costs of the proceedings in relation to the relief likely to be obtained." *BVI Business Companies Act §184C(2)* (emphasis added).   All of these factors militate against granting plaintiffs leave to file the asserted derivative claims.

In fact, OrthoClear's payment to 3i was required by its Memorandum of Association as a distribution, after a "deemed liquidation event," to its most senior preferred shareholder.  *See 3i's Motion to Dismiss, filed on August 7, 2007, at 8-10*.  Accordingly, plaintiffs' derivative claims are not "likely to succeed" and will not justify the cost.  And plaintiffs have not alleged how, if these claims did succeed, any court-supervised redistribution of OrthoClear's assets would yield any different result.  In the end, 3i would still be entitled to its preference for return of its $10 million investment, so the corporation itself would be better off if the 3i settlement, which involved a payment of only $8.5 million, is left undisturbed.

**F.   Plaintiffs Have No Claim for Failure to Register or Qualify Securities**

This Court previously dismissed plaintiffs' Section 12(a)(1) claim because they had not alleged a "factual basis for the alleged statutory violation."  *Order at 12*.  The new complaint adds allegations about supposed violations of the federal registration laws and the California qualification laws.  *See TAC ¶¶156-169*.  But plaintiffs still do not allege that any sales to them personally violated these laws, so Counts II and X should be dismissed.

---

[7]     Similarly, under the law of California, Plaintiffs would also be barred from bringing the asserted derivative claims because California's demand-futility requirement, like the BVI law described above, requires a court to defer to the business judgment of a corporation's directors unless "they benefited directly from the wrongdoing or were otherwise disabled from exercising independent business judgment."  *Shields v. Singleton*, 15 Cal. App. 4th 1611, 1621 (1993).

NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT; POINTS AND AUTHORITIES

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

1    Plaintiffs assert that "OrthoClear's practices with respect to the sale of securities," such as

2    an alleged lack of adequate sales training and investor screening, "inevitably resulted in securities

3    being sold to unaccredited investors." *TAC ¶163*.  They further allege that selling securities to

4    more than 35 unaccredited investors would violate the private placement exemption under federal

5    and California law. *TAC ¶168*.

6    Plaintiffs do not allege, however, that OrthoClear actually sold preferred shares – much

7    less any particular Class of preferred shares – to more than 35 unaccredited investors.[8]  And they

8    certainly do not allege that the plaintiffs themselves were unaccredited investors or that their own

9    purchases violated the registration or qualification requirements.  Instead, they seek restitution of

10   their own investments based solely on allegedly improper sales to others.[9]  *See TAC ¶168*.

11   Put simply, plaintiffs' theory is a radical, unprecedented and unfair expansion of liability

12   under Section 12(a)(1) and Section 25110.  They cannot cite a single case that has held that a

13   plaintiff whose own investment satisfied the private placement exemption could recover because

14   an investment by some other investor did not.

15   Moreover, plaintiffs' theory is inconsistent with the text of Section 12(a)(1), which

16   provides that a person who "offers or sells a security in violation of Section 5" is liable "to **the**

17   **person purchasing such security** from him."  *15 U.S.C. §77l* (emphasis added).  Similarly,

---

[8]    Plaintiffs allege that Dr. Kenneth Banaziak purchased Class B preferred shares even though the OrthoClear sales representative "never asked if Dr. Banaziak qualified as an accredited investor (he did not)." *TAC ¶¶164-165*.  But Dr. Banaziak expressly warranted that he was an "accredited investor." *See Class B Purchase Agreement, sections 3.6(b) and Banaziak signature page*. And he checked the box in his Prospective Purchase Questionnaire that stated, "My income, combined with my spouse's income, has been in excess of $300,000 in each of the three most recent years, and I expect that our joint income will be in excess of $300,000 in the current year." *Banaziak Prospective Purchase Questionnaire at 3*.  The OrthoClear Defendants request the Court to take judicial notice of the documents referenced above, which are attached to the Mauch Declaration as Exhibits A, I and J.

[9]    In a surprising admission of wrongdoing, the new complaint alleges that Plaintiff Eshelman conspired with his employee, Ann Love, to evade OrthoClear's safeguards for its private placement exemption by arranging for Ms. Love to pay for shares that would be issued in Mr. Eshelman's name. *TAC ¶166*.  Such a subterfuge was a blatant violation of Mr. Eshelman's Purchase Agreement, including his representations and warranties that he was buying the securities entirely for his own account and that he was an accredited investor. *See Class B Purchase Agreement, sections 3.2 and 3.6(b)*.  Plaintiffs do not, however, allege that any OrthoClear Defendant knew or should have known of this subterfuge.  Nor do they allege any other facts that would give Mr. Eshelman the right to obtain a windfall by admittedly trying to circumvent the private placement conditions.

---

- 12 -

1  anyone who violates Section 25110 of the Corporations Code "shall be liable to **any person**

2  **acquiring from him the security sold in violation of such section**."  *Cal. Corp. Code §25503*

3  (emphasis added).   Thus, these statutes permit a claim by only the person who purchased a

4  security that was sold in violation of the registration or qualification requirements.

5      Plaintiffs' novel theory would also lead to unfair results.   An investor whose own

6  purchase was completely legal could later obtain a windfall if there was something wrong with

7  purchases by other investors – even if all of the illegal purchases occurred years after the legal

8  purchase.  Accordingly, this claim should be dismissed with prejudice.

9      **G.      Section 12(a)(1) Claims for Class B Shares are Time-barred**

10      Plaintiff Eshelman purchased $100,000 of Class B preferred shares on October 4, 2005.

11  *TAC ¶43.*  Any Section 12(a)(1) claim must be brought "within one year after the violation upon

12  which it is based," *i.e.*, the sale that allegedly violated federal law.  *See 15 U.S.C. §77m.*

13  Plaintiffs filed their initial complaint in March 2007, so Mr. Eshelman's Section 12(a)(1) claim

14  for his Class B shares is barred by the applicable statute of limitations.

15      Plaintiffs try to avoid this bar by alleging that "the closeness in time of the [Class A, B

16  and C] offerings as well as the uses for which the funds were intended – the initial startup and

17  expansion of the company – make this a single continuous offering under California and federal

18  law." *TAC ¶157.*  But their own allegations show that the offerings did not overlap in time and

19  that the price per share was significantly different for each Class (*e.g.*, $0.175 for Class A shares

20  and $0.63 for the Class C shares, which were sold approximately one year later).  *TAC ¶39.*

21      The relevant federal regulations provide that "the following factors should be considered

22  in determining whether offers and sales should be integrated for purposes of the exemptions

23  under Regulation D":

24      (a)     whether the sales are part of a single plan of financing;

25      (b)     whether the sales involved issuance of the same class of
            securities;

26

27      (c)     whether the sales have been made at or about the same time;

28      (d)     whether the same type of consideration is being received;
            and

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

- 13 -

1       (e)    whether the sales are made for the same general purpose.

2   *17 CFR §230.502*.  Here, the Class A, B and C offerings involved different times, prices and

3   classes of security, so they should not be treated as a single "integrated" offering.  Accordingly,

4   plaintiff Eshelman's Section 12(a)(1) claim for his Class B shares is time-barred.

5       **H.**    **Plaintiffs Have No Claims Against Individual OrthoClear Defendants**

6       In its prior Order, this Court stated:

7           As in all claims herein dismissed, upon repleading, Plaintiffs must
8           set out each particular allegation they maintain against each
        separate D&O Defendant.

9   *Order at 10, n. 2.*  Despite this instruction, plaintiffs continue to rely on "group pleading" and

10  have not alleged any additional details about the stock ownership or operational responsibilities of

11  any of the individual defendants.  They have simply repeated exactly the same allegations about

12  the identities of the D&O Defendants, *compare TAC ¶¶21-30 with SAC ¶¶18-27*; the "facts"

13  relating to "Control Person Allegations/Group Pleading," *compare TAC ¶¶33-38 with SAC ¶¶30-*

14  *35*; and the "Background of Former Align Employees and Key Employees of OrthoClear,"

15  *compare TAC ¶¶58-63 with SAC ¶¶50-55.*

16      Plaintiffs have added the conclusory allegation that the "D&O Defendants are responsible

17  and secondarily liable for OrthoClear's violations of Section 12(a)(1) pursuant to 15 U.S.C. §77o

18  which imposes joint and several liability for anyone who 'through stock ownership, agency or

19  otherwise' controls an entity liable for a violation of Section 12."  *TAC ¶236.*[10]  But plaintiffs

20  have not alleged any particular facts about any of the individual defendants that show that any of

21  them actually had the power to control OrthoClear.

22      As the Ninth Circuit has explained,

23          "Control" is defined in the regulations as "the possession, direct or

---

24  [10]    Plaintiffs have also attempted to state a claim for secondary liability against all of the
25  individual OrthoClear Defendants for OrthoClear's alleged violations of Corporations Code
§25110 on the ground that Corporations Code §25504 imposes such secondary liability on "every
26  principal executive officer or director of a corporation" who violates §25110.  *TAC ¶279.*
Defendants Seifert, Kawaja and Breeland were not principal executive officers or directors of
27  OrthoClear, so they cannot have secondary liability under §25504.  Moreover, OrthoClear has no
primary liability for a violation of §25110, as explained in Section II.F above, so none of the
28  individual defendants can have any secondary liability.

SHARTSIS FRIESE LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
C 07-01429 JSW

NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT; POINTS AND AUTHORITIES

indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the **ownership of voting securities**, by contract or otherwise." *17 C.F.R. § 230.405*.

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp*., 320 F.3d 920, 945 (9th Cir. 2003) (emphasis in original). "The mere fact that an individual is a director of a firm is not sufficient to show he is a control person of the firm." *In re Splash Tech. Holdings Inc. Sec. Litig.,* 2000 U.S. Dist. LEXIS 15370 at *51 (N.D. Cal. 2000) (Breyer, J.). *Accord, In re NextCard, Inc. Sec. Litig.,* 2006 U.S. Dist. LEXIS 16156 at *20 (N.D. Cal. 2006) (Fogel, J.) (dismissing control claim against outside director).

Similarly, mere status as an officer is not sufficient to show control. *See In re Tibco Software Secs. Litig*., 2006 U.S. Dist. LEXIS 36666 at *3-4 and 85 (N.D. Cal. 2006) (Armstrong, J.) (dismissing control claim against a "Corporate Controller and Chief Accounting Officer" and an "Executive Vice President, Chief Operating Officer" because plaintiffs had "failed to allege any facts showing that either defendant had the requisite power to control TIBCO").

Here, plaintiffs have not alleged that any of the individual defendants owned any OrthoClear stock – much less a controlling interest. Nor have they alleged any facts that show that any of the individual defendants directed the day-to-day operations of the company. Accordingly, plaintiffs have not stated any claim for "control person" liability.

### III.   <u>CONCLUSION</u>

Despite ample opportunity, plaintiffs have not cured the defects that resulted in dismissal of their prior complaint. Accordingly, their new complaint should be dismissed with prejudice.

DATED:      March 24, 2008          SHARTSIS FRIESE LLP


By:_____*/s/ Charles R. Rice*_____
             CHARLES R. RICE

Attorneys for OrthoClear Defendants

Shartsis Friese LLP
ONE MARITIME PLAZA
EIGHTEENTH FLOOR
SAN FRANCISCO, CA 94111

Case No.
C 07-01429 JSW

NOTICE OF MOTION AND MOTION TO DISMISS THIRD
AMENDED COMPLAINT; POINTS AND AUTHORITIES