1  Randall W. Bodner (*Admitted Pro Hac Vice*)
   Peter L. Welsh (*Admitted Pro Hac Vice*)
2  Holly J. Caldwell (*Admitted Pro Hac Vice*)
   ROPES & GRAY LLP
3  One International Place
   Boston, Massachusetts 02110-2624
4  Telephone: (617) 951-7000
   Facsimile: (617) 951-7050
5
   Robert H. Bunzel, State Bar No. 99395
6  C. Griffith Towle, State Bar No. 146401
   BARTKO, ZANKEL, TARRANT & MILLER
7  A Professional Corporation
   900 Front Street, Suite 300
8  San Francisco, California 94111
   Telephone: (415) 956-1900
9  Facsimile: (415) 956-1152
10 Attorneys for Defendants
   3i TECHNOLOGY PARTNERS III, LP
11 and PAUL BADAWI
12              UNITED STATES DISTRICT COURT
13            NORTHERN DISTRICT OF CALIFORNIA
14                 SAN FRANCISCO DIVISION
15 MICHAEL B. ESHELMAN, D.D.S.; PETER F. )   No. C 07-01429 JSW
   SILCHER, D.D.S.; and LORI I. SILCHER,   )
16                                          )   **DEFENDANTS 3i TECHNOLOGY**
             Plaintiffs,                    )   **PARTNERS III, LP AND PAUL**
17                                          )   **BADAWI'S NOTICE OF MOTION**
        v.                                  )   **AND MOTION TO DISMISS**
18                                          )   **PLAINTIFFS' THIRD AMENDED**
   ORTHOCLEAR HOLDINGS, INC., a British     )   **CLASS ACTION COMPLAINT;**
19 Virgin Islands Company; ORTHOCLEAR,      )   **MEMORANDUM OF POINTS AND**
   INC., a Delaware Corporation; MUHAMMAD   )   **AUTHORITIES**
20 ZIAULLAH CHISHTI, an individual;         )
   HUAFENG "CHARLES" WEN, an individual;    )
21 PETER RIEPENHAUSEN, an individual;       )   Date:      May 16, 2008
   ARTHUR T. TAYLOR, an individual; SAIYED  )   Time:      9:00 a.m.
22 ATIQ RAZA, an individual; CHRISTOPHER    )   Courtroom: 2, 17th Floor
   KAWAJA, an individual; PATRICIA HUMELL   )   Judge:     Hon. Jeffrey S. White
23 SEIFERT, an individual; JOSEPH BREELAND, )
   an individual; MUDASSAR RATHORE, an      )
24 individual; PAUL BADAWI, an individual;  )   Complaint Filed: March 12, 2007
   3i Technology Partners III, LP; and DOES 1 )   Trial Date:
25 through 25, inclusive,                   )
                                            )
26           Defendants.                    )
                                            )
27
28

NOTICE OF MOTION AND MOTION TO DISMISS 3RD AMENDED COMPLAINT
Case No. C 07-02789 JSW

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

        PLEASE TAKE NOTICE that on May 16, 2008, at 9:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Jeffrey S. White, United States District Judge, in Courtroom 2 of the above entitled Court, defendants 3i Technology Partners III, LP and Paul Badawi will and hereby do move to dismiss plaintiffs' Third Amended Class Action Complaint.

        This motion will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the accompanying Declaration of Peter L. Welsh and the complete files and records herein, and on the argument and other evidence to be presented at the hearing of this matter.

DATED:  March 24, 2008

BARTKO, ZANKEL, TARRANT & MILLER
A Professional Corporation

ROPES & GRAY LLP


By:      /s/ Randall W. Bodner
           Randall W. Bodner
        Attorneys for Defendants
      3i TECHNOLOGY PARTNERS III, LP
         and PAUL BADAWI

NOTICE OF MOTION AND MOTION TO DISMISS 2ND AMENDED COMPLAINT
Case No. C 07 02789 JSW

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

SUMMARY OF ARGUMENT ........................................................................................... iv

MEMORANDUM OF POINTS AND AUTHORITIES .................................................. 1

I.      FACTUAL BACKGROUND ................................................................................ 1

II.     PROCEDURAL BACKGROUND ....................................................................... 3

      A.    The Court Dismisses the Second Amended Complaint. ......................... 3

      B.    The Third Amended Complaint ................................................................. 3

III.    PLAINTIFFS' DERIVATIVE CLAIMS BELONG TO THE
        COMPANY, NOT TO PLAINTIFFS ................................................................. 4

      A.    Plaintiffs' Fiduciary Duty and Constructive Trust Claims Are
              Derivative and, as Such, Belong to the Company. .............................. 4

      B.    Plaintiffs Have Not Alleged Facts Sufficient to Wrest Control
              of the Claims Against Badawi and 3i Away from the
              Company. .................................................................................................... 5

      C.    Plaintiffs' Misrepresentation Claims Against Badawi and 3i
              Are Also Derivative and Belong to the Company. .............................. 6

IV.     THE CLAIMS AGAINST 3I AND BADAWI SHOULD BE
        DISMISSED BECAUSE 3I WAS ENTITLED TO RECOVER ITS
        FULL LIQUIDATION PREFERENCE ............................................................. 7

      A.    As a Matter of Law, 3i was Entitled to its Full Liquidation
              Preference Under OrthoClear's Corporate Charter. ........................... 7

      B.    Section 9 of the Memorandum Authorized the Company to
              Repurchase 3i's Class D Shares. ............................................................ 9

V.      PLAINTIFFS' THIRD AMENDED COMPLAINT AGAIN FAILS
        TO STATE A CLAIM AGAINST BADAWI ................................................... 10

      A.    Plaintiffs' Novel and Overwrought Breach of Fiduciary Duty
              Theory Fails to State a Claim Against Badawi. .................................. 10

      B.    Plaintiffs' Misrepresentation Claims Are Unchanged and
              Should Be Dismissed Once Again. ....................................................... 12

      C.    Plaintiffs Have Failed to Supplement Their Allegations
              Concerning Reliance As Required by the Court's January 18
              Order. ......................................................................................................... 14

VI.     CONCLUSION .................................................................................................... 15

BARTKO ZANKEL
Bartko Zankel Tarrant & Miller a Professional Corporation of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-i-

NOTICE OF MOTION AND MOTION TO DISMISS 3RD AMENDED COMPLAINT
Case No. C 07 02789 JSW

# TABLE OF AUTHORITIES

## CASES

*Andrews Farms v. Calcot, Ltd.*
    No. CV-R-07-0464-LJO-DLB 2007 WL 1701915 (E.D. Cal. June 8, 2007) .................. 13

*Aronson v. Lewis*
    473 A.2d 805 (Del. 1984) *overruled in part on other grounds by*
    *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ........................................... 4

*Belova v. Sharp*
    No. CV 07-299-MO 2008 WL 700961 (D. Or. March 13, 2008) ..................................... 11

*Cadlo v. Owens-Illinois, Inc.*
    125 Cal.App.4th 513 (2004) ................................................................ 14

*Foss* v. *Harbottle*
    (1843) 2 Hare 461 ....................................................................... 5

*Fox v. Pollack*
    181 Cal.App.3d 954 (1st Dist. 1986) .................................................... 10

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*
    100 F. Supp. 2d 1086 (C.D. Cal. 1999) ................................................. 14

*Good v. Getty Oil Co.*
    518 A.2d 973 (Del. Ch. 1986) ............................................................ 5

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*
    355 F. Supp. 2d 1069 (N.D. Cal. 2005) ................................................... 1

*In re Ditech Communications Corp. Securities Litigation*
    2007 WL 2990532 (N.D.Cal. 2007) ....................................................... 15

*In re Prudential Ins. Co. Derivative Litig.*
    659 A.2d 961 (N.J.Ch.Div.1995) ......................................................... 6

*In re Syntex Corp. Sec. Litig.*
    855 F. Supp. 1086 (N.D. Cal. 1994)
    *aff'd Rosenbaum v. Syntex Corp.*, 95 F.3d 922 (9th Cir. 1996) ......................... 14

*International Ins. Co. v. Red & White Co.*
    1994 WL 706361 (N.D. Cal.) ............................................................. 7

*Kline Hawkes California SBIC, L.P. v. Superior Court*
    117 Cal.App.4th 183 (Cal.App.2d Dist. 2004) ........................................... 8

*Lawson v. Household Finance Corporation*
    152 A. 723 (Del.Ch. 1930) .............................................................. 7

*Lewis v. Sporck*
    612 F. Supp. 1316 (N.D. Cal. 1985) .................................................. 4, 5

BARTKO ZANKEL
Bartko Zankel Tarrant Miller Lowell & Newman, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-ii-

*Mieuli v. Debartolo*
    2001 U.S. Dist. LEXIS 22518 (N.D. Cal. Jan. 16, 2001).....................................7

*Oakland Raiders v. National Football League*
    93 Cal.App.4th 572 (Cal.App. 2002) ...................................................................4

*Slovensky* v. *Friedman*
    142 Cal.App.4th 1518 (3rd Dist. 2006)..............................................................10

*Small v. Fritz Co.*
    65 P.3d 1255 (Cal. 2003)......................................................................................15

*Stoner v. Walsh*
    772 F.Supp. 790 (S.D.N.Y. 1991) ........................................................................6

*Sundlun v. Exec. Jet Aviation, Inc.*
    273 A.2d 282 (Del. Ch. 1970) ..............................................................................7

*Swart v. KPMG LLP*
    476 F.3d 756 (9th Cir. 2007) ..............................................................................14

*Vess v. Ciba-Geigy Corp. USA*
    317 F.3d 1097 (9th Cir. 2003) ............................................................................11

**STATUTES**

BVI Companies Act
    Section 184C .........................................................................................................4

Federal Rules of Civil Procedure
    Rule 9(b)..........................................................................3, 11, 12, 13, 14, 15

**OTHER AUTHORITIES**

1 Marsh et al., Cal. Corporation Law, (2002-2 supp.).....................................8

BARTKO ZANKEL
Bartko Zankel Tarrant & Miller a Professional Corporation
900 Front Street, Suite 300
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

-iii-

NOTICE OF MOTION AND MOTION TO DISMISS 3RD AMENDED COMPLAINT
Case No. C 07 02789 JSW

# SUMMARY OF ARGUMENT

The Third Amended Complaint is Plaintiffs' latest attempt to avoid the plain terms of the Memorandum of Association (the "Memorandum") of OrthoClear Holdings, Inc. (n/k/a Ocumenta Capital Holdings, Inc.) (herein "OrthoClear"), the company in which both they and 3i Technology Partners III, L.P. ("3i") were shareholders. Under the terms of the Memorandum, 3i was entitled to a return of its full investment ahead of all other preferred shareholders in the event of a "Deemed Liquidation Event." Plaintiffs effectively concede that a Deemed Liquidation Event occurred on or about September 28, 2006. Yet, Plaintiffs have persistently refused to abide by the negotiated and shareholder-approved terms of 3i's investment, choosing instead to bring suit against 3i and its board representative, Paul Badawi, in an effort to overturn the plain terms of the Memorandum. In furtherance of this effort, Plaintiffs now seek to pursue derivative claims, on behalf of the Company, centered on nebulous allegations that the payment to 3i, made consistent with the terms of the Memorandum, was somehow the result of untoward maneuvering by 3i and Badawi.

Plaintiffs' Third Amended Complaint (the "TAC") fails for three reasons: First, Plaintiffs' derivative claims against 3i and Badawi belong to the Company, and Plaintiffs have alleged no adequate reason under BVI law or otherwise for taking control of the litigation away from the Company. Second, because the payment to 3i was mandated by the Memorandum as a matter of law, Plaintiffs cannot claim that they were injured as a result of the payment. Third, Plaintiffs have, once again, failed to allege their claims against Badawi with particularity. For these reasons, the Court should dismiss Counts III, IV, VI and IX of the Third Amended Complaint.

BARTKOZANKEL
Bartko Zankel Tarrant Miller & Nunn & Harisson, Inc. (a law firm of Counsel)
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

2184.000/362786.1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   FACTUAL BACKGROUND

In August of 2006, 3i invested $10 million in Defendant OrthoClear, a British Virgin Islands corporation that manufactured clear orthodontic devices. (TAC at ¶ 8.) As a condition of its investment, 3i received senior preferred Class D shares and the right to appoint a 3i representative to serve on the Board of Directors of OrthoClear. (TAC at ¶¶ 8, 32.) Plaintiffs are investors who purchased junior preferred Class A, B and C shares of OrthoClear in 2005 and in March of 2006. (TAC at ¶¶ 15-17.)

By virtue of its senior preferred Class D shares, 3i had a contractual right to receive a liquidation preference under certain circumstances. In particular, under the terms of the Company's charter – known as the Memorandum of Association – in the event of a "Deemed Liquidation Event," 3i had an absolute right to receive the return of 100% of its $10 million investment and to receive that amount *before any other investors received anything*. (Mem. § 12.) (Welsh Aff., Ex. A.)[1] A "Deemed Liquidation Event" is defined under the Memorandum to include, among other things, "a sale of all or substantially all of the assets of the Company." (*Id.*) In addition, under Section 9 of the Memorandum, the Company was permitted to redeem or repurchase any preference shares for any reason, so long as the repurchase was "agreed to in writing by the Company, the holders of the Class D Shares [*i.e.* 3i] and the holders of the Preference Shares whose shares are to be redeemed or repurchased [*i.e.* 3i]." (Mem. § 9.)

In September of 2006, *only six weeks after 3i invested $10 million to purchase its senior preferred shares*, OrthoClear suddenly announced that it was settling ongoing patent litigation with Align Technology ("Align"), its main competitor. (TAC at ¶¶ 9, 170.) As part of that settlement, OrthoClear was required to (1) transfer all of its worldwide intellectual property rights to Align, (2) transition all of its patients to Align, and (3) cease all operations. (TAC at

---

[1]  Because the Plaintiffs have made extensive reference to OrthoClear's Memorandum of Association, and to the September 28 and October 2, 2006 letters, but have not attached the documents to their pleading, this Court may consider those documents on a motion to dismiss pursuant to the incorporation-by-reference doctrine. *See In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069 (N.D. Cal. 2005).

MPA IN SUPPORT OF 3i AND PAUL BADAWI'S MOTION TO DISMISS 3RD AMENDED COMPLAINT
Case No. C 07 02789 JSW

BARTKO ZANKEL
Bartko · Zankel · Tarrant · Miller · Lund & Fiorenza, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

¶¶ 9, 170.)  As such, "the settlement represented *a complete forfeiture of OrthoClear's business.*" (TAC at ¶171) (emphasis added).  Indeed, OrthoClear's intellectual property, its dental aligner business and its patients represented substantially all of its assets and business.  (TAC ¶¶ 171, 175, and 179(c)-(e).)   As a consequence, the Align settlement "did not leave funds sufficient for OrthoClear to carry on any other business or repay the investment of its Class A, B and C investors."  (*Id.*)

In a letter, and attached written consent, dated September 28, 2006 (the "September 28 Letter"), OrthoClear's then-General Counsel, Patricia Seifert, sought the consent of the OrthoClear shareholders to the Align settlement.  (TAC at ¶ 170.)  The September 28 Letter plainly described the circumstances of the Align settlement and, in particular, that the Company would assign to Align all of its intellectual property and its patients and that the Company would cease all operations.  (*See* Written Consent of the Shareholders, appended to the September 28 Letter; TAC at ¶¶ 170-73.) (Welsh Aff., Ex. B).  A second, unsigned letter, dated October 2, 2006, stated, in relevant part, that "[t]he $20 million payment from Align will provide us cash to orderly shut down those parts of the business worldwide that cannot be readily redeployed, curtail further Align litigation expense, and maximize the opportunity to provide return to shareholders. . . ." (October 2 Letter at 1-2.) (Welsh Aff., Ex. C).  The October 2 Letter also stated that, "[t]he exact amount of money that may be returned to shareholders in each class has not yet been determined and cannot be determined unless and until there is an actual liquidation."  (*Id.*)

Badawi resigned from the Board on October 6, 2006.  (TAC at ¶ 181.)  3i thereafter sought to recover, pursuant to Section 12 of the Memorandum, the full $10 million investment it had made only eight weeks earlier.  (TAC at ¶ 184.)  Following several months of negotiations, in February of 2007, 3i reached a settlement with the Company and received a return of $8.5 million of its investment, representing a loss to 3i – and a gain to the Company – of some $1.5 million. (TAC at  ¶¶ 10 and 184-87.)  The settlement between 3i and OrthoClear was announced by the Company on March 8, 2007.  (TAC at ¶ 187.)

BARTKOZANKEL
Bartko Zankel Tarrant Miller & Nunn A Professional Corporation
900 Front Street, Suite 300
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

-2-

Following announcement of the settlement between 3i and OrthoClear, Plaintiffs brought suit against OrthoClear and its officers and directors and against 3i and Badawi. In addition to the claims asserted against the Company and the directors and officers other than Badawi, Plaintiffs alleged that Badawi somehow breached his fiduciary duties to OrthoClear in connection with the payment to 3i (which was neither agreed to nor negotiated until long after Badawi's resignation on October 6, 2006), and that Badawi had somehow misrepresented the Align settlement to the other shareholders by virtue of his unspecified role in the September 28 and October 2 Letters. (Second Amended Complaint ("SAC") at ¶¶ 112, 143, 156-57.) Plaintiffs also alleged that 3i held its payment from the Company in constructive trust for the Class A, B and C shareholders. (*Id.* at ¶¶ 166-68.)

## II.    PROCEDURAL BACKGROUND

### A.    The Court Dismisses the Second Amended Complaint.

Pursuant to the Defendants' motions, the Court dismissed the Second Amended Complaint without prejudice on January 18, 2008. (Order at 16-17.) In its Order (the "Order"), the Court held that Plaintiffs' claims for breach of fiduciary duty and constructive trust were derivative in nature and Plaintiffs consequently lacked standing to bring those claims directly. (Order at 13-15.) The Court also held that Plaintiffs had failed to plead their misrepresentation claims with particularity, as required by Fed. R. Civ. P. 9(b). (Order at 15-16.) The Court held, in particular, that in addition to a "lack of specificity about when Badawi was on the Board," the SAC lacked "clear factual allegations demonstrating that Badawi was aware of communications to the shareholders or the contents or falsity of any statements those communications contained at the time they were made." (Order at 16.)

### B.    The Third Amended Complaint.

Plaintiffs have now filed their Third Amended Complaint. For all of its heft, the TAC adds little to Plaintiffs' claims against 3i and Badawi. Specifically, Plaintiffs have made only two additions that are relevant to this Motion to Dismiss: First, Plaintiffs allege that, even though their claims are derivative, they are not required to make a demand on OrthoClear's

-3-

BARTKO ZANKEL
Bartko Zankel Tarrant & Miller A Profession Corporation of Counsel
900 Front Street, Suite 300
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1   Board. (TAC ¶¶ 197-202.)   Second, Plaintiffs attempt to supplement their pleadings regarding

2   Badawi.  The TAC concedes that Badawi left the OrthoClear Board on October 6, 2006.  (TAC at

3   ¶ 181.) But the TAC now also implausibly claims that, after Badawi's resignation, Badawi illicitly

4   provided to 3i confidential information that is utterly unidentified but that Badawi supposedly

5   obtained as a Board member in order to enable 3i to negotiate a settlement with OrthoClear.  (TAC

6   at ¶¶ 181, 184, 196, 209 and 247.)  Plaintiffs make no other additional allegations against Badawi

7   or 3i.

8                                                    **ARGUMENT**

9   III.   **PLAINTIFFS' DERIVATIVE CLAIMS BELONG TO THE COMPANY,
           NOT TO PLAINTIFFS**

10

11          A.     Plaintiffs' Fiduciary Duty and Constructive Trust Claims Are
                   Derivative and, as Such, Belong to the Company.

12          In its January 18, 2008 Order, this Court held that Plaintiffs' fiduciary duty and

13   constructive trust claims are derivative:

14                 Just as in *PacLink Commc'n Int., Inc.* v.  *Superior Court* (2 Dist.
                   2001), "the essence of Plaintiffs' complaint is that the assets of [the
15                 company] were fraudulently transferred without any compensation
                   being paid. . . . This constitutes an injury to the company itself."  90
16                 Cal.App.4th 958, 964.   The crux of Plaintiffs' fiduciary duty and
                   constructive trust claims against Badawi and 3i is that their conduct
17                 harmed OrthoClear and its assets was dissipated as a result of the
                   payment to 3i.  These claims are therefore derivative.

18

19   Order at 14.   As a consequence, the decision whether to bring such claims is within the sound

20   discretion of the OrthoClear Board's business judgment.

21          Section 184C of the BVI Companies Act, which governs here under the internal

22   affairs doctrine, sets forth the circumstances under which a shareholder may bring a derivative

23   action.   While no reported case law in the British Virgin Islands or elsewhere currently interprets

24   Section 184C, by its plain terms, Section 184C is rooted in the "cardinal precept" of corporate law

25   that "directors, rather than shareholders, manage the business and affairs of the corporation" –

26   including the decision whether to engage the company in litigation.  *Aronson v. Lewis*, 473 A.2d

27   805, 811 (Del. 1984), *overruled in part on other grounds by Brehm v. Eisner*, 746 A.2d 244 (Del.

28   2000); *Oakland Raiders v. National Football League*, 93 Cal.App.4th 572, 586 (Cal.App. 2002)

                                                      -4-

BARTKOZANKEL
900 Front Street, Suite 300
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKO ZANKEL
Bartko Zankel Tarrant & Miller, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

(quoting *Good v. Getty Oil Co.*, 518 A.2d 973, 975 (Del. Ch. 1986)). As a result, in determining whether to permit a shareholder to bring a shareholder derivative action without the consent of the Board, BVI Section 184C requires a court to take into account, among other things, "whether the derivative action is in the interests of the company *taking account of the views of the company's directors on commercial matters*" (Sec. 184C(2)(b)) and allows a shareholder action only where it is not in the company's interests to allow the directors to maintain control of the litigation (Sec. 184C(3)). BVI Companies Act at §184C; *see also Foss* v. *Harbottle*, (1843) 2 Hare 461. (Welsh Aff., Ex. D and E.)

B. **Plaintiffs Have Not Alleged Facts Sufficient to Wrest Control of the Claims Against Badawi and 3i Away from the Company.**

Without referring to or complying with BVI law, Plaintiffs attempt to overcome the presumption that the corporation's board should control litigation brought in the right of the corporation by alleging that a shareholder demand on the OrthoClear Board would be futile. However, Plaintiffs' conclusory allegations of "demand futility" may be dispatched in short order:

• *First*, Plaintiffs allege that the directors and officers of OrthoClear approved the payment to 3i and consequently "would have to sue themselves." (TAC ¶ 200 (b), (c), and (e).) As an initial matter, this allegation is incorrect for a very basic reason: Neither Badawi nor any other 3i representative is a director of the Company. To bring suit against Badawi or 3i would not require the members of the Board to "sue themselves." Even if it somehow did, the claim that demand is futile because all board members are named as defendants "*has been rejected by every circuit court that has considered the issue.*" *Lewis v. Sporck*, 612 F. Supp. 1316, 1323 (N.D. Cal. 1985) (emphasis added).

• *Second*, Plaintiffs cannot establish demand futility by merely asserting that the Directors participated in or approved any alleged wrongdoing. (*See* TAC ¶ 200(b).) As a matter of law, demand is not excused merely because directors have approved the actions complained of. *Lewis*, 612 F. Supp. at 1322. A plaintiff must also show that the directors deciding whether to bring suit would face a "substantial likelihood" of personal liability in such an action.

-5-

*Id.* Again, the current Board would face no likelihood of liability in bringing suit against 3i. In any event, Plaintiffs have not pled how or why they would.

• *Third*, Plaintiffs claim that demand is excused by the bare fact that Directors have not yet brought suit. (TAC ¶200(a) and (e).) This assertion makes no sense; by definition, demand by a derivative plaintiff *only* comes into play where the sitting directors have not brought suit. Nor does the fact that OrthoClear is currently winding down render it unable to direct litigation. (*See* TAC ¶200(g), (h).) Indeed, the fact that the Company is currently actively defending against claims by these Plaintiffs demonstrates its ability to engage in litigation if it so chooses.

• *Finally*, Plaintiffs claim that the "insured versus insured exclusion" in OrthoClear's directors' and officers' insurance policy somehow excuses them from making a demand. (TAC ¶200(a), (e).) This argument has been consistently rejected by the courts as one that "would eviscerate the demand requirement". *In re Prudential Ins. Co. Derivative Litig.*, 659 A.2d 961, 973 (N.J.Ch.Div.1995); *see also Stoner v. Walsh*, 772 F.Supp. 790, 805 (S.D.N.Y. 1991) (rejecting argument that liability insurance policy exclusion rendered board "interested").

This is all with good reason. Each of the circumstances invoked by Plaintiffs for excusing demand – and permitting them to take over this action – exists in virtually every derivative action. If such circumstances were sufficient to excuse demand, little would be left of the demand requirement. That is not the law.

In summary, Plaintiffs have failed to allege with particularity that any disqualification bars the Company's Directors from determining whether or not the Company should embark on litigation against 3i and Badawi.

C. **Plaintiffs' Misrepresentation Claims Against Badawi and 3i Are Also Derivative and Belong to the Company.**

Although Plaintiffs allege that Badawi somehow misled them into taking or failing to take action after the Align settlement, Plaintiffs do not and cannot identify a direct injury as a result. Rather, their claimed injury is that they "suffered damages in that the funds that otherwise would have been available to distribute to them were otherwise dissipated." (TAC ¶ 242; *see also*

BARTKO ZANKEL
Bartko Zankel Tarrant Miller & Henson, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1   TAC ¶ 249.)  Just as with Plaintiffs' claims for breach of fiduciary duty, if Plaintiffs were harmed

2   by any alleged misrepresentation by Badawi, they were injured purely as a result of the depletion

3   of *OrthoClear's* assets through the allegedly improper transfer of $8.5 million to 3i.  The fact that

4   the claims are labeled as claims for "misrepresentation" does not alter the fundamental nature of

5   the claims and the recovery sought.  Because the gravamen of the claims against Badawi is injury

6   to *the Company*'s assets, the claims are necessarily derivative.  Order at 14.

7   **IV.   THE CLAIMS AGAINST 3I AND BADAWI SHOULD BE DISMISSED
        BECAUSE 3I WAS ENTITLED TO RECOVER ITS FULL LIQUIDATION
8       PREFERENCE**

9       A.   As a Matter of Law, 3i was Entitled to its Full Liquidation
             Preference Under OrthoClear's Corporate Charter.

10          Plaintiffs' claims against 3i and Badawi fail, because 3i was entitled to its full

11  liquidation preference as a matter of law.  As OrthoClear's charter, the Memorandum is a contract

12  among the various shareholders of OrthoClear, as well as a contract between OrthoClear and its

13  shareholders.  *Sundlun v. Exec. Jet Aviation, Inc.*, 273 A.2d 282, 285 (Del. Ch. 1970).  As such,

14  "[t]he rules which govern the interpretation of statutes and contracts apply to the interpretation of

15  corporate charters."  *Id.* (citing *Lawson v. Household Finance Corporation*, 152 A. 723, 726

16  (Del.Ch. 1930) ("The same rules which govern the construction of statutes, contracts and other

17  written instruments, are made use of in construing the provisions and determining the meaning of

18  charters and grants of corporate powers and privileges.")).  Contractual interpretation, including

19  the interpretation of a corporate charter, is entirely appropriate for decision on a motion to dismiss.

20  *See Mieuli v. Debartolo*, 2001 U.S. Dist. LEXIS 22518 at *15 (N.D. Cal. Jan. 16, 2001) (citing

21  *International Ins. Co. v. Red & White Co.*, 1994 WL 706361 at *13 (N.D. Cal.)).  Such is the case

22  here.

23          Section 12 of the OrthoClear Memorandum – the "Liquidation Preference" – states,

24  in relevant part, that "upon a sale of all or substantially all of the assets of this Company,"

25          . . . . the assets of the Company available for distribution among the
            Shareholders shall be applied in the following priority.  If upon the
26          occurrence of such event, the assets thus distributed in each of clause
            (a) through (e) below shall be insufficient to permit the payment to
27          the holders in each of clause (a) through (e) below of their full
            preferential amounts, then the entire assets of the Company legally

28
                                                    -7-

BARTKO ZANKEL
Bartko·Zankel·Tarrant·Miller·Lucas & Kronick, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

available for distribution to shareholders shall be distributed ratably among the holders of the Preference Shares listed in each clause below in proportion to the full preferential amount each such holder is otherwise entitled to receive under this Section 12.

(a)   firstly, in payment to the holders of the Class D Shares [*i.e.* 3i], an amount equal to the Original Issue Price per Class D Share (as adjusted to take account of any division or consolidation of the Preference Shares) [$10 million] plus any declared and unpaid dividends; . . .

Memorandum at §12. *After* the Class D shareholder is paid, each of the Class A, B and C shareholders is then entitled to be paid only in descending order of priority – from A through C and beyond. (*Id.*) As a result, the Memorandum *obligated* OrthoClear to pay 3i (as the holder all of the Class D shares) its full liquidation preference of $10 million before Plaintiffs – junior preferred Class A, B and C shareholders – received any return of their investment.[2]  That is the entire purpose of the "liquidation preference" in the Memorandum. Although Plaintiffs allege that the payment to 3i "favor[ed] the interests of 3i . . . over the interests of the remaining shareholders" (TAC ¶ 263), such supposed favoritism was bargained for at the time of 3i's investment and memorialized in the Company's Memorandum.[3]

The settlement with Align – in which OrthoClear assigned all of its intellectual property and patients to Align and agreed to shutter its business – plainly constituted a "sale of all or substantially all" of OrthoClear's assets within the meaning of Section 12. Plaintiffs effectively agree that the settlement constituted a sale of all assets resulting in OrthoClear "exiting the clear

---

[2]   Of course, this is precisely the way a typical liquidation preference operates. *See Kline Hawkes California SBIC, L.P. v. Superior Court*, 117 Cal.App.4th 183, 192 (Cal.App.2d Dist. 2004) ("The liquidation preference of a preferred stock refers to the amount that the holders of the preferred shares are entitled to receive upon any liquidation of the corporation and distribution of its assets, after the payment of all of its liabilities, *before the holders of the common shares or any junior class or series of preferred shares will receive anything*.") (emphasis added) (quoting 1 MARSH ET AL., CAL. CORPORATION LAW, (2002-2 supp.) § 7.03[A], p. 7-15).

[3]   Indeed, changes in the Memorandum creating the Class D shares and their priority in the liquidation preference had to be approved by a majority of the pre-existing preferred shareholders – *i.e.* the Plaintiffs here. *See* Memorandum, Section 13(b) (stating that the Company cannot create shares "having rights, preferences or privileges senior to" existing preferred shares without the consent of a majority of existing preferred shareholders). Having approved the terms of 3i's investment – and 3i's senior preferred status – they cannot now complain about the terms of that investment. Nor can Plaintiffs claim that they had no notice that, a Deemed Liquidation Event having taken place, the Class D shareholders were due to receive their liquidation preference.

-8-

BARTKO ZANKEL
Bartko Zankel Tarrant Miller & Hanson, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

alignment business." (TAC ¶ 190; *see also* TAC ¶ 171, 179(c) and (d); SAC at ¶¶ 94, 98(e), 107, 136; FAX at ¶ 136.)  Plaintiffs even allege it was evident that OrthoClear was disposing of the lion's share of its assets *at the time the settlement was approved*, when they state that "a number of shareholders asked why OrthoClear had entered into a settlement which involved abandoning its business." (TAC ¶ 175.)

As a result of the Align settlement, therefore, the liquidation preference or "waterfall" in Section 12 of the Memorandum was triggered and, under the plain terms of the Memorandum, 3i was entitled to payment of its full preferential amount of $10 million on a priority basis, ahead of Plaintiffs – all of whom are junior preferred shareholders.  Moreover, by agreeing to settle for less than its liquidation preference of $10 million, 3i permitted more funds to remain in the Company than would have otherwise been the case.

**B.  Section 9 of the Memorandum Authorized the Company to Repurchase 3i's Class D Shares.**

In addition, under Section 9 of the Memorandum, the Company had the absolute discretion, with 3i's consent alone (and without the need to obtain the consent of any of the other OrthoClear shareholders), to redeem 3i's Class D shares without the consent of the junior preferred shareholders.  Section 9 states, in relevant part:

> The preference Shares shall: . . . not be entitled or subject to redemption or repurchase by the Company except as set forth in Section 16 below,[4] *or otherwise agreed to in writing by the Company, the holders of the Class D Shares and the holders of the Preference Shares whose shares are to be redeemed or repurchased* . . .

Memorandum at §9(b)(ii).  In other words, for the Company to repurchase 3i's shares, it needed only a written agreement between the Company and 3i (which was both the holder of Class D shares and the holder of the Preference Shares to be redeemed).  As such, Section 9(b)(ii), like Section 12 of the Memorandum, reflects the specifically negotiated prioritization of 3i's Class D shares and the fact that, in the event of any repayment of any principal investment amount to any

---

[4]  Section 16 provides a right of the Class D shareholder – *and only the Class D shareholder* – to demand redemption of its shares anytime after 2013.  As such, Section 16 provides further compelling support for the Class D shareholder's unique priority position.  Mem. at § 16; *see also* Mem. at § 15.

-9-

BARTKO ZANKEL

Attorneys at Law and Professional Law Corporation
900 Front Street, Suite 300
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1  preferred shareholder – whether following a Deemed Liquidation Event or as part of a redemption

2  of shares or other distribution – 3i was unconditionally entitled to receive repayment before the

3  junior preferred shareholders.

4  Because 3i was legally entitled to the entire $8.5 million it received (indeed, it was

5  entitled to $1.5 million more) under both Sections 9 and 12 of the Memorandum, Plaintiffs were

6  not injured as a result of the payment.  Plaintiffs have consequently failed adequately to allege

7  claims for either breach of fiduciary duty or misrepresentation.  *Slovensky* v. *Friedman*,

8  142 Cal.App.4th 1518, 1534 (3rd Dist. 2006); *Fox v. Pollack*, 181 Cal.App.3d 954, 962 (1st Dist.

9  1986).  Furthermore, 3i cannot be said to hold those funds in "constructive trust" and, so, Count

10  IX, for Constructive Trust against 3i, must be dismissed with prejudice.

11  V.  **PLAINTIFFS' THIRD AMENDED COMPLAINT AGAIN FAILS TO STATE A CLAIM AGAINST BADAWI**

12  Plaintiffs have, once again, failed to state any actionable claim against Badawi.

13  Plaintiffs have asserted three counts against him:  (1) breach of fiduciary duty in connection with

14  the settlement between OrthoClear and 3i, (2) intentional misrepresentation in connection with the

15  settlement between OrthoClear and Align, and (3) negligent misrepresentation in connection with

16  the settlement between OrthoClear and Align.  As with the nearly identical claims made in prior

17  complaints, none is actionable.  All three should be dismissed with prejudice.

18  A.  Plaintiffs' Novel and Overwrought Breach of Fiduciary Duty

19  Theory Fails to State a Claim Against Badawi.

20  Having grudgingly recognized that they cannot sue Badawi for breach of fiduciary

21  duty based on a settlement agreement that OrthoClear entered into months after Badawi left

22  OrthoClear's Board, Plaintiffs now take a different tack and conjecture that Badawi somehow

23  misappropriated unidentified confidential OrthoClear information as follows:  In Section XIV of

24  the TAC, Plaintiffs note that 3i has asserted that, prior to making its $10 million investment, it

25  received the same disclosures and representations that Plaintiffs claim to have received. (TAC at

26  ¶ 195.)  Plaintiffs further allege that 3i has acknowledged that the settlement between 3i and

27  OrthoClear involved a resolution of "other potential claims," in addition to 3i's claim to a

28

BARTKO ZANKEL
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

-10-

MPA IN SUPPORT OF 3i AND PAUL BADAWI'S MOTION TO DISMISS 3RD AMENDED COMPLAINT
Case No. C 07 02789 JSW

BARTKO ZANKEL
Bartko Zankel Tarrant Miller & Hannon, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1  liquidation preference under the Company's Memorandum.  (TAC at ¶ 196.)  Based solely on

2  these innocuous circumstances, Plaintiffs leap to the following conclusion: "Inasmuch as Badawi

3  left the Board immediately after the settlement with Align, and 3i asserted its claim against

4  OrthoClear immediately thereafter, the inference is compelling and inescapable that the other

5  'potential claims' asserted by 3i were based on facts that Badawi learned during his tenure as a

6  director of OrthoClear."  (*Id.*)  Proceeding from this supposedly "inescapable and compelling"

7  inference, Plaintiffs go further and suppose that Badawi "must have" engaged in the "use of this

8  confidential, inside information to advance the interests of 3i."  (*Id.*)  Plaintiffs, however, supply

9  no meat for these bare bones.

10        Plaintiffs' allegations against Badawi fail to meet the requirements of Fed. R. Civ.

11  P. 9(b).  Plaintiffs' themselves allege that Badawi's supposed misappropriation of OrthoClear

12  information was part of "a joint course of conduct" that is claimed to be part of an "ongoing

13  fraudulent scheme" involving an alleged breach of Badawi's "duty to act honestly and in good

14  faith."  (TAC at ¶¶ 209-210).  Because the gravamen of Plaintiffs' breach of fiduciary duty claim

15  against Badawi is an alleged scheme to mislead OrthoClear's junior preferred shareholders, the

16  claim must meet the heightened pleading requirements of Rule 9(b).  *See, e.g., Vess v. Ciba-Geigy*

17  *Corp. USA*, 317 F.3d 1097, 1103 -1104 (9th Cir. 2003) (holding that Rule 9(b) applies in cases

18  where a plaintiff alleges a course of fraudulent conduct in pleading a claim); *Belova v. Sharp*,

19  No. CV 07-299-MO 2008 WL 700961 at *8 (D. Or. March 13, 2008) ("A claim for a breach of

20  these fiduciary duties [of loyalty and care] sounds in fraud and must be pleaded with particularity

21  as required by Federal Rule of Civil Procedure 9(b)").

22        Plaintiffs' fiduciary duty claims against Badawi fall far short.  First, although

23  Plaintiffs insist that Badawi misappropriated "confidential inside information" of the Company,

24  nowhere in the TAC do Plaintiffs so much as identify the supposedly "confidential, inside

25  information" taken by Badawi; indeed, they do not even speculate as to what that information

26  might be.  Second, the fact that 3i allegedly settled "other potential claims" in connection with

27  resolving its right to a preferred distribution under Section 12 of the Memorandum is neither

28

-11-

remarkable nor untoward. Settlements seek peace and virtually always address "other potential claims," real or imagined. Third, the fact that Badawi left the Board shortly after the Align settlement, and prior to the settlement between OrthoClear and 3i, suggests nothing inappropriate; on the contrary, it suggests an effort by Badawi to avoid any potential conflict of interest by resigning from the Board before 3i pressed its priority rights under the Memorandum.

Far from supporting any inference of a misappropriation of confidential, inside information, Badawi's departure from the OrthoClear Board and the fact that 3i settled "other potential claims" against OrthoClear suggests nothing more than that Badawi and 3i knew what every other shareholder knew. All of the information that 3i needed in order to assess its rights as a result of the Align settlement was fully disclosed and out in the open. The simple fact is that 3i had invested $10 million a mere six weeks before the very public shuttering of OrthoClear. In such circumstances, any reasonable investor would consider the possibility of "other potential claims."

In short, Plaintiffs' contrived allegations concerning the circumstances of Badawi's departure from the OrthoClear Board and 3i's settlement with OrthoClear do not support any inference – let alone a "compelling" and "inescapable" one – that Badawi misappropriated unidentified confidential information from the Company, and they fall far short of satisfying Rule 9(b)'s heightened pleading requirements. Count VI against Badawi should, accordingly, be dismissed.

> **B.** Plaintiffs' Misrepresentation Claims Are Unchanged and Should Be Dismissed Once Again.

Plaintiffs have failed once more to plead adequately their claims of misrepresentation (Counts III and IV) against Badawi. In its January 18, 2008 Order, the Court held that Plaintiffs had failed to plead their misrepresentation claims with the particularity required by Fed. Rule Civ. P. 9(b). Order, pp. 15-16. As the Court has noted, to state a claim for misrepresentation, the Plaintiffs must make "allegations regarding the misrepresentation, the speaker, when and where the statement was made, and in what manner the representation is false or misleading." Order, p. 16. Plaintiffs have supplemented their TAC on this score by adding

-12-

BARTKOZANKEL
Kalcher Eichen Heimovitch Nuiroki & Thomson, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA  94111
Phone (415) 956-1900 • Fax (415) 956-1152

1  only one allegation – the fact that Badawi resigned from the Board on October 6, 2006.[5]  (TAC

2  ¶181.)  This single addition does nothing to cure the myriad deficiencies in Plaintiffs' allegations.

3          Plaintiffs' misrepresentation claims against Badawi are premised (once again) on

4  two letters sent to shareholders – one on September 28 and one on October 2, 2006.  For the

5  reasons set forth in the Court's Order dismissing the Second Amended Complaint, Plaintiff's

6  misrepresentation claims should again be dismissed.  In particular, Plaintiffs have not adequately

7  alleged that either of the letters contains any actual misrepresentations (much less that Badawi was

8  aware of any supposed misrepresentation in them), that Badawi participated in drafting either

9  letter, or that Badawi even saw either letter before it was allegedly sent to shareholders.

10 Furthermore, as the Court held with regard to the misrepresentation claims against the D&O

11 Defendants, the Complaint fails to allege reliance.  Order at 11-12.

12          Plaintiffs maintain that the September 29 and October 2 Letters were misleading

13 because they allegedly falsely stated that "(a) the remaining Company assets would be used to

14 meet obligations to all shareholders; (b) no decisions had been taken or were being taken as to

15 specific payments to shareholders; and (c) amounts due to each class of shareholders could not be

16 determined until an 'actual liquidation.'"  (TAC at ¶¶ 239 and 247.)  Setting aside the question of

17 whether these statements can even be attributed to Badawi (they cannot be), Plaintiffs have failed

18 to establish that they were even false when made.  Specifically, Plaintiffs have failed to allege with

19 particularity (a) that the Company's assets have, at any time, been used in any way other than to

20 meet the Company's obligations or that this was the intent in September and October of 2006; (b)

21 that, in September and October of 2006, any decisions had been taken or were being taken as to

22 specific payments to shareholders (indeed, the fact that OrthoClear and 3i did not settle until

23 February of 2007 leads to a contrary inference); or (c) that amounts due to all shareholders have, in

24 fact, been calculated prior to an actual liquidation or that any such calculation was even under

25 consideration in September or October of 2006 (in fact, to this day, a final calculation of payments

---

5  Plaintiffs have added a negligent misrepresentation claim against Badawi, but this does not release them
from the requirements of Rule 9(b); under California law, negligent misrepresentation is a form of deceit
that must be pled with particularity.  *Andrews Farms v. Calcot, Ltd.*, No. CV-R-07-0464-LJO-DLB 2007
WL 1701915 (E.D. Cal. June 8, 2007).

-13-

BARTKO ZANKEL
Bartko Zankel Tarrant Miller & Hanson, Inc. of Counsel
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

BARTKO ZANKEL
Bartko Zankel Tarrant Miller & Hannon, Inc. a Law Offices
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152

1   due to all share classes has not been made). At best, granting all inferences in favor of Plaintiffs,

2   their misrepresentation claims allege "fraud by hindsight." Such allegations do not state a claim

3   for negligent or intentional misrepresentation. Allegations of fraud based on nothing more than

4   the supposed difference between later events and earlier statements are insufficient to survive a

5   motion to dismiss. *Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D.

6   Cal. 1999).

7           Apart from the fact that Plaintiffs have not alleged that the September 28 and

8   October 2 Letters were false, Plaintiffs plead only "on information and belief" – without alleging

9   with particularity either the basis for the information or reason for the belief – that Badawi even

10   saw the September and October Letters, let alone approved their mailing before they were sent.

11   This is inadequate, as a matter of law, to support a claim for fraud. *See In re Syntex Corp. Sec.

12   Litig.*, 855 F. Supp. 1086, 1100 (N.D. Cal. 1994) *aff'd Rosenbaum v. Syntex Corp.*, 95 F.3d 922

13   (9th Cir. 1996) (Rule 9(b) "requires a plaintiff to attribute particular fraudulent acts or statements

14   to a particular defendant"). Plaintiffs now allege that Badawi may be held liable for intentional or

15   negligent misrepresentation because, as a member of the Board of Directors, it *would have been*

16   his responsibility to review the letters (an assertion which assumes that the letters were in fact

17   shown to Badawi). (TAC ¶ 182.) But this is both entirely speculative and a mere variation on the

18   collective pleading that has already been held by this Court to be legally inadequate under Fed. R.

19   Civ. P. 9(b). *See* Order at 16 (holding that Rule 9(b) "require[s] plaintiffs to differentiate their

20   allegations when suing more than one defendant . . . and inform each defendant separately of the

21   allegations surrounding his alleged participation in the fraud" (*citing Swart v. KPMG LLP*, 476

22   F.3d 756, 764-65 (9th Cir. 2007)).

23           C.      Plaintiffs Have Failed to Supplement Their Allegations Concerning
                     Reliance As Required by the Court's January 18 Order.

24

25           Despite the Court's clear guidance in its January 18 Order, Plaintiffs have failed to

26   supplement their allegations concerning either reliance or injury. "[T]he mere assertion of

27   'reliance' is insufficient to state a claim for misrepresentation." *Cadlo v. Owens-Illinois, Inc.*,

28   125 Cal.App.4th 513, 519 (2004). Plaintiffs must also allege specifically what they would have

-14-

1  done absent the misrepresentation. *Small v. Fritz Co.*, 65 P.3d 1255 (Cal. 2003). Where a

2  shareholder brings suit based on the claim that alleged misstatements induced it to hold stock

3  instead of selling, a plaintiff must allege "that if the plaintiff had read a truthful account of the

4  corporation's financial status the plaintiff would have sold the stock, how many shares the plaintiff

5  would have sold, and when the sale would have taken place." *Id. at 1265*. And the plaintiff "must

6  allege actions, as distinguished from unspoken and unrecorded thoughts and decisions, that would

7  indicate that the plaintiff actually relied on the misrepresentations." *Id.* In its January 18 Order,

8  the Court held that Plaintiffs had not alleged actual reliance and that Plaintiffs' claim that they

9  "reasonably relied on these representations by not taking further actions to obtain a return of their

10  funds" was insufficient as a matter of law to state a claim. Order at 11 (quoting SAC ¶ 142).

11  Despite the Court's January 18 Order, Plaintiffs have done nothing in their TAC to supplement

12  their allegations regarding reliance. For this additional reason, the misrepresentation claims

13  against Badawi should be dismissed.

14         In short, Plaintiffs' misrepresentation claims against Badawi fail (yet again) to

15  satisfy the pleading requirements of Fed. R. Civ. P. 9(b) and should be dismissed with prejudice.

16  **VI.    CONCLUSION**

17         After three efforts, plaintiffs have demonstrated they cannot state viable claims

18  against 3i and Badawi, and Counts III, IV, VI and IX of the Third Amended Complaint should be

19  dismissed with prejudice.[6]

20  DATED: March 24, 2008

21                                     BARTKO, ZANKEL, TARRANT & MILLER
                                       A Professional Corporation

22                                     ROPES & GRAY LLP

23

24                                     By: _____/s/ Randall W. Bodner_____
                                              Randall W. Bodner
25                                            Attorneys for Defendants
                                              3i TECHNOLOGY PARTNERS III, LP
26                                            and PAUL BADAWI

27  ────────────────────
    [6]  *Cf. In re Ditech Communications Corp. Securities Litigation*, 2007 WL 2990532
28  (N.D.Cal. 2007).

-15-

BARTKO ZANKEL
Bartko Zankel Tarrant & Miller A Professional Corporation
900 Front Street, Suite 300
San Francisco, CA 94111
Phone (415) 956-1900 • Fax (415) 956-1152