**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL B. ESHELMAN, D.D.S.; PETER
F. SILCHER, D.D.S.; and LORI SILCHER,

          Plaintiffs,                        No. C 07-1429 JSW

    v.

                                        **ORDER GRANTING SECOND**
ORTHOCLEAR HOLDINGS, INC. et al.,        **MOTIONS TO DISMISS**

          Defendants.

_____/

      Plaintiffs Michael B. Eshelman, D.D.S., Peter F. Silcher, D.D.S. and Lori Silcher
(collectively "Plaintiffs") bring this action individually and on behalf of all other persons who
purchased or otherwise acquired the stock of defendant Orthoclear Holdings, Inc.
("OrthoClear") between January 1, 2005 and September 30, 2006.  Plaintiffs make claims
against various defendants for violation of Section 10(b) Securities Exchange Act of 1934, 15
U.S.C. §§ 78j(b) and 78t(a); violation of Section 12(a)(1) of the Securities Act of 1933;
intentional misrepresentation; negligent misrepresentation; violation of California Corporations
Code §§ 25401 and 25501; breach of fiduciary duty; violation of British Virgin Island ("BVI")
Business Companies Action § 121; breach of California Corporations Code § 2116;
constructive trust; and violation of California Corporations Code Section 25110.

      Now before the Court are three motions to dismiss the Third Amended Complaint
("TAC") filed by defendants OrthoClear and the Directors and Officer Defendants (collectively
"OrthoClear"), 3i Technology Partners ("3i") and Patricia H. Seifert ("Seifert").

**United States District Court**
For the Northern District of California

1    OrthoClear moves to dismiss asserting that Plaintiffs fail to meet the heightened

2  pleading requirements of the Private Securities Litigation Reform Act ("PSLRA") and fail to

3  state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

4    Defendant venture capital firm 3i moves to dismiss on the basis that Plaintiffs cannot

5  allege a derivative action and further, that the claims for negligent and intentional

6  misrepresentation are not alleged with sufficient particularity.

7    Defendant Seifert moves to dismiss for failure to state a claim upon which relief can be

8  granted under Federal Rule of Civil Procedure 12(b)(6) on many of the same grounds as

9  OrthoClear and the D&O Defendants.

10    Having carefully reviewed the parties' papers, considered their arguments and relevant

11  legal authority, and having had the benefit of oral argument, the Court hereby GRANTS

12  Defendant OrthoClear's motion to dismiss, GRANTS 3i's motion to dismiss, and GRANTS

13  Seifert's motion to dismiss, all without leave to amend.

14                                          **BACKGROUND**

15    According to the Third Amended Complaint, Defendant OrthoClear is a British Virgin

16  Islands corporation that manufactured clear plastic devices designed to straighten teeth.

17  Plaintiffs are holders of preferred Class A, B, and C shares of OrthoClear, which they purchased

18  in April, June, and October of 2005 and in March of 2006 ("Class Period").  Defendant 3i is a

19  venture capital fund that invested in OrthoClear in August of 2006 when it purchased $10

20  million of senior preferred Class D shares.  Defendant Paul Badawi is a principal of 3i who

21  served briefly on the Board of Directors of OrthoClear.  Defendant Patricia Humell Seifert, who

22  resides in Desoto, Texas, served as Vice President of Legal Affairs and General Counsel for

23  OrthoClear Holdings and OrthoClear, Inc.

24    OrthoClear was sued by Align Technology ("Align") in February 2005 for infringement

25  of intellectual property rights and in July 2005 for violations of the Lanham Act.  In January

26  2006, Align filed a complaint against OrthoClear in the United States International Trade

27  Commission as well as a patent case in federal court.  In June 2006, Align filed another federal

28  action against OrthoClear for violations of the Lanham Act and related common law claims.

2

United States District Court

For the Northern District of California

The Complaint alleges that while these various actions (collectively the "Align Litigation") were pending, OrthoClear repeatedly told investors and its shareholders that Align's claims were meritless.  The Third Amended Complaint alleges more specific facts regarding the alleged representations and reliance thereon, as well as a further analysis of the similarity of the intellectual property owned by Align and OrthoClear.

In August 2006, 3i purchased $10 million of Class D shares of OrthoClear and Badawi joined its Board of Directors.

On September 28, 2006, OrthoClear announced that it had reached an agreement with Align and would cease its operation.  OrthoClear agreed to transfer all existing rights of its intellectual property to Align in exchange for $20 million.  OrthoClear sought the necessary shareholder approval for the settlement with various letters to its shareholders.  In addition, 3i received a sum of money approximating the $10 million it had invested in OrthoClear.

On October 2, 2006, OrthoClear sent another letter to the shareholders with more specific information regarding the Align settlement and the winding down of OrthoClear's business.

All other pertinent facts shall be addressed in the analysis as needed.

**ANALYSIS**

Plaintiffs allege that throughout the Class Period, OrthoClear deceived Plaintiffs regarding the merits and bases of the Align Litigation.  The allegations include whether OrthoClear deliberately deceived investors about whether it had a valid ownership interest in the intellectual property upon which its business was based or whether its use was infringing Align's patents.  Plaintiffs also claim that OrthoClear failed to disclose the effect of the costs of the Align Litigation on its ability to continue to conduct business and prepare a defense.  Lastly, Plaintiffs claim that OrthoClear deceived its investors about whether and when it was planning to make an initial public offering of its shares.  The Third Amended Complaint sets out the specific details of these alleged misrepresentations and failures to disclose in further detail than Plaintiffs had previously.  However, the factual premise of the Plaintiffs' allegations are the same as before.

3

United States District Court
For the Northern District of California

1    Section 10(b) of the Securities Exchange Act provides, in part, that it is unlawful "to use

2    or employ in connection with the purchase or sale of any security registered on a national

3    securities exchange or any security not so registered, any manipulative or deceptive device or

4    contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15

5    U.S.C. § 78j(b).

6    Rule 10b-5 makes it unlawful for any person to use interstate commerce:

7    (a)    To employ any device, scheme, or artifice to defraud;
8    (b)    To make any untrue statement of material fact or to omit to state a material fact
            necessary in order to make the statements made, in light of the circumstances
            under which they were made, not misleading, or;
9    (c)    To engage in any act, practice, or course of business that operates or would
            operate as a fraud or deceit upon any person, in connection with the purchase or
10           sale of any security.

11   17 C.F.R. § 240.10b-5.

12   To plead a claim under section 10(b) and Rule 10b-5, a plaintiff must allege (1) a

13   misrepresentation or omission, (2) of material fact, (3) made with scienter, (4) on which the

14   plaintiff justifiably relied, (5) that proximately caused the alleged loss. *Binder v. Gillespie*, 184

15   F.3d 1059, 1063 (9th Cir. 1999). Additionally, as in all actions alleging fraud, a plaintiff must

16   state with particularity the circumstances constituting fraud. *Greebel v. FTP Software, Inc.*, 194

17   F.3d 185, 193 (9th Cir. 1999); Fed. R. Civ. P. 9(b).

18   **A.    Applicable Pleading Standards.**

19   **1.    Rule 12(b)(6).**

20   A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the

21   pleadings fail to state a claim upon which relief can be granted. The complaint is construed in

22   the light most favorable to the non-moving party and all material allegations in the complaint

23   are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). The court,

24   however, is not required to accept legal conclusions cast in the form of factual allegations, if

25   those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness*

26   *Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain,* 478 U.S. 265, 286

27   (1986)). Conclusory allegations without more are insufficient to defeat a motion to dismiss for

28   failure to state a claim upon which relief may be granted. *McGlinchy v. Shell Chemical Co.*,

4

United States District Court

For the Northern District of California

1   845 F.2d 802, 810 (9th Cir. 1988).  Even under the liberal pleading standard of Federal Rule of

2   Civil Procedure 8(a)(2), a plaintiff must do more than recite the elements of the claim and must

3   "provide the grounds of [its] entitlement to relief."  *Bell Atlantic Corporation v. Twombly*, 127

4   S. Ct. 1955, 1959 (2007) (citations omitted).  In addition, the pleading must not merely allege

5   conduct that is conceivable, but it must also be plausible.  *Id.* at 1974.

6         **2.**        **Private Securities Litigation Reform Act.**

7         In order to limit the number of frivolous private securities lawsuits, Congress enacted

8   the PSLRA in December of 1995, and created heightened pleading standards for such lawsuits.

9   15 U.S.C. § 78u-4(b).  The PSLRA requires that "the complaint shall specify each statement

10  alleged to have been misleading, the reason or reasons why the statement is misleading, and, if

11  an allegation regarding the statement is made on information and belief, the complaint shall

12  state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1)(B).

13  Furthermore, the PSLRA requires that the plaintiff "state with particularity facts giving rise to a

14  strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-

15  4(b)(2).

16        The heightened standard set by the PSLRA was intended to put an end to securities

17  fraud lawsuits that plead "fraud by hindsight."  *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d

18  970, 988 (9th Cir. 1999).  "The PSLRA significantly altered pleading requirements in private

19  securities fraud litigation by requiring that a complaint plead with particularity both falsity *and*

20  scienter."  *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084 (9th Cir. 2002) (citing *Ronconi

21  v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001)) (emphasis added).  "Thus the complaint must

22  allege that the defendant made false or misleading statements either intentionally or with

23  deliberate recklessness or, if the challenged representation is a forward looking statement, with

24  'actual knowledge ... that the statement was false or misleading.'"  *Id.* at 1085 (citing 15 U.S.C.

25  § 78u-5(c)(1)(B)(I)).  This is often accomplished "by pointing to inconsistent contemporaneous

26  statements or information (such as internal reports) made by or available to the defendants."

27  *Yourish v. California Amplifier*, 191 F.3d 983, 993 (9th Cir. 1999) (quoting *In re GlenFed Sec.

28  Litig.*, 42 F.3d 1541, 1549 (9th Cir. 1991) (*en banc*)); *see also id.* at 994 (discussing

5

United States District Court

For the Northern District of California

1   insufficiency of plaintiffs' allegations with regard to the non-disclosure of confidential non-

2   public information).

3        Under the PSLRA, a complaint is still construed in the light most favorable to the non-

4   moving party and all material allegations in the complaint are taken to be true. *Silicon*

5   *Graphics*, 183 F.3d at 983.  To determine whether a plaintiff has pled a strong inference of

6   scienter, however, "the court must consider all reasonable inferences to be drawn from the

7   allegations, including inferences unfavorable to the plaintiffs." *Gompper v. VISX, Inc.*, 298

8   F.3d 893, 897 (9th Cir. 2002).  The Court "should consider all the allegations in their entirety,

9   together with any reasonable inferences therefrom, in concluding whether, on balance, the

10  plaintiffs' complaint gives rise to the requisite inference of scienter." *Id.* "Conclusory

11  allegations of law and unwarranted inferences, however, are insufficient to defeat a motion to

12  dismiss." *In re Northpoint Communications Group, Inc. Sec. Litig.* (*Northpoint II*), 221 F.

13  Supp. 2d 1090, 1094 (N.D. Cal. 2002).

14       Finally, the Court may consider the facts alleged in the complaint, documents attached

15  to the complaint, documents relied upon but not attached to the complaint when the authenticity

16  of those documents is not questioned, and other matters for which the Court can take judicial

17  notice. *Northpoint II*, 221 F. Supp. 2d at 1094; *see also Silicon Graphics*, 183 F.3d at 986.

18  **B.**    **Requests for Judicial Notice.**

19       The Court has already taken judicial notice of OrthoClear Holdings, Inc. Class A, B and

20  C Preferred Shares Purchase Agreements with the Schedule of Exceptions for each agreement

21  ("Purchase Agreements") (attached as Exhibits A through C to the original declaration of

22  Charles R. Rice and to the declaration of Joseph V. Mauch as Exhibit A), all of which are

23  referenced in the Third Amended Complaint.  Plaintiffs do not dispute the accuracy of the

24  documents attached to the request, and the requested documents are the types of documents of

25  which this Court properly make take judicial notice. *See, e.g., In re Calpine Corp. Sec. Litig.*,

26  288 F. Supp. 2d 1054, 1076 (N.D. Cal. 2003) (court "may properly take judicial notice of SEC

27  filings and documents expressly referenced" in a complaint); *see also Tellabs, Inc. v. Makor*

28

United States District Court

For the Northern District of California

1   *Issues & Rights, Ltd.*, 12 S. Ct. 2499, 2509 (2007); *see also Plevy v. Haggerty*, 38 F. Supp. 2d

2   816, 821 (C.D. Cal. 1998).  Accordingly, the Court GRANTS Defendant OrthoClear's request.

3         In addition, the Court has already taken judicial notice of the letter from OrthoClear to

4   its shareholders dated March 8, 2007, attached as Exhibit A to the corrected declaration of

5   James S. Nabwangu.  Again, because the letter is referenced in the Complaint and the parties do

6   not dispute the accuracy of the document attached to the request, the Court takes judicial notice

7   of the letter.  *See In re Calpine*, 288 F. Supp. 2d at 1076.

8         Lastly, the Court takes judicial notice of excerpts from the British Virgin Islands

9   Business Companies Act of 2004, amended, effective 2006 (attached as Exhibit B to the

10  original declaration of James S. Nabwangu, attached as Exhibits A, D and E to the declaration

11  of Peter Welsh, and to the declaration of Joseph V. Mauch as Exhibits F-H).  *See MCA, Inc. v.*

12  *United States*, 685 F.2d 1099, 1104 (9th Cir. 1982) ("Under Federal Rule of Civil Procedure

13  44.1, when the parties have given written notice of intent to raise an issue of foreign law, a

14  federal court may take judicial notice of the laws of a foreign country.")  Accordingly, the Court

15  takes judicial notice of the excerpts from the BVI Business Companies Act of 2004.

16  **C.    OrthoClear and D&O Defendants' Motion to Dismiss.**

17         **1.    Count One for Violation of Section 10b-5 Against OrthoClear and the D&O Defendants Fails.**

18

19              **a.    Plaintiffs Fail to Plead Sufficient Facts to Demonstrate Falsity.**

20         The PSLRA requires that Plaintiffs allege with the requisite particularity each statement

21  alleged to be false or misleading, the reason or reasons why the statement was false or

22  misleading, and if those allegations are made on information and belief, all facts on which that

23  belief is formed.  *See* 15 U.S.C. § 78u-4(b)(1)(B); *see also Employers Teamsters Local Nos.*

24  *175 and 505 Pension Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1134 (9th Cir. 2004).  To plead

25  falsity with particularity, a complaint must specific each statement alleged to have been

26  misleading and the reason or reasons why the statement is misleading.  *In re Immune Response*

27  *Sec. Litig.*, 375 F. Supp. 2d 983, 1018-19 (S.D. Cal. 2005).  Plaintiffs again fail to meet this

28  standard.

**United States District Court**
For the Northern District of California

1    Again, Plaintiffs allege that OrthoClear and the D&O Defendants misrepresented the

2    risks of the Align Litigation.  However, as the Court has already held in its previous order

3    dismissing the Second Amended Complaint, OrthoClear disclosed in the Purchase Agreements

4    the risks of the pending litigation and Plaintiffs, who were experienced investors and could

5    therefore appreciate the level of risk involved.  (*See* Purchase Agreements, ¶¶ 3.5, 4.1 and 4.17;

6    Schedule of Exceptions, § 2.10.)   The Purchase Agreements explicitly described the

7    shareholders as "experienced in evaluating and investing in securities in the development

8    stage." (Purchase Agreements, ¶ 3.5.)  The Agreements stated in a portion entitled "Risk

9    Factors" that the "purchase of the Shares should be considered highly speculative and as

10   entailing a high degree of risk.  The purchase of the Shares is suitable only for persons of

11   substantial financial means who can afford the complete loss of their investment, and who have

12   no need for liquidity in this investment.  EACH INVESTOR COULD LOSE HIS OR HER

13   ENTIRE INVESTMENT.  Each Investor should, in addition to reviewing this entire

14   Agreement, including the Schedule of Exceptions and all other Exhibits, carefully consider the

15   following risks. ... Litigation ... the Company has been sued by Align.  If a final determination is

16   rendered against the Company in the Align Litigation (i.e., if the Company should lose the

17   Align Litigation in any way), or if the Company suffers interim adverse ruling of the Court

18   before a final determination is made, such an outcome could have a substantial adverse effect

19   on the Company and on any investments in the Shares."  (*Id.*,  ¶¶ 4.1, 4.17.)

20   Written disclosures of this type, without any indication from the Defendants that they

21   told the investors to ignore the risk disclosures, have been deemed sufficient and not actionable

22   without more.  *See, e.g., In re Boston Scientific Corp. Sec. Litig.*, 490 F. Supp. 2d 142, 153 (D.

23   Mass. 2007) (company "was only obligated to mention the litigation in general descriptive

24   terms" and "was not obligated to predict the outcome or estimate the impact"); *In re SeaChange*

25   *Int'l, Inc.,* 2004 WL 240317, *8 (D. Mass. Feb. 6, 2004) ("given the vagaries of litigation,"

26   general disclosure about litigation was not misleading).  Again, the Court finds that

27   OrthoClear's disclosures were sufficient warning to investors about the pending litigation

28   against the company.  Beside a brief analysis of the breadth of the Align patents and some

8

United States District Court

For the Northern District of California

1   further details regarding time and place of the alleged representations, the allegations in the

2   Third Amended Complaint do not vary in substance from those held insufficient to state a cause

3   of action under Section 10b-5 in the Second Amended Complaint.

4          Plaintiffs argue that in addition to misrepresenting the risks of the Align Litigation,

5   OrthoClear maintained that there was no infringement of any patent or intellectual property

6   rights of others.  (TAC, ¶ 78.)  Plaintiffs contend that OrthoClear knew at the time it made these

7   statements that there was "a substantial question whether or not its patents infringed certain

8   broadly written Align patents."  (*Id.* at ¶ 79.)  Plaintiffs also maintain that because OrthoClear

9   petitioned anonymously for reexamination of certain of Align's patents before the United States

10  Patent Office, they knew there were serious infringement issues.  (*Id.*)  Again, the Court finds

11  that these representations and conduct by OrthoClear do not amount to false or misleading

12  statements at the time they were made.  There is no change from the Second Amended

13  Complaint that alters the Court's conclusion that the fact that Align alleged infringement and

14  the fact that OrthoClear settled the suit fails to indicate that there was indeed a known conflict

15  or infringement of any intellectual property.  The Court again does not find that OrthoClear's

16  strategy, such as filing for reexamination of an adversary's patent, constitutes known falsity.

17  The Court finds that these allegations are insufficient to maintain a claim of falsity under

18  Section 10b-5.

19              **b.       Plaintiffs Fail to Plead Sufficient Facts to Demonstrate Scienter.**

20         The PSLRA also requires a plaintiff to allege particular facts giving rise to a strong

21  inference that "the defendant made false or misleading statements either intentionally or with

22  deliberate recklessness."  *Vantive*, 283 F.3d at 1085; 15 U.S.C. § 78u-4(b)(2).  Where the

23  pleadings are not sufficiently particularized or where, even taken as a whole, they do not raise a

24  strong inference of scienter, dismissal pursuant to Rule 12(b)(6) is proper.  *Lipton v.*

25  *Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002).  Moreover, to determine whether a

26  plaintiff has pled a strong inference of scienter, "the court must consider all reasonable

27  inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs."

28  *Gompper*, 298 F.3d at 897.

Plaintiffs have alleged the same facts as previously alleged tending to show scienter. Plaintiffs allege that several D&O Defendants, as previous officers at Align, had access to Align's intellectual property, manufacturing and marketing plans. They allege that these facts are circumstantial evidence that OrthoClear had the opportunity to steal Align's intellectual property. Plaintiffs further allege that the fact that it took OrthoClear hardly any time to get their product to market indicates that Defendants deliberately used Align's intellectual property in order to jumpstart their own business venture. Last, Plaintiffs claim that the manner in which OrthoClear settled with Align by giving up the business without going to court raises a strong inference that Defendants intentionally or recklessly made false or misleading statements regarding the status of their intellectual property and the merits of the Align Litigation. (TAC, ¶¶ 203-08.)

Again, the Court finds, however, that the allegations of circumstantial evidence that OrthoClear officers were in a position to take intellectual property from Align, or that they were successful in bringing a familiar product to market or the mere fact of the decision to settle with Align, fails to establish that the statements made about their own intellectual property were false when made. Plaintiffs must allege inconsistent contemporaneous statements or actions by the OrthoClear Defendants in order to demonstrate scienter. *See In re Immune Response*, 375 F. Supp. 2d at 1018 (complaint "must contain allegation of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made").

Plaintiffs allege no negative internal report within the company regarding the ongoing Align Litigation or any other contemporaneous statement indicating that the representations made to investors were known to be false at the time they were made.[1] Plaintiffs argue that

---

[1] Plaintiffs request leave to file a supplemental declaration of Alan W. Sparer, prepared significantly after the briefing on this motion was complete and the hearing had already been held. The request cites no authority for the position that a late-prepared declaration should belatedly be admitted and no explanation why the information was not available earlier. In this declaration, Mr. Sparer indicates that a confidential witness would testify that, in his opinion, individuals at OrthoClear knew that a conflict existed between OrthoClear's intellectual property and the rights and patents owned by Align. The purported testimony by this unidentified witness is hearsay and therefore inadmissible; it is not

OrthoClear should have read the declaration originally filed under seal in the Align Litigation written by Align's expert Dr. Eric Kuo.  (TAC, Ex. A.)  First, it is not clear that the declaration was made public in 2006 and therefore was available to view by anyone at OrthoClear at the time of the alleged misrepresentations.  Secondly, even if the declaration were available, the Court is unpersuaded that OrthoClear's failure to disclose the opinions of an opposing party's expert constitutes facts giving rise to a strong inference that "the defendant made false or misleading statements either intentionally or with deliberate recklessness."  *See Vantive*, 283 F.3d at 1085.  Additionally, the fact that many of OrthoClear's members were previously employed by Align and the path to market was shorter than it had been for Align again does not create an inference that Defendants stole intellectual property secrets.  *See In re Pixar Sec. Litig.*, 450 F. Supp. 2d 1096, 1104 (N.D. Cal. 2006) ("motive and opportunity is insufficient" to create a strong inference of scienter).

Lastly, the mere fact of a settlement in pending litigation does not create an inference that Defendants misrepresented the nature of the lawsuit.  Plaintiffs do not cite any authority for the position that the difference between early statements about litigation and a subsequent settlement creates a strong inference of scienter.  The Court is still not persuaded that such an inference is merited.  Unlike a jury finding of willfulness in which a strong inference of scienter may be inferred, settlements can be made for many reasons without any indication of the relative merit of the allegations.  *See, e.g., Rosenbaum Capital LLC v. Boston Communications Group, Inc.*, 445 F. Supp. 2d 170, 173, 175 (D. Mass. 2006); *In re SeaChange*, 2004 WL 240317 at *8.  Furthermore, Align settled with OrthoClear by paying them $20 million for their intellectual property assets.  (TAC, ¶ 170.)  The settlement figure alone indicates that OrthoClear's intellectual property was perceived as something of value to Align and demonstrates relatively little about the meritoriousness of Align's litigation arguments.  The

---

judicially noticeable on a motion to dismiss; it is late without sufficient excuse; and, even considering the allegations that this unnamed individual may have believed there was a conflict, such an opinion would not necessarily change the ruling of this Court.  In any event, the request to consider the supplemental declaration of Alan Sparer is DENIED.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   Court finds that the Third Amended Complaint does not state sufficient facts to create a strong

2   inference of scienter.

3          Because Plaintiffs fail to allege sufficient facts to demonstrate falsity and scienter, the

4   Court GRANTS the motion to dismiss count one for violation of Section 10b-5 against

5   OrthoClear and the D&O Defendants.  In addition, as there have already been four iterations of

6   the complaint filed in this matter and the Court is not satisfied that Plaintiffs would be able to

7   plead any additional facts, this claim is dismissed with prejudice.

8          **2.     Count Three for Intentional Misrepresentation and Count Four for
           Negligent Misrepresentation Against OrthoClear and the D&O Defendants**

9          **Fail.**

10         Plaintiffs allege that after they had already invested, OrthoClear and the D&O

11  Defendants intentionally misrepresented material facts about the Align settlement and that

12  "Plaintiffs reasonably relied on these misrepresentations by not taking further actions to obtain

13  a return of their funds."  (TAC, ¶ 241.)  After-purchase allegations may state a claim for

14  intentional or negligent misrepresentation.  *See Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167,

15  171 (2003) (holding that California law allows a holder's action for fraud or negligent

16  misrepresentation if the effect of a misrepresentation is to induce forbearance in refraining to

17  sell stock or to induce persons not to take action, and those persons are damaged as a result).

18         Plaintiffs allege that the representations by OrthoClear to the shareholders in order to

19  garner their approval for the Align settlement were false when made.  Plaintiffs contend that the

20  representations were false because the Align Litigation was not frivolous, the OrthoClear

21  patents did infringe, and OrthoClear and 3i had no plan to inform investors before distributions

22  were made to 3i.  The Court has already found that Plaintiffs have failed to allege that the

23  statements OrthoClear made about the Align Litigation and the validity of its own patents were

24  false when made.  The representations related to the 3i settlement, for which OrthoClear paid

25  less than the Class D preferred shares were worth, do not amount to false representations.  The

26  sale of the preferred Class D shares to 3i was publicly disclosed and the amount contracted to be

27  given priority redemption was a known quantity.  (TAC, ¶ 153.)  The fact of the settlement with

28  3i for less than the amount it was actually owed was to Plaintiffs' advantage and does not

                                            12

qualify as false when made.  Upon news of settlement with Align, the representations to Plaintiffs consistently disclosed that OrthoClear needed to meet its obligations to creditors and shareholders and that the exact amount of money that may be returned to each class of shareholders could not be determined until there was actual liquidation.

Plaintiffs fail to allege falsity of the alleged representations.  Accordingly, the Court GRANTS the motion to dismiss count three for intentional misrepresentation and count four for negligent misrepresentation against OrthoClear and the D&O Defendants.  Again, because there have already been four iterations of the complaint filed in this matter and the Court is not satisfied that Plaintiffs would be able to plead any additional facts, these two claims are dismissed with prejudice.

**3.      Claim for Violation of California Corporations Code Sections 25401 and 25501.**

In their Third Amended Complaint, Plaintiffs add a new claim for violation of California Corporations Code Sections 25401 and 25501.  These provisions prohibit both negligent and intentional misrepresentations in connection with the sale of securities under state law. OrthoClear raises the same defenses regarding the inadequacy of the allegedly false statements regarding the Align Litigation and the view of the scope of OrthoClear's patents.  As the Court has already found, based on the same facts, that the disclosures do not state a cause of action for either intentional or negligent misrepresentation, there lies no cause of action based on the same allegations under the California Corporations Code sections.

**4.      Derivative Claims.**

In its previous order dismissing the Second Amended Complaint, the Court found that Plaintiffs' claims for breach of fiduciary duty, for violation of the British Virgin Islands Act § 121, and for violation of the British Virgin Islands Act § 2116 were derivative in nature and could not be alleged in a direct shareholder action.  On this basis, the Court dismissed the claims for lack of standing.

In its current iteration, Plaintiffs allege these claims as a derivative action.  First, all parties agree that the Complaint is not verified and therefore the motion to dismiss would be granted with leave to amend to correct that procedural flaw.  *See* Fed. R. Civ. P. 23.1.

United States District Court

For the Northern District of California

13

United States District Court

For the Northern District of California

1 However, Defendants contend that Plaintiffs have failed to meet the requirements for making

2 derivative claims on the merits and urge the Court to dismiss the derivative claims without leave

3 to amend.

4 First, the Court finds that Plaintiffs may not maintain both a derivative action on some

5 of their claims, while seeking to maintain individual causes of action seeking damages from the

6 same pool of money as well as rescission which would eliminate their status as shareholders.

7 Plaintiffs seek to retrieve money damages from OrthoClear as well as from its D&O insurance

8 coverage.  (*See* 3i Opp. Br. at 4.)  Therefore, the individual and derivative claims are in

9 competition for the same pool of money.  *See Argiropoulos v. Kopp*, 2007 WL 954747, *7-8 (D.

10 Md. March 26, 2007) (holding that a plaintiff's individual suit against the corporation, while

11 maintaining a simultaneous derivative action, raises a serious question about whether the

12 plaintiff can properly represent the interests of the shareholders); *see also Zarowitz v.*

13 *BankAmerica Corp.*, 866 F.2d 1164, 1166 (9th Cir. 1989).  In addition, Plaintiffs' request for

14 rescission would eliminate their standing as shareholders to pursue derivative claims.  *See*

15 *Argiropoulos*, 2007 WL 954747 at *8 (holding that where a party's standing to bring a

16 derivative lawsuit would be extinguished by the success of his individual claims, that party

17 should not be permitted to maintain both suits).

18 Second, the Court finds the derivative claims proposed in the Third Amended Complaint

19 appear to violate British Virgin Islands law which governs here.  In *Seghers v. Thompson*, the

20 court held that, under BVI law, derivative actions are governed by the rule in *Foss v. Harbottle*,

21 which states that "a shareholder may ordinarily bring a derivative claim on behalf of a

22 corporation only if a simple majority of the shareholders could not ratify the conduct on which

23 the suit is based."  2006 WL 2807203, *4 (S.D.N.Y. Sept. 27, 2006), citing 2 Hare 461 (Eng.

24 1843).  The exception for fraud on the minority does not apply here, as in *Seghers*, because

25 Plaintiffs have not alleged that the accused wrongdoers controlled a majority of the stock with

26 voting rights and Plaintiffs have not alleged self-dealing by those in control.  *See Seghers*, 2006

27 WL 2807203, *4-5.

28

United States District Court

For the Northern District of California

1    Without citation to any authority, Plaintiffs contend that the BVI statute which became

2    effective after the decision in *Seghers* makes citation to the prior decision unavailing because

3    BVI Companies Act Section 184C supercedes the decision.  (*See* 3i Opp. Br. at 4 n.2.)  The

4    Court has found no authority to discount the rule elucidated in *Seghers*.  Regardless, Section

5    184C permits derivative actions "only if ... it is in the best interests of the company that the

6    conduct of the proceedings should not be left to the directors or to the determination of the

7    shareholders or members as a whole."  (BVI Business Companies Act § 184C(3)(b), attached to

8    Mauch Declaration, Ex. F.)  Plaintiffs have not alleged why it would not be in the best interests

9    of the company not to leave the decision about the 3i payment to OrthoClear's directors.  As the

10   Court will address on the section resolving 3i's motion to dismiss, the Court is persuaded that

11   whether to pursue corporate litigation under these circumstances is a matter best left to the

12   sound business judgment of the organization's board of directors.  (*See* Section D.2. *infra*.)

13   Accordingly, the Court finds that the derivative claims against OrthoClear and the D&O

14   Defendants are barred by the law of the British Virgin Islands and should be dismissed with

15   prejudice.

16        **5.      Registration Claims Fail Under Section 12(a)(1) of 1933 Securities Act and
            California Corporations Code Section 25110.**

17

18        The 1933 Securities Act was intended "to provide investors with full disclosure of

19   material information concerning public offerings of securities in commerce, to protect investors

20   against fraud and, through the imposition of specified civil liabilities, to promote ethical

21   standards of honesty and fair dealing."  *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 195 (1976).

22   Section 12(1) provides that any person who "offers or sells a security in violation of section 77e

23   of this title [Section 5 of the 1933 Act] ... shall be liable to *the person purchasing such security*

24   *from him,* who may sue either at law or in equity in any court of competent jurisdiction...."  15

25   U.S.C. § 77l(1) (emphasis added).  Section 5 provides that it is unlawful to sell a security for

26   which a registration statement has not been filed.  *Id.* § 77e.  Section 5 prohibits the offer or sale

27   by any person of unregistered securities in interstate commerce, but does not apply if the

28   securities are exempt from registration as a private offering.  Defendants here claim exemption

from the federal and state registration requirements under the safe harbor provision that permit the sale of unregistered securities to 35 of fewer "unaccredited investor[s]."  17 C.F.R. § 230.501(e)(1)(iv); 17 C.F.R. § 230.506; Cal. Corp. Code § 25102(f); 10 C.C.R. § 260.102.13(g).

Plaintiffs allege that the offerings at issue were not exempt.  (*See* TAC, ¶¶ 168-69, 278.)  The defendant has the burden of proving as an affirmative defense an offering's exempt status from registration, as well as qualification, requirements.  *Koehler v. Pulvers*, 614 F. Supp. 829, 842 (S.D. Cal. 1985) (citations omitted).  First, the judicially noticeable purchase agreements indicate that each of OrthoClear's investors represented in writing that they were accredited and that they understood the company was relying on their representations to qualify for the private placement exemption from registration.  Secondly, the named Plaintiffs do not allege that they were unaccredited or that, at the time they made their investments, OrthoClear had lost its exempt status by having already sold to more than 35 unaccredited investors.  (*See* TAC ¶¶ 156-169, 233-37, 276-280.)  Therefore, the purchases made by the named Plaintiffs were within the registration exemption provision at the time of the sale.  In order to state a claim for violation of the registration requirements, Plaintiffs must demonstrate that they have standing to make such a claim. *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (holding that Plaintiff must demonstrate (1) it has suffered a personal injury or suffers the threat of injury, (2) that the alleged injury is fairly traceable to the defendant's conduct, and (3) that the injury would likely be redressed by the requested relief).  In this matter, Plaintiffs allege that their purchases became illegal after they made the purchases.  However, the plain language of the statute makes clear that there is a private right of action for those buyers whose own purchase violated the registration or qualification requirements, either because the plaintiff was not an accredited investor or because the company was not entitled to an exemption, at the time of the plaintiff's investment.  *See* 15 U.S.C. § 77l (person who "offers of sells a security in violation of Section 5" is liable "to the person purchasing such security from him."); Cal. Corp. Code § 25503 (violate of Section 25110 "shall be liable to any person acquiring from him the security sold in violation of such section").

16

There is no allegation in the complaint that the Plaintiffs themselves were offered or sold securities in violation of the registration requirements.  In order to state a claim under the plain language of the federal and California statutes and in order to maintain a private right of action, Plaintiffs must allege that they personally were offered or bought securities that, at the time of such offer or sale, should have been registered and were not.  There is no such allegation in the complaint.  Therefore, Plaintiffs' claims under Section 12(a)(1) and California Corporations Code Section 25110 fail as a matter of law and are dismissed with prejudice.[2]

**6.     No Claims Against Individual Defendants.**

The Court admonished Plaintiffs in its last order and required that Plaintiffs set out each particular allegation they maintain against each separate D&O Defendant.  *See, e.g., In re NextCard, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 16156 at *11-12 (N.D. Cal. 2006) (adopting the reasoning of the Fifth Circuit decision in *Southland Securities Corp. v. INSPIRE Insurance Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004), and holding that "it appears to be totally inconsistent with the particularity requirements of the PLSRA to hold corporate officers 'responsible' for unattributed corporate statements solely on the basis of their titles, even if their general level of day-to-day involvement in the corporation's affairs is pleaded.")  Although the Court required that upon repleading, Plaintiffs were "to set out each particular allegation they maintain against each separate D&O Defendant," the Third Amended Complaint fails to set out any significant detail about any particular individual defendant.  (*See* Order at 10 n.2.)  The only change from the previous iteration of the complaint was to add the language that the "D&O Defendants are responsible and secondarily liable for OrthoClear's violations of Section 12(a)(1) pursuant to 15 U.S.C. § 77o which imposes joint and several liability for anyone who 'through stock ownership, agency or otherwise' controls an entity for a violation of Section 12." (TAC, ¶ 236.)  Not only have Plaintiffs failed to allege any specific facts tending to demonstrate that any of the D&O Defendants actually had the power to control OrthoClear, but the Court has

---

[2]  Following the same logic, Plaintiff Eshelman's claim under Section 12(a)(1) for his purchase of Class B shared is barred by the statute of limitations because it was not brought within one year of his purchase.  The one-year statute of limitations runs from the date of his personal purchase.  *See, e.g.,* 15 U.S.C. § 77m; *Koehler*, 614 F. Supp. at 841.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  already determined that there is no underlying liability on the claims.  Accordingly, the claims

2  against the individual OrthoClear Defendants are dismissed without leave to amend.[3]

3  **D.    3i Technology's Motion to Dismiss.**

4      **1.    Claims for Intentional and Negligent Misrepresentation Against Badawi
             Are Inadequately Pled.**

5

6      Plaintiffs have failed to state a claim for intentional or negligent misrepresentation

7  against Badawi because they still fail to plead the claim with requisite particularity.  Federal

8  Rule of Civil Procedure 9(b) requires that "the circumstances constituting fraud or mistake shall

9  be stated with particularity."  Fed. R. Civ. P. 9(b).  The rule "requires pleading facts that by any

10 definition *are* 'evidentiary': time, place, persons, statements made, explanation of why or how

11 such statements are false or misleading."  *In re GledFed*, 42 F.3d at 1548 n.7 (emphasis in

12 original).  Thus, in making out a claim for intentional or negligent misrepresentation, Plaintiffs

13 must make allegations regarding the misrepresentation, the speaker, when and where the

14 statement was made, and in what manner the representation is false or misleading.  In addition,

15 Rule 9(b) "require[s] plaintiffs to differentiate their allegations when suing more than one

16 defendant ... and inform each defendant separately of the allegations surrounding his alleged

17 participation in the fraud."  *Swart v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007).  A court

18 may dismiss a claim when its allegations fail to satisfy Rule 9(b)'s heightened pleading

19 requirements.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003); *see also*

20 *Andrews Farms v. Calcot, Ltd.*, 2007 WL 1701915, *5  (E.D. Cal. June 8, 2007) (holding that

21 causes of action based upon the same pattern of fraudulent activity and part of an alleged

22 fraudulent pattern of conduct must satisfy the heightened pleading standard set out by Rule

23 9(b).)

24     In this case, Plaintiffs merely allege that Badawi and the D&O Defendants collectively

25 misrepresented facts to the shareholders.  (TAC, ¶ 239.)  In their Third Amended Complaint,

26 Plaintiffs add only that Badawi "also withheld information obtained as a director indicating

27 OrthoClear had misled investors about the Align litigation."  (*Id.*)  Plaintiffs also add that

28     [3]  Further discussion of Ms. Seifert's individual liability is discussed in Section E
*infra*.

Badawi resigned from the Board of Directors on October 6, 2006.  (*Id*. at ¶ 181.)  However, the claims against Badawi for both negligent and intentional misrepresentation are premised upon the two letters sent to shareholders, dated September 28, 2006 and October 2, 2006, seeking their approval for the $20 million settlement with Align.  The letter dated September 28 is brief but outlines that the settlement with Align requires the company to "discontinue, worldwide, all design, manufacture, marketing and sales of removable dental aligners."  (Welsh Decl., Ex. B.)  The letter dated October 2 gives further explanation to the shareholders, indicating that the settlement with Align, subject to shareholder approval, requires OrthoClear to exit from the aligner business on a worldwide basis.  The letter also indicates that "the exact amount of money that may be returned to shareholders in each class has not yet been determined and cannot be determined unless and until there is an actual liquidation."  (*Id*., Ex. C.)  Although Badawi's company, 3i, settled for $8.5 million (less than the $10 million the company would have been entitled to under the Class D preferred share agreement with OrthoClear), there is no indication that the rest of the $11.5 million remaining from the settlement with Align would not constitute some part of the shareholders' return.  Although the preferred shareholders' agreement was not specifically disclosed in the letters seeking shareholder approval on the Align settlement, there is no persuasive allegation that the content of the letters were false when made.  *See Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999).  The complaint again fails to allege that the letters actually contained any misrepresentations or that Badawi participated in drafting them, or that he saw or approved their contents before they were sent out to shareholders.

The complaint does not identify clear factual allegations demonstrating that Badawi was aware or should have been aware of any confidential inside information or the falsity of any statements made in communications to shareholders at the time they were made.  Also, for the same reasons the Court found the misrepresentation claims fail as against OrthoClear and the D&O Defendants, the Court similarly finds the claims against Badawi unpersuasive.  Accordingly, the Court GRANTS the motion to dismiss count three for intentional misrepresentation and count four for negligent misrepresentation against Badawi.  Again,

United States District Court

For the Northern District of California

1  because there have already been four iterations of the complaint filed in this matter and the

2  Court is not satisfied that Plaintiffs would be able to plead any additional facts, these two claims

3  are dismissed with prejudice.

4          **2.**        **Plaintiffs' Claims Are Barred by the BVI Companies Act.**

5          The claims alleged against Badawi and 3i for breach of fiduciary duty and constructive

6  trust are re-pled in the Third Amended Complaint as derivative claims on behalf of the

7  company.  However, as the Court has already found, Plaintiffs' newly-asserted derivative

8  claims are barred by BVI law.  BVI Companies Act Section 184C specifies the conditions under

9  which a shareholder may bring a derivative action.  The shareholders must be acting in good

10  faith.  (*Id.* at § 184C(2)(a).)  And the action must take into account the "views of the company's

11  directors on commercial matters."  (*Id.* at § 184C(2)(b).)  Plaintiffs' counsel simply state

12  without declaration that the action is taken in good faith.  Further, Plaintiffs' counsel merely

13  represent that this derivative action is not a commercial matter.  (3i Opp. Br. at 5.)  However,

14  the decision whether or not to litigate or to settle claims is commonly regarded as a business

15  decision. *See White v. Panic*, 783 A.2d 543, 553 (Del. 2001) (holding that a decision whether

16  or not to litigate is a "routine business decision[]."); *see also Panter v. Marshal Field & Co.*,

17  646 F.2d 271, 298-99 (7th Cir. 1981) (holding that a Board's decision whether to litigate fell

18  within the business judgment rule).  BVI Companies Act Section 184C(3)(b) permits derivative

19  actions "only if ... it is in the best interests of the company that the conduct of the proceedings

20  should not be left to the directors or to the determination of the shareholders or members as a

21  whole."  (BVI Business Companies Act § 184C(3)(b), attached to Mauch Decl., Ex. F.)

22  Plaintiffs have not alleged why it would not be in the best interests of the company not to leave

23  the decision about the 3i payment to OrthoClear's directors.  Because the Court is persuaded

24  that whether to pursue or to settle corporate litigation under these circumstances is a matter best

25  left to the sound business judgment of the organization's board of directors, Plaintiffs are barred

26  from bringing their derivative claims against Badawi and 3i.

27          All claims alleged as against Badawi and 3i are dismissed.  Again, as there have already

28  been four iterations of the complaint filed in this matter and the Court is not satisfied that

United States District Court

For the Northern District of California

1    Plaintiffs would be able to plead any additional facts, the claims against Badawi and 3i are

2    dismissed with prejudice.

3            **E.      Seifert's Motion to Dismiss.**

4            Patricia H. Seifert is sued in her capacity as Vice President of Legal Affairs and General

5    Counsel for defendant OrthoClear.  (TAC, ¶ 27.)  The Court has already found that Plaintiffs

6    have failed to plead sufficient facts to demonstrate falsity with the requisite particularity to

7    maintain a cause of action for violation of Section 10b-5.  Plaintiffs allege that Seifert

8    misrepresented the risks of the Align Litigation; however, the Court has found that the

9    disclosures made were sufficient warning to investors.  Plaintiffs similarly contend that Seifert

10   falsely maintained that there was no infringement by OrthoClear of any patent or intellectual

11   property rights of others; however, the Court has found that the fact that Align alleged

12   infringement and the fact that OrthoClear settled the Align lawsuit fail to indicate that there was

13   indeed a known conflict or infringement of any intellectual property.  Lastly, Plaintiffs contend

14   that Seifert knew that OrthoClear had petitioned the Patent and Trademark Office anonymously

15   for reexamination of certain of Align's patents, thereby indicating knowledge of serious

16   infringement issues.  Again, however, the Court has found that OrthoClear's strategy, including

17   filing for reexamination of an adversary's patent, does not constitute known falsity in this

18   context.

19           Similarly, the Court finds that Plaintiffs' allegations of scienter are similarly flawed.

20   The Court is not persuaded that the circumstantial evidence of knowledge of individuals' access

21   to Align's intellectual property, length of time to market, or the fact and manner of the

22   settlement with Align give rise of a strong inference that OrthoClear or, more particularly,

23   Seifert made false or misleading statements either intentionally or with deliberate recklessness.

24   *See Vantive*, 283 F.3d at 1085; 16 U.S.C. § 78u-4(b)(2).  Although Plaintiffs specifically plead

25   that Seifert should have examined the Kuo declaration, the Court has found that first, it is not

26   clear whether the declaration was public at the time and second, the failure of Seifert to disclose

27   the contents of the opinion of her company's adversary does not give rise to facts indicating

28   scienter.

**United States District Court**
For the Northern District of California

1    The remaining claims against defendant Seifert fail for the same reasons those claims

2   fail as against OrthoClear and the D&O Defendants.  There is no showing of falsity which

3   forms the basis for the misrepresentation claims.  Therefore, there lies no cause of action under

4   California Corporations Code §§ 25401 and 25501 based on the alleged misrepresentations.

5   The derivative claims pending against defendant Seifert fail because Plaintiffs may not maintain

6   both a derivative action on some claims which seeking to allege individual causes of action

7   seeking damages from the same pool of money and the claims violate BVI law which governs

8   here.  The decision whether to initiate or settle litigation is properly left within the province of

9   the sound business judgment of the organization's board of directors in these circumstances.

10   Further, the registration claims fail under Section 12(a)(1) of the 1933 Securities Act and

11   California Corporations Code § 25110 because there is no showing that, at the time of and

12   solicitation of sale to Plaintiffs, OrthoClear had lost its exempt status by having already sold to

13   more than 35 unaccredited investors.

14    Because there have already been four iterations of the complaint filed in this matter and

15   the Court is not satisfied that Plaintiffs would be able to plead any additional facts, the claims

16   against Seifert are dismissed without leave to amend.

17                                          **CONCLUSION**

18    For the foregoing reasons, the Court GRANTS Defendants OrthoClear and the D&O

19   Defendants' motion to dismiss without leave to amend.  The Court further GRANTS 3i and

20   Badawi's motion to dismiss without leave to amend.  Lastly, the Court GRANTS Seifert's

21   motion to dismiss without leave to amend.  A separate judgment shall issue and the Clerk shall

22   close the file.

23

24    **IT IS SO ORDERED.**

25   Dated:  February 27, 2009

26                                                JEFFREY S. WHITE
                                                 UNITED STATES DISTRICT JUDGE

27

28

                                                22